# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOVITA GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2014 (PLF) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF THE ARMY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant, United States Department of the Army, through the undersigned counsel, respectfully moves to dismiss this case pursuant to Rule 12(b)(1) and Rule 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Alternatively, Defendant moves for summary judgment pursuant to Rule 56 because there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law. In support of this Motion, Defendant respectfully submits the attached memorandum of points and authorities, a statement of material facts not in genuine dispute, a proposed order, and an administrative record.

Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Room E4408
Washington, D.C. 20530
202-353-9895

Attorneys for Defendants


Of Counsel:
MAJOR KELLY L. MCGOVERN
Army Litigation Division
Arlington, VA 22203

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOVITA GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2014 (PLF) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF THE ARMY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, United States Department of the Army, through the undersigned counsel, files this Memorandum in support of Defendant's Motions to Dismiss, and in the alternative, for Summary Judgment. Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the Tucker Act divests this Court of Jurisdiction. It is not in the interest of justice to transfer Plaintiff's Complaint because it would be barred by the statute of limitations. Additionally, Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as Plaintiff has failed to state a claim upon which relief can be granted because there is no record that Mr. Gomez ever served in the military, and Plaintiff therefore is not entitled to compensation. In the alternative, Defendant is entitled to judgment as a matter of law on Plaintiff's claim pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact. Defendant's statement of material facts not in genuine dispute, Defense Exhibits, and the Administrative Record (AR) support this memorandum.

# I. **INTRODUCTION**

Plaintiff alleges that her deceased husband, Federico C. Gomez, never received compensation during his service in the 109th Division, 10th Military District.[1]  From 1977 to 2006, the Plaintiff and her husband submitted five separate requests to the National Personnel Records Center (NPRC) asking for verification of Mr. Gomez's service in the Philippine Army from 1941 to 1945.  (AR 1, 9, 10, 15, 17,19.)  In response to the Plaintiff's Complaint, the Defendant also requested verification of Mr. Gomez's service in January of 2008.  See Declaration by Ms. Connie Tauser. (Def. Ex. A.)[2]  Every search reached the same conclusion, there are no service records pertaining to Mr. Federico C. Gomez. ( Id).; (AR 2-9, 11-13, 18.) An individual must have served in the United States Armed Forces in order to be paid. Therefore, without any records of service, the Plaintiff is not entitled to receive any compensation or benefits.

------

[1]  Plaintiff's Complaint alleges her husband served in the 109th Division, but Mr. Gomez claimed he served in the 110th Division.  (AR 9.)

[2]  In considering a motion to dismiss for lack of subject matter jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003).  The Court may also consider allegations attached, incorporated, or otherwise contained in a complaint, and matters of public record subject to judicial notice, without converting a 12(b)(6) motion into a motion for summary judgment. Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("because the tariffs are public documents . . . the court may take judicial notice of them . . .[and] may consider them on a Rule 12(b)(6) motion."). The military status of Plaintiff's husband is alleged in the Complaint and the National Personnel Records Center could be subject to judicial notice.  Thus, this Court may be able to decide this Motion without converting it to Summary Judgment.

"Philippine soldiers fought bravely alongside other members of the United States Armed Forces in the Far East (USAFFE)" during the Japanese invasion.  Quiban v. Veterans Administration, 928 F.d 1154, 1157 (D.C. Cir. 1991).  "Just before the beginning of World War II, President Roosevelt invoked his power under the Philippine Independence Act, Publ. L. No. 73-127 § 2(a)(12), 48 Stat. 456, 457 (1934), to call various Philippine military organizations 'into the service of American armed forces.'  6 Fed. Reg. 3825 (1941)."  Id. at 1155.  "After the Japanese attack on Pearl Harbor, General Douglas MacArthur, commander of the United States Armed Forces in the Far East, was given authority over Philippine soldiers then under United States command."  Id. at 1157.  The United States paid the wages of both the Philippine and American soldiers.  See id. ("After the outbreak of war, Congress authorized $269 million to mobilize, train, equip, and pay the Philippine Army, and it gave General MacArthur, commander of the [USAFFE], authority to allocate expenditures.").

Today, the National Personnel Records Center is charged with the responsibility of verifying the military service of individuals who served in the Philippine Commonwealth Army during World War II from the President's order in 1941 until July 1, 1946.  (Def. Ex. B.)  The NPRC performs searches within various sources and the archives which contain rosters of those who participated in the Philippine Commonwealth Army. (Id.) If there is a record of service, then "[v]eterans of the [Philippine] Commonwealth Army are considered to have rendered valid military service in the United States Armed Forces."  (Id. at 38.)  In this case, there are no records of Mr. Gomez's service.  (AR 2-9, 11-13, 18.)  Therefore, Plaintiff is precluded from receiving any compensation.

## II.  SUMMARY OF THE ARGUMENT

Plaintiff demands $75,000 "due to Federico C. Gomez who rendered Service in the 109th Division 10th Military District and who failed to receive compensation during his services." (Compl.)  The Tucker Act, 28 U.S.C. §1346 *et seq.* divests this Court of subject matter jurisdiction because the claim exceeds $10,000.  Although this Court could transfer this case to the Court of Federal Claims, it is not in the interest of justice to do so because Plaintiff's claim far exceeds the six year statute of limitations.  The Court of Federal Claims determined that WWII Filipino veterans' claims for back pay begin to accrue on the date of discharge, which Mr. Gomez asserted was 1945.  Plaintiff filed the instant action in 2007, sixty-two years after the alleged harm.  Her claim would clearly be barred by the statute of limitations.  Therefore, this Court should grant Defendant's 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction.

If this Court does determine there is jurisdiction, Plaintiff's claim is still without merit and should be dismissed.  There is no record that Plaintiff's husband ever served in the USAFFE, and as a result, she cannot be compensated.  Therefore, this Court should grant the Defendant's 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, or in the alternative, grant the Defendant's Motion for Summary Judgment.

## III. STATEMENT OF FACTS

Defendant respectfully refers the Court to Defendant's Statement of Material Facts to which there is no genuine dispute filed simultaneously herewith.

4

IV.  **ARGUMENT**

A.  **This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim**

1.  **Standard of Review**

"Federal courts are courts of limited jurisdiction."  Stovall v. Veneman, 394 F. Supp. 2d 21, 24 (D.D.C. 2005) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) which held that a cause is presumed to lie outside the court's limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction).  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a federal court must dismiss if it lacks subject-matter jurisdiction to hear and decide the dispute.  Fed. R. Civ. P. 12(b)(1).  The Plaintiff bears the burden of establishing that the court has subject matter jurisdiction to hear and decide the dispute.  Rasul v. Bush, 215 F. Supp. 2d 55, 61 (D.D.C. 2002).  The complaint must be construed liberally and a plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts.  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d 61, 64 (2001).  In addition, a court may consider such materials outside the pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case.  See Bernard v. United States, DOD, 362 F. Supp. 2d 272, 277 (D.D.C. 2005) (citing Herbert v. Nat'l. Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992)); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Borg-Warner Protective Servs. Corp. v. EEOC, 81 F. Supp. 2d 20, 23 (D.D.C. 2000).

### 2.  __The Big Tucker Act Divests This Court Of Subject Matter Jurisdiction__

The Tucker Act vests in the Court of Federal Claims original jurisdiction over civil actions against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  Federal district courts, in comparison, have concurrent jurisdiction over civil actions of this nature, as long as the claim does not exceed $10,000 in amount.  See 28 U.S.C. § 1346(a)(2) (known as the Little Tucker Act). "Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government."  Kidwell v. Dep't of the Army, Bd. for Corr. of Military Records, 56 F.3d 279, 284 (D.C. Cir. 1995); See also Mortega v. Department of Defense, 520 F. Supp. 2d 1 (D.D.C. 2007) (granting Defendant's motion to dismiss because the Plaintiff's express demand for damages exceeded the $10,000 limit);  Bliss v. England, 208 F. Supp. 2d (D.D.C. 2002) (granting Defendant's motion to dismiss because the Plaintiff sought over $10,000 in damages).

Plaintiff's express demand for damages in this case clearly exceeds the $10,000 limit. Plaintiff claims her deceased husband, Federico C. Gomez, never received compensation for his service in the 109th Division, 10th Military District.  (Compl.)  Plaintiff specifically demanded $75,000.  (Id.)  Because her Complaint specifically mentions monetary relief, she is subject to the Tucker Act.  See Kidwell, 56 F.3d at 284-86.  "Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the

federal government." Id. at 284. Due to the fact that Plaintiff explicitly seeks more than $10,000

on the face of her Complaint, this Court does not have subject matter jurisdiction to hear this

case because if falls within the exclusive jurisdiction of the Court of Federal Claims. 28 U.S.C.

§§ 1346(a)(2), 1491.

### 3. It Is Not In The Interest Of Justice To Transfer The Claim Because It Is Barred By The Statute Of Limitations

As an alternative to dismissal, the Court could transfer this case to the Court of Federal

Claims pursuant to 28 U.S.C. § 1631. However, it is not in the interest of justice to do so,

because the claim will be barred by the statute of limitations. In Entines v. United States, the

Court of Federal Claims held that the statute of limitations had run on Philippine guerrilla's

claims to back pay. 39 Fed. Cl. 673 (Ct. Cl. 1997). In Entines, the plaintiffs alleged the Court of

Federal Claims had jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), just as the

instant case would. Id. The statute of limitations for suits brought under the Tucker Act in the

Court of Federal Claims is found in 28 U.S.C. § 2501 which states, "Every claim of which the

United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon

is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The case law provides

that § 2501 is applicable to Plaintiff's claim for back pay. See Entines, 39 Fed. Cl. at 678

(holding that the six year statute of limitations applies to Philippine claims to back pay from

WWII); Sanders v. United States, 34 Fed. Cl. 75, 80 (1996)(applying § 2501 to a military back

pay claim).

The Court of Federal Claims explained:

The Tucker Act's statute of limitations is a jurisdictional requirement, and as an
express condition on the government's waiver of sovereign immunity, must be
strictly construed. See Hart v. United States, 910 F.2d 815, 818-19 (Fed. Cir.

7

1990); <u>Hopland Band of Pomo Indians v. United States</u>, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). Plaintiff bears the burden of establishing all jurisdictional requirements, including compliance with the six-year statute of limitations, and must do so by a preponderance of the evidence. <u>See</u> <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988) (interpreting the Federal Rules' counterpart to RCFC 12(b)(1)); <u>Catellus Dev. Corp. v. United States</u>, 31 Fed. Cl. 399, 404-05 (1994); <u>Mason v. United States</u>, 27 Fed. Cl. 832, 836 (1993). A litigant's failure to comply with the statute of limitations will "place[] the claim beyond the court's power to hear and decide." <u>Catellus Dev. Corp.</u>, 31 Fed. Cl. at 404 (citing <u>Soriano v. United States</u>, 352 U.S. 270, 273, (1957)).

<u>Entines</u>, 39 Fed. Cl. at 678.

Plaintiffs in <u>Entines</u> filed their complaint on November 22, 1996. <u>Id.</u> The Court held that "Defendant's motion, therefore, must be granted unless plaintiffs can establish by a preponderance of the evidence that their claims first accrued on or after November 22, 1990, or that some time-bar saving doctrine is applicable." <u>Id.</u> Generally, "[a] claim accrues 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action'" <u>Id.</u> at 679 (citing <u>Brighton Village Assocs. v. United States</u>, 52 F.3d 1056, 1060 (Fed. Cir. 1995). The Court of Federal Claims held that "[c]laims for military back pay accrue upon discharge or separation from active duty status." <u>Entines</u>, 39 Fed. Cl. at 679. In the <u>Entines</u> case, the court determined that the Filipino plaintiffs' back pay claims all accrued during 1945, when they were discharged. <u>Id.</u> Since it had been more than six years when the plaintiffs filed their complaint, the Court of Federal Claims held that their claims were barred by the statute of limitations." <u>Id.</u>

Plaintiff in this case is similarly situated to those plaintiffs in <u>Entines</u>. She is requesting back pay for a Filipino's service with U.S. Armed Forces in World War II. The only difference is that even more time has lapsed in the instant case. Plaintiff filed her Complaint on December 3, 2007. Therefore, even if her claim were brought to the Court of Federal Claims, her claim

8

must be dismissed for exceeding the six year statute of limitations unless she could establish by a preponderance of the evidence that her claim first accrued on or after December, 3, 2001. Plaintiff's husband allegedly served from December 7, 1941 to June 25, 1945. (AR 9.) Mr. Gomez claimed to have received an honorable discharge in June 1945. Id. As a result, Plaintiff's claim that he was not compensated for his service during that time frame began to accrue at the time of his discharge in 1945. As a result, Plaintiff exceeded the statute of limitations by 56 years. Case law demonstrates that Plaintiff's Claim for back pay will be barred by the statute of limitations in the Court of Federal Claims. Therefore, Defendant's Motion to Dismiss for lack of jurisdiction should be granted and this Court should refrain from transferring the case to the Court of Federal Claims.

**B.   Plaintiff Failed To State A Claim Upon Which Relief Can Be Granted**

**1.   Standard of Review**

**a.   Motion to Dismiss**

A case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974, (2007). The allegations in a plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in plaintiff's favor. Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc., 52 F.3d 373, 375 (D.C. Cir. 1995). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). To survive

a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl., 127 S. Ct. at 1965; Vance v. Chao, 2007 U.S. Dist. LEXIS 55971 (D.D.C. 2007).

### b. Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 243 (1986). While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits "affirmative evidence that negates an essential element of the nonmoving party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Celotex, 477 U.S. at 331.

In an opinion issued the same day as Celotex, the Supreme Court explained the circumstances in which summary judgment is appropriate, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown. Fed. R. Civ. P. 56(e)(the nonmoving party may not rest on mere allegations but "must come forward with

10

'specific facts showing there is a genuine issue for trial.'").  See also Hayes v. Shalala, 902

F.Supp. 259, 263 (D.D.C. 1995)(opposition to summary judgment must consist of more than

mere unsupported allegations or denials); Johnson v. Digital Equip. Corp., 836 F.Supp. 14, 18

(D.D.C. 1993)(evidence that is merely colorable or not sufficiently probative is insufficient to

defeat summary judgment); Batson v. Powell, 912 F.Supp. 565, 578 (D.D.C. 1996).

In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is

properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" 477 U.S. at 327, quoting Fed. R. Civ. P. 1.

## 2. **Plaintiff Cannot Receive Compensation When There Is No Record That Mr. Gomez Ever Served With The U.S. Armed Forces**

An individual must have served with the United States Armed Forces in order to be paid

military service wages by the Defendant.  There is no record that Plaintiff's deceased husband,

Mr. Federico C. Gomez, ever served.  (Declaration from Ms. Connie Tauser, (Defense Ex. A));

(AR 2-9, 11-14, 18.)  Since Mr. Gomez has no service records, no service number, and it has

been conclusively determined on multiple occasions that his name cannot be authenticated in the

archives, there are no set of facts on which the Defendant could award Plaintiff any

compensation.

The National Archives and Records Administration at the NPRC provides information

regarding the general background and contents of the Philippine Army (PA) records as well as

their processing procedures in a memorandum issued on April 15, 2002.  (Def. Ex. B.)  "It

outlines reference services and inquiry processing procedures concerning individuals who

served, or allegedly served with the Philippine Commonwealth Army of the United States

11

Armed Forces Far East (USAFFE), or recognized Guerrilla forces in World War II."  (Id. at 1, ¶

1.)  NPRC verifies service when an individual submits an inquiry, or when an agency such as the

Department of Veterans Affairs (VA), Immigration and Naturalization Service, and Social

Security submits a request.  (Id. at 6.)

The NPRC performs extensive searches through various sources and takes measures to

ensure that they rely on authentic documents.  The memorandum states that since there are:

> varied sources of information in the records collection, processing inquiries
> requires a detailed, investigative nature.  It is necessary to cross check several
> sources of information in this collection to retrieve and provide reliable data.
> Extreme care must be exercised in identifying and correctly matching a particular
> claims folder with the subject of inquiry.  Positive identification can be
> determined only when identifying data of record agrees with inquiry data.

(Id. at 7.)

"Certain records provide sufficient proof of military status, either as a member of the

Philippine Army USAFFE, or a recognized guerrilla.  These are the National Service Life

Insurance (NSLI) records, military orders, USAFFE and approved Guerrilla rosters, hospital and

POW records." (Id.)  "The records should be authentic official documents executed by

competent authority." (Id. at 40.)  If the authenticity cannot be conclusively determined, the

NPRC will look at: NSLI records; a verified casualty record showing the soldier was killed,

captured, died or treated for battle wounds prior to 1942; records and death certificates from

POW camps; Manila Tribune Listings of released POWs; Lists of ex-POWs employed by Toyo

Menka Keisha; and "other archive data, such as rosters, payrolls, general or special orders,

combat narrative, etc., which exists in the archives and which are either authenticated original

copies or acceptable true copies." (Id. at 41-41.)  "If evidence of these facts is not available, the

claimant must furnish it."  (Id. at 40.)

In response to Mr. Gomez's April 28, 1977, request to issue a certification of his service, (AR 1) the U.S. Army Reserve Personnel Command initiated a records check search for his service records.[3] (AR 2-5.) The search request included: USAFFE card index files, Guerrilla Affairs Division Rosters, Extract Copy of discharges, the CAPAS concentration camp death roster, the O'Donnel POW camp roster, the Pampanga POW camp roster, the Manila Tribune, Malabalay, reports from casualties in field and elsewhere, hospital records, and NSLI records. (AR 2-5.) On August 9, 1977, the Defendant determined that the name, Federico C. Gomez, was not listed on any officially approved Guerrilla Affairs Division roster. (AR 6-8.) Therefore, his alleged service, as a member of the pre-surrender forces of the Philippine Commonwealth Army in the service of the Armed Forces of the United States, could not properly be established. (AR 6-8.)

The Veterans Administration requested verification of Mr. Gomez's service on June 15, 1978, in response to his filing a disability claim. (AR 9.) Again, on August 8, 1978, the Defendant determined that Mr. Gomez "has no service as a member of the Philippine Commonwealth Army, including the recognized guerrillas, in the service of the United States Armed Forces." (Id.)

On September 13, 1978, Mr. Gomez submitted another request for certification of his service, this time to the Adjutant General of the Department of Army. (AR 10.) The form was date stamped 25 Oct 1978 with writing indicating "neg. report"(Id.)

---

[3] "The responsibility for providing reference services on the collection of PA records and archives holdings was transferred by Memorandum of Agreement from the U.S. Army Reserve Personnel Command (AR-PERSCOM) to NPRC in October 1999." (Def. Ex. B at 4.)

On September 5, 1994, the General Headquarters of the Armed Forces of the Philippines issued a certification stating that Mr. Gomez's name is not carried on the approved roster of 1948. (AR 11-13.) This amounted to four investigations for records regarding Mr. Gomez, and all four searches determined that there was no record of his service.

Plaintiff, as Mr. Gomez's widow, submitted a request to NPRC on April 3, 2006, requesting certification of Mr. Gomez's service to be used for a claim with the Department of Veterans Affairs in the Philippines. She followed up with her request on October 3, 2006. On November 15, 2006, the NPRC sent Plaintiff a letter informing her that there are no official records of service for Mr. Federico C. Gomez and his name did not appear in the archives which lists the members of the Philippine Commonwealth Army, including recognized guerrillas, in the service of the United States Armed Forces during World War II. (AR 18.) Therefore, NPRC could not fulfill her request for certification of military service.

In response to Plaintiff's Complaint, the Defendant requested verification of Mr. Gomez's service records. On January 30, 2008, Ms. Connie Tauser searched Mr. Gomez's claim file and the archives, and once again determined that there was no record that Mr. Gomez ever served with the USAFFE. (Def. Ex. A.)

The government has performed six diligent searches over a thirty year period, from 1977 to 2008, and each time, no record of Mr. Gomez's service could be found. "If insufficient archival information is available to establish an individual's alleged service with the USAFFE or recognized guerrilla forces on or after December 8, 1941, the individual will be determined to have no status . . . or negative service is established." (Def. Ex. B at 9-10.) Therefore, since Mr. Gomez has been determined to have no status with USAFFE or negative service, in other words,

there is no verifiable service with USAFFE, then there are no circumstances upon which Plaintiff

would be entitled to $75,000, or any compensation.  Accordingly, Plaintiff has failed to state a

claim upon which relief can be granted, or in the alternative, there is no genuine issue of material

fact and Defendant's Motion should be granted as a matter of law.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that this Court enter judgment

in favor of the Defendant, and denying Plaintiff's claims.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Attorneys for Defendants

Of Counsel:
MAJOR KELLY L. MCGOVERN
Army Litigation Division
Arlington, VA 22203

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOVITA GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2014 (PLF) |

```
                                    )
UNITED STATES DEPARTMENT            )
OF THE ARMY,                        )
                                    )
              Defendant.            )
                                    )
```

### DEFENDANT'S STATEMENT OF MATERIAL FACTS
### TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to LCvR 7(h) and in support of Defendant's Motions to Dismiss, or in the Alternative, for Summary Judgment, Defendant respectfully submits this statement of material facts as to which there is no genuine dispute.  The Administrative Record ("AR") supports this statement.

1.  Plaintiff, Jovita C. Gomez, married Federico C. Gomez on March 2, 1970.  (Compl., Ex. Marriage Contract.)

2.  April 28, 1977, Federico C. Gomez submitted a request to the National Personnel Records Center (NPRC) that said, "I do hereby request official reconstructions and confirmations of [his] statement of active military services with awards of medals or situations [sic] of the standard Army regulation with Purple Heart for wound received in service as member of the U.S. Armed Forces of the Philippines during World War II pursuant to Sec. II AFPR - 600 as amended by Public Law 597-94th Congress."  (AR 1.)

3.  On June 10, 1977, the NPRC initiated a record check for service records pertaining to Federico Gomez.  (AR 2-5.) The Search request included: United States Armed Forces in the Far East (USAFFE) card index files, Guerrilla Affairs Division Rosters, Extract Copies of discharges, the CAPAS concentration camp death roster, O'Donnel Prisoner of War (POW) camp roster, the Manila Tribune, Pampanga POW camp roster, Malabalay, reports of casualties

1

in field and elsewhere, hospital records, and National Service Life Insurance (NSLI) records. (AR 2-5.)

4.  On August 9, 1977, the Army determined that the name Federico C. Gomez was not listed on any officially approved Guerrilla Affairs Division roster.  (AR 6-8.)  Therefore, his alleged service, as a member of the pre-surrender forces of the Philippine Commonwealth Army in the service of the Armed Forces of the United States, was not properly established. (AR 6-8.)

5.  On June 15, 1978, the Veterans Administration requested information regarding Federico Gomez in response to his disability claim.  (AR 9.)  Mr. Gomez alleged that he entered active duty on December 7, 1941 and received an honorable discharge on June 25, 1945. (Id.) The last organization he claims to have served with was the 110th Division, 10th Military District.(Id.) On August 8, 1978, it was determined that Mr. Gomez "has no service as a member of the Philippine Commonwealth Army, including the recognized guerrillas, in the service of the United States Armed Forces." (Id.)

6.  On September 13, 1978, Mr. Gomez submitted a letter to the Adjutant General of the Department of the Army requesting "copies, of a military certification and or service information (MPF) in connection with my claims for an appropriate approval of my claims for service connected disability, disabling me to a 100% total and disability due to wounds received during my World War II military services."  (AR 10.)  The letter was date stamped 25 Oct 1978 with writing indicating "neg. report" (Id.)

7.  On September 5, 1994, a certification from the General Headquarters of the Armed Forces of the Philippines stated that Mr. Gomez's name is not carried in the approved roster of 1948.  (AR 11-13.)

2

8.  On April 3, 2006, Plaintiff sent a letter to the NPRC requesting records and the issuance of certification of military service of her late husband, Federico Gomez, to be used for her claim with the Department of Veteran Affairs in the Philippines. (AR 15.)  She submitted a subsequent request on October 3, 2006.  (AR 17.)

9.  On November 15, 2006, the NPRC sent Plaintiff a letter explaining that there was no record of his service.  (AR 18.)  The letter from the NPRC explained that a copy of the form, PA AGO Form 23, Affidavit for Philippine Army Personnel, pertaining to Mr. Gomez, had not been located.  Id.  Also, his service must be authenticated from the official archives which were recovered from the Philippines after World War II.( Id.)  "Mr. Federico Gomez' name is not shown in the official records and archives on file at [the NPRC] which list the members of the Philippine Commonwealth Army, including recognized guerrillas, in the service of the United States Armed Forces during World War II."  Id.  Therefore, the NPRC could not fulfill her request for certification of military service. (Id.)

10.  The Plaintiff filed this lawsuit on November 7, 2007.  Plaintiff requests $75,000 for "Non-payment of military benefit due to Federico C. Gomez who rendered Service in the 109th Division 10th Military District and who failed to receive compensation during his services."

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Attorneys for Defendants

Of Counsel:
MAJOR KELLY L. MCGOVERN
Army Litigation Division
Arlington, VA 22203

4

Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOVITA C. GOMEZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 07-cv-02014 (PLF) |
| | ) | |
| UNITED STATES DEPARTMENT, | ) | |
| OF THE ARMY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF CONNIE TAUSER

In accordance with 28 U.S.C. § 1746, I, Connie Tauser, make the following declaration in the above-cited case.

1. I am the Archives Technician at the National Personnel Records Center (NPRC). In this capacity, I am directly responsible for Army records that are associated with the Philippine Army.

2. I have read the claims of Ms. Jovita C. Gomez in the above captioned case.

3. I retrieved the Mr. Gomez's claim file on January 30, 2008.

4. I performed searches in the archival rosters on January 30, 2008, but did not find any record of service for Mr. Gomez.

5. In order to establish service, we use document PO AGO Form 23 which contains information that is considered as alleged service facts until it is verified through the archives. An

1

individual's name must appear in our archives and his claim folder must contain information compatible with the archives. These criteria must be met before a positive determination can be made.

6. The official records and archives on file at this Center fail to establish that Mr. Gomez's alleged service as a member of the Philippine Commonwealth Army, including the recognized guerrillas in the service of the U.S. Armed Forces during World War II.

7. PA AGO Form 23 was not located in Mr. Gomez's claim file. A review of the archives, which include the 10th Military District rosters, failed to contain Mr. Gomez's name. Also, there is no documentation in the claim folder that contains compatible information with the archives. Therefore, we cannot provide a positive determination that Mr. Gomez served in the U.S. Armed Forces.

8. Ms. Gomez was informed on January 30, 2008 that due to the fact the necessary documents are not in the claim folder, and because Mr. Gomez's name is not in the archives, I determined that Mr. Gomez has no record of service. Also, on November 15, 2006, Ms. Gomez was informed that her husband had no service.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of January 2008 at St. Louis, Missouri.

CONNIE TAUSER
Archives Technician (5A)

Exhibit B

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
National Personnel Records Center
St. Louis, Missouri 63132

NPRC 1865.125
April 15, 2002

SUBJECT:  **General Background and miscellaneous correspondence procedures unique to the Philippine Army Records**

1. <u>Purpose</u>.  This memorandum provides information regarding the general background and contents of the Philippine Army (PA) records and related holdings.  It outlines reference services and inquiry processing procedures concerning individuals who served, or allegedly served with the Philippine Commonwealth Army of the United States Armed Forces Far East (USAFFE), or recognized Guerrilla forces in World War II.

2. <u>References</u>.
   a. PL 77-490, The Missing Persons Act, as amended.
   b. National Service Life Insurance Act of 1940, as amended.
   c. Nationality Act of 1940, Immigration & Naturalization, as amended.
   d. Social Security Act, PL 734, 81st Congress, as amended.
   e. Freedom of Information Act (FOIA)
   f. Other laws granting Veterans Affairs benefits
   g. Reference Manual, Recovered Personnel Records Branch (AR-PERSCOM), dated August 31, 1955
   h. AR 340-17, Release of Information and Records from Army Files
   i. AR 672-5-1, Military Awards

3. <u>Applicability</u>.  This memorandum is applicable to all Philippine Army team personnel.

4. <u>Contents, responsibilities and instructions</u>.  General information, responsibilities, and instructions for providing reference services for PA records are provided in Chapter 1.  Detailed processing procedures for the types of inquiries most frequently received are in Chapter 2.  The Appendix contains history, guidance and considerations used in properly processing PA inquiries.  This includes detailed historical data, definitions, and guidance issued at the time of the occupation of the islands through liberation and following.  This documentation is commonly referred to in providing accurate assessments of valid PA service since it defines what constitutes valid service dates, and other guidelines.  Archive Technicians must be familiar with this extensive background, history and guidance to properly process PA inquiries.  Guidance includes:
   o Name variations, and letter variation listings
   o Aliases
   o Valid types of service, i.e., USAFFE, Guerrilla
   o Valid service dates
   o Valid locations where service was performed
   o Valid units and their dates of operation
   o Understanding Terminology regarding the PA
   o Criteria for determining casualty status
   o Valid affiant information
   o Invalid affiants

5. <u>Forms</u>. This memorandum provides for the use of internal forms, inquiry forms from other Government agencies, and archival forms (used as a matter of record).  (Chapter 2, Figures 2-1 through 2-46 contains examples or samples of the forms listed below.)

.    <u>Internal forms and forms provided by authorized Government agencies</u>.  These are forms originating from other Government agencies; or are forms originating from this Center, furnished in response to inquiries received.  Valid service data information requested on forms is searched in the military organizational files.  The following forms are used to document any information located and verified:

NPRC Test Form 02-01, Request for Additional Information on VA Form 3101
NPRC Test Form 02-02, Additional Information (Supplement to VA Form 3101)
NPRC Test Form 02-03, Additional Information
NPRC Test Form 02-04, Determination of Status Under the MPA, As Amended (No status)
NPRC Test Form 02-05, Determination of Status Under the Missing Persons Act, As Amended
NPRC Test Form 02-05A, Determination of Status Under the Missing Persons Act, As Amended
NPRC Test Form 02-13, Request for and Report of Search
Form N-426, Request for Certification of Military or Naval Service (INS form)
SSA Form 654-U4, Request for Information from Uniformed Services (Social Security form)
DA Form 1577, Authorization for Issuance of Awards
VA Form 3101, Finding Aid Report
WIF (work-in-file) Form (no form number), Subject: Military Records (Originates from Quezon City, Philippines, and regards list cases)

a.    <u>Archival forms and claims folder documents</u>.  The following forms are either already apart of the individuals service record; or they are completed from information located in the PA archives and/or from the individual's service record.  Some of these forms are completed concurrent with processing an inquiry, and filed as a matter of record in the claims folder.  This is accomplished by documenting the service-related evidence found in archival documents, from the individual's claims folder, or from information provided by an authorized Government agency.  Allowable evidence or proof of service received from the veteran or their representative may also be documented on these forms.

NPRC Test Form 02-06, Record of Casualty in the Field
NPRC Test Form 02-07, Certificate, Death Record of POWs
NPRC Test Form 02-08, War Department Casualty Report
NPRC Test Form 02-09, Record of Hospitalization (Hermosa & Bulacan Hospitals)
NPRC Test Form 02-09A, Record of Hospitalization (Tarlac & Pampanga Hospitals)
NPRC Test Form 02-10, Record of NSLI (National Service Life Insurance)

2

NPRC Test Form 02-11, Prisoner of War Information
NPRC Test Form 02-12, Request for Archive Information and Record of Search
AGRD Form WCC-1, Military Service Data
GSXRP (PA) Form 9, Claim for Arrears in Pay and Quarters Allowances
Form 22-A PA, Personal Record, Army of the Philippines
PA AGO Form 23, Affidavit for Philippine Army Personnel
WD AGO Form 38, Report of Physical Exam of Enlisted Personnel Prior to Discharge, Release from Active Duty or Retirement
AGRD Form 46, Request for Information
WCC Form 602, Application for Ex-Prisoner of War Allowance

R. L. HINDMAN
Director

---

**ATTACHMENT**

**GENERAL BACKGROUND AND MISCELLANEOUS CORRESPONDENCE PROCEDURES UNIQUE TO THE PHILIPPINE ARMY RECORDS SECTION**

TABLE OF CONTENTS

CHAPTER 1.    GENERAL INFORMATION, RESPONSIBILITIES AND INSTRUCTIONS

CHAPTER 2.    PROCESSING PROCEDURES BY INQUIRY TYPE

APPENDIX A    PHILIPPINE COMMONWEALTH ARMY

---

## CHAPTER 1.  GENERAL INFORMATION, RESPONSIBILITIES AND INSTRUCTIONS

### TABLE OF CONTENTS

Paragraph
  Title                                                              Paragraph
                                                                      Number

General.................................................
.........                                                                  1

Content of Philippine Army military organizational
records..                                                                  2

Inquiry processing.....................................
.........                                                                  3

## CHAPTER 1. GENERAL INFORMATION, RESPONSIBILITIES AND INSTRUCTIONS

1. **General**.
   a. <u>Reference services</u>.  The responsibility for providing reference services on the collection of PA records and archives holdings was transferred by Memorandum of Agreement from the U.S. Army Reserve Personnel Command (AR-PERSCOM) to NPRC in October 1999.  Reference services for authorized agencies and for individuals are provided for under provisions of the Missing Persons Act (MPA) of 1940, the Freedom of Information Act (FOIA), PL 77-490, the National Service Life Insurance Act of 1940, the Nationality Act of 1940, Immigration & Naturalization, the Social Security Act, PL 734, 81st Congress, as amended, and other laws granting Veterans Affairs benefits.

   b. <u>Guidance</u>.  Reference material used to process PA inquiries includes historical data, and may be extracts of guidance, rosters, listings, etc., issued by the War Department, the US Army, authorized agencies, such as the Veterans Administration, or the Philippine government.  Much of this information is dated from the time of occupation to after the liberation of the islands.  For example, the "Reference Manual from the Recovered Personnel Records Branch" (AR-PERSCOM) is a consolidated collection of previously issued guidance, and contains the following:

      ▪ Circular No. 305, War Department, July 18, 1944
      ▪ Staff Memorandum No. 14, HQ, US Army Forces Western Pacific, Recovered Personnel Division, titled Interpretation of the Missing Persons Act, December 27, 1945
      ▪ War Department Plan for Casualty Administration Upon Reoccupation of Philippines, November 7, 1944 and C1, March 21, 1945
      ▪ Veterans Administration Technical Bulletin, December 3, 1951
      ▪ Military Order, Organized Military Forces of the Government of the Commonwealth of the Philippines Called into Service of the Armed Forces of the US, July 26, 1941
      ▪ General Orders, HQ USAFFE relative to "call into service" and "induction" of PA Units.
      ▪ Listing of Historical and Important Dates 1941-1949 and their significance to the Philippine Army

- Dates of Capitulation of Areas within the Philippine Islands to the Japanese Forces
- Notes of the 121st Infantry, dated April 12, 1949 regarding the Japanese Invasion of the Islands
- List of Pre-War Philippine Constabulary Units
- Executive Order No. 68, President of the Philippines, titled Demobilization of Elements of the Philippine Army and other Guerrilla Units in the Field, September 26, 1945
- Circular No. 59, Commonwealth of the Philippines Army Headquarters, APO 500, titled USAFFE Personnel to Report for Duty, July 3, 1945
- Notes on the Philippines Army (1941-1942) and bona fide USAFFE Units, including mobilization dates
- Dates of Last Payments Prior to Surrender
- Guide for determining dates (of death or joining a guerrilla unit) when exact dates are not in records of evidence
- Monthly Rates of Pay (Philippine Army)

2. **Content of Philippine Army military organizational records**

   a. <u>General information</u>.  The NPRC portion of the total PA archives holdings consists of PA military organizational records.  It <u>does not</u> include records of Americans who served in the Philippines during World War II , that is U.S. Army members or Philippine Scouts.  The PA military organizational records are used to establish identity and MPA status regarding Philippine Army USAFFE personnel and recognized guerrillas, and include:

      Guerrilla alpha card files
      USAFFE alpha card files
      Guerilla casualty rosters
      Common name files
      Individual letters of recognition
      Initial and revised guerrilla rosters (reconstructed)
      Troop and casualty rosters
      Prisoner of war (POW) rosters
      Payroll records, NSLI records
      Provincial hospital records
      Manila tribune
      Bad affiant records (card files)
      Discharges/orders
      Special/general orders
      Claims folders (alphabetical order, by name)
      Various reference manuals and informational listings

   b. <u>Claims folders</u>.  Part of the military organizational records referred to as "claims folders" are actually reconstructed records, which were and are created in response to claims made under provisions of the MPA.  They are **not** official military personnel records comparable to Military Personnel Record Jacket (MPRJ) 201 file folders.

3. **Inquiry processing**.
    a. <u>Authority</u>.  All inquiries are processed as provided for under the provisions of the FOIA and the MPA, and include P.L. 77-490; Title 38, U.S.C; P.L. 101-649, P.L. 734, P.L. 99-145, AR 20-50, AR 25-50, and AR 672-5-1.
    b. <u>Categories of inquiries</u>.  Inquiries received for processing primarily consist of agency and individual.

        (1) <u>Agency inquiries</u>.  Inquiries received for processing most frequently originate from the following three authorized Government agencies:

- <u>Department of Veterans Affairs (VA)</u>.  Inquiries regarding verification of service for benefit entitlement.
- <u>Immigration and Naturalization Service (INS)</u>.  Inquiries concerning establishing eligibility for naturalization based on service.
- <u>Social Security</u>.  Inquiries for verification of service to determine eligibility for Supplemental Security Income based on service.

        (2) <u>Individual inquiries</u>.  Inquiries are also received from individuals, most frequently Filipino Nationals, from their next of kin, or from their legal representatives.

    c. <u>Types of inquiries processed</u>.  Following are the types of inquiries most often received for processing.  Detailed processing procedures are explained in <u>Chapter 2</u> of this memorandum, and in the <u>Appendix</u>.

    Statement of Service (SOS)
    Immigration and Naturalization (INS)
    Department of Veteran's Affairs (VA)
    Special Correspondence (White House, Congressional, or FOIA)
    Routine Correspondence (Turn-around, and miscellaneous correspondence of a general nature, or from an individual requesting general information regarding benefits)
    Claims and Appeals
    Decorations and Awards

    d. <u>Initial receipt/processing</u>.  PA inquiries are entered into the center case management database upon receipt in the mailroom, and forwarded to the PA Section for processing.  The PA support person accesses this system to enter further data unique to searching and processing PA casework such as possible name variations, date of birth, unit/organization in which veteran served.  A search request/report is created and attached to each inquiry from the database information.  Inquiries are sent to PA searcher for record information retrieval in the PA organizational records.

        (1) <u>PA Archives Search</u>.  The searcher determines the type search required, claims folder, archives, or both from information on search report and inquiry.  Search is performed alphabetically, by name, alternate spellings of name, and other information on inquiry.  The searcher will

enter the search results on the search report for each inquiry, and provides inquiries, claims folders, and search reports to the support person for assignment of case to PA technician.

(2) <u>PA Archives Technician</u>.  The technician accesses the database to enter appropriate tracking information regarding each inquiry throughout processing (i.e., suspense of case when information is required/requested from other agencies for case completion) Processing of inquiries by the PA archives technician includes the following considerations, and is detailed in <u>Chapter 2</u>:

(a) <u>Military organizational records</u>.  Claims folders and other military organizational records and archival information are filed alphabetically by the subject individual's name or listed alphabetically on rosters.  In many cases, numerous files may be found under the same or similar spelling of the last, first, and middle name.  It is common for Filipinos to use the mother's maiden name as their middle name/initial.  Errors were common when the original processing of PA veterans occurred following the end of the war.  Incorrect spelling of surnames, and transposed middle and surnames were common.  The following is also used to locate and match the correct claims folder with the subject of an inquiry: organization, grade, service number, place of birth, date of birth, home address, next of kin, and mother's name.  In addition, name and letter variations listings are consulted for alternate letter use of letters in surnames, and cross-checking common alternate spellings of surnames (See <u>Chapter 2, Figure 2-47</u>).

(b) <u>Positive identification</u>.  Considering the varied sources of information in the records collection, processing inquiries requires research of a detailed, investigative nature.  It is necessary to crosscheck several sources of information in this collection to retrieve and provide reliable data.  Extreme care must be exercised in identifying and correctly matching a particular claims folder with the subject of the inquiry.  Positive identification can be determined only when identifying data of record agrees with inquiry data.

(c) <u>Proof of Service</u>.  Certain records provide sufficient proof of military status, either as a member of the Philippine Army USAFFE, or a recognized guerrilla.  These are the National Service Life Insurance (NSLI) records, military orders, USAFFE and approved Guerrilla rosters, hospital and POW records.  This service data evidence is provided to the applicable authorized Government agency for their determination of certain veteran benefits.

(d) <u>Scope of the Missing Persons Act, Public Law 77-490, as amended</u>.  A MPA determination is a decision, signed by a properly delegated official, establishing a record of status, death, and other essential dates, exclusive of determinations of facts of dependency. Under the provisions of Section 5 of this Act, reviews are made of the cases of persons missing or missing in action for continuing the missing status, making finds of death, and determining the date upon which death shall be presumed to have occurred for purposes specified therein.  These determinations are made when records are incomplete or conflicting and are based on regulations and policies in force at the time.  MPA "determinations" covered under this memorandum regard providing reference services for members of the Philippine Commonwealth Army (including recognized guerrillas) who were called into the service of the United States Armed Forces between July 26, 1941 and June 30, 1946. MPA determinations are performed by the requesting agency based on the service data provided from the PA military organizational records.

(e) <u>Evidence considerations and evaluation of evidence</u>.  Evidence found in the Military organizational records is used in conjunction with other available service data to facilitate establishing and documenting PA military service by the authorized requesting agency.  Extreme care must be exercised to identify authenticity and applicability of evidence as pertains to the inquiry at hand by comparing:

- Consistency of all testimony submitted by the claimant with evidence on file and known historical data, and determining whether an affiant's (defined as "one who swears to an affidavit") military service is established by archives, and if he was in a position to give testimony regarding the alleged soldier.
- The affiant's testimony with evidence accumulated in the claims folder of the alleged soldier, noting the degree of consistency between them.
- Acceptability of evidence will be recorded on NPRC Test Form 02-03.  If evidence is not consistent and reasonable doubt exists as to acceptability, the decision should be against acceptance, and should be noted as such on this form.

(f) <u>Bad Affiants</u>.  When a Memorandum for Record is found in the file identifying the person as an <u>unacceptable affiant</u> because of testimony which contained false statements and misrepresentation of facts, no further action will be taken to evaluate any affidavits (current or past) prepared by that person.  All folders of bad affiants will be marked by a blue horizontal line or band down the center of both sides of the claims folder (approximately an inch wide) to facilitate easy identification of bad affiant folders.

[1] <u>Affidavits or certificates evidence</u>.  This type of evidence may be used alone or in conjunction with any other evidence.  Statements of affiants must be subscribed and sworn to before persons authorized to

administer oaths, i.e., Justice, Judges, Justices of the Peace, Clerks of Court, Notaries Public, Chiefs or Assistant Chief of Bureaus and Offices, Provincial Governors, Mayors, and Commissioned Officers of the Philippine Commonwealth Army, and Philippine Constabulary in active service.  Statements of commissioned officers of the Philippine Army or Philippine Constabulary may be accepted even if not under oath provided they were made while in active service and in the form of a certificate (not required for statements of RA, AUS, or PS officers).  Certificates of public official narrating certain facts that are of record in their offices are also acceptable.  Statements of other persons not under oath may be acceptable if witnessed by DA Field Investigator of the former AGRD.  To qualify as an affiant for another person, the affiant must be in a position to make the statements to which he is attesting and if attesting to service of another, the affiant's own service must be established.  Statements made in affidavits must be checked with the affiants claim folder or archival information to verify his competency.  There are additional restrictions when using this type of evidence.  All affidavits must be dated prior to July 1, 1948, and already be part of the individual's claims folder.

    [2]  Processing Affidavits.  These affidavits (Form Numbers 23, 49 and 649) were completed by soldiers at the time of return to military control and are identified as "Affidavits for Philippine Commonwealth Army Personnel".  They were also considered as applications for arrears in pay under the MPA and were generally filed prior to July 1, 1948.  A Processing Affidavit or an Arrears in Pay claim form must be present in the claims folder to process a certification of service.

    [3]  Next of Kin Affidavits.  Form 3 (accompanied by Form 7), Form 3a, Form 9, and Form 48 for military personnel were completed by the next of kin in cases where the subject died prior to return to military control or prior to processing.

    (g)  Documentation of evidence.  NPRC Test Form 02-03 must be completed regarding all applicable service data evidence on the subject individual of every inquiry, whether negative or positive, from information obtained from the military organizational records.

    [1]  Positive evidence.  If after analyzing all available archival information, an individual's service with the USAFFE or recognized guerrilla forces on or after December 8, 1941, can be established, positive evidence is documented on NPRC Test Form 02-03.  In addition, a NPRC Test Form 02-05 or 02-05A will be prepared when service has been established under the MPA.

    [2]  Negative evidence.  If insufficient archival information is available to establish an individual's alleged service with the USAFFE or recognized

guerrilla forces on or after December 8, 1941, the individual will be determined to have no status under the Act, or negative service is established.  If negative status is established, the Archives Technician will complete NRPC Test Form 02-04, and finalize the inquiry.

(h)  Inquiries requiring additional information.  If additional information is needed to resolve discrepancies with the inquiry and military organizational files, requests for additional information may be sent outside NPRC.  In certain exceptional cases, it may be necessary to request documentation through the VA, from Headquarters, Armed Forces of the Philippines, Camp Emillio Aguinaldo, Quezon City, Philippines.  Such requests may be necessary when a PA USAFFE veteran is alleged to have been discharged on or after Jun 30, 1946, and available evidence indicates individual may be been court-martialed or discharged other than honorably.  A request may be sent for court-martial information or finding of the proceedings of the Board of Officers.  Other documentation may be requested, from authorized offices, or from the individual, such as finance records, including all pay and allowances, insurance data used to identify subject and beneficiaries, death certificates or reports and basis for issuance, and processing papers on Return to Military Control (RTMC).

4. ────────────────────────────────

## 5.  CHAPTER 2. PROCESSING PROCEDURES BY INQUIRY TYPE
## 6.  TABLE OF CONTENTS

| Paragraph Title | Paragraph Number |
|---|---|
| General............................................... | 1 |
| Department of Veterans Affairs (VA)........................ | 2 |
| Immigration and Naturalization (INS)...................... | 3 |
| Statement of Service........................................ | 4 |
| Claims and Appeals.......................................... | 5 |
| Decorations and Awards..................................... | 6 |
| Routine Correspondence..................................... | 7 |
| Special Correspondence..................................... | 8 |

| Figure 2-1. | NPRC Test Form 02-01, Request for Additional Information on VA Form 3101 |
| Figure 2-2. | Form N-426, Request for Certification of Military or Naval Service |
| Figure 2-3. | Form N-426, Reverse of Figure 2-2 Form |
| Figure 2-4. | NPRC Test Form 02-02, Additional Information (Supplement to VA Form 3101) |
| Figure 2-5. | NPRC Test Form 02-03, Additional Information |

Figure 2-6.    NPRC Test Form 02-03, Page 2 of Figure 2-5 Form

Figure 2-7.    NPRC Test Form 02-04, Determination of Status Under the MPA, As Amended (No Status)

Figure 2-8.    NPRC Test Form 02-13, Request for and Report of Search

Figure 2-9.    Form SSA-654-U4, Certification by Uniformed Services

Figure 2-10.    Form SSA-654-U4, Certification by Uniformed Services (Reverse of Figure 2-9 Form)

Figure 2-11.    NPRC Test Form 02-05, Determination of Status Under the MPA, As Amended

Figure 2-12.    NPRC Test Form 02-05A, Determination of Status Under the MPA, As Amended

Figure 2-13.    DA Form 1577, Authorization for Issuance of Awards

Figure 2-14.    VA Form 3101, Finding Aid Report

Figure 2-15.    PA Section Form Letter, Statement of Service

Figure 2-16.    Work-In-File Form, Subject: Military Records (List Cases)

Figure 2-17.    AGRD Form WCC-1, Military Service Data

Figure 2-18.    GSXRP (PA) Form No. 9, Claim for Arrears in Pay and Quarters Allowance, Page 1 of 4

Figure 2-19.    GSXRP (PA) Form No. 9, Page 2 of 4

Figure 2-20.    GSXRP (PA) Form No. 9, Page 3 of 4

Figure 2-21.    GSXRP (PA) Form No. 9, Page 4 of 4

Figure 2-22.    Form 22-A PA, Personal Record, Army of the Philippines, Page 1 of 5

Figure 2-23.    Form 22-A, Page 2 of 5

Figure 2-24.    Form 22-A, Page 3 of 5

Figure 2-25.    Form 22-A, Page 4 of 5

Figure 2-26.    Form 22-A, Page 5 of 5

Figure 2-27.    PA AGO Form 23, Affidavit for Philippine Army Personnel, Page 1 of 4

Figure 2-28.    PA AGO Form 23, Page 2 of 4

Figure 2-29.    PA AGO Form 23, Page 3 of 4

Figure 2-30.    PA AGO Form 23, Page 4 of 4

Figure 2-31.    WD AGO Form 38, Report of Physical Examination of Enlisted Personnel Prior to Discharge, Release from Active Duty or Retirement

Figure 2-32.    WD AGO Form 38, Reverse of Figure 2-31 Form

Figure 2-33.    AGRD Form 46, Request for Information

Figure 2-34.    AGRD Form 46, Reverse of Figure 2-32 Form

Figure 2-35.    WCC Form 602, Application for Ex-POW Allowance Page 1 of 3

Figure 2-36.    WCC Form 602, Page 2 of 3

Figure 2-37.    WCC Form 602, Page 3 of 3

Figure 2-38.    NPRC Test Form 02-06, Record of Casualty in the Field

Figure 2-39.    NPRC Test Form 02-12, Request for Archive Information and Record of Search

Figure 2-40.    NPRC Test Form 02-12 (Continued)

Figure 2-41.    NPRC Test Form 02-07, Certificate, Death Record of POWs

Figure 2-42.     NPRC Test Form 02-09, Record of Hospitalization, Hermosa and Bulacan Hospitals

Figure 2-43.     NPRC Test Form 02-09A, Record of Hospitalization, Tarlac and Pampanga Hospitals

Figure 2-44.     NPRC Test Form 02-10, Record of NSLI (National Service Life Insurance)

Figure 2-45.     NPRC Test Form 02-08, War Department Casualty Report

Figure 2-46.     NPRC Test Form 02-11, Prisoner of War Information

Figure 2-47.     Listing of Variations of Spelling of Philippine Names

7.

8.  # CHAPTER 2.  PROCESSING PROCEDURES BY INQUIRY TYPE

1.  **General**.  This chapter contains guidance for processing PA inquiries by the types most frequently received.  It explains the various processing considerations and the steps needed to provide accurate service history data for the PA veteran to authorized Government agencies and individuals.  It also contains copies, or examples of the various forms used in processing inquiries or documenting evidence regarding PA veterans.

    Note.  The Appendix to this memorandum provides additional details on the background and history of the Philippine Army.  These details and definitions must be consulted and used in determinations of more complex cases.  Allowable affidavits from affiants, category of service, dates of service, and status of the veteran's service, etc., are just some of the considerations in the verification of service.  This historical information and guidance must be compared to evidence available in the military organizational records, and must be allowable under the guidelines provided (i.e., comparing claimed service dates against proper and allowable dates of service for particular named PA units).

2.  **Department of Veteran Affairs (VA).**  Only persons who performed military service in the Armed Forces of the United States, i.e., veterans and their dependents are entitled to veterans benefits.  This includes individuals who served, in conjunction with the US

military, as members of the Philippine Commonwealth Army, and recognized Guerrilla forces.  Those former members are potentially entitled to benefits under the laws administered by the VA and through determination of status under the MPA, as amended.  These benefits may include granting compensation for service-connected death or disability, hospitalization benefits, and/or benefits under the National Service Life Insurance Act of 1940.  The VA does not determine service, but instead refers this matter to the proper agency for determination.  Most inquiries regarding VA claims are received for processing on a VA Form 3101 (See Figure 2-14).

   a.  <u>Service history data</u>.  This data is based on evidence available in the PA military organizational records, and details regarding positive service are provided to VA on NPRC Test Form 02-03, and a copy of this data is filed in the claims folder.  This form is filed in the claims folder, and <u>not</u> provided to the VA when negative service is determined.  Information regarding service in a regular Philippine Army unit during or after the liberation, including various incidents thereof, death data, medical data, and insurance data is considered necessary for properly adjudicating a VA claim.  It is important therefore to use great care and accuracy in providing service history data, since eligibility for benefits is determined from this data.

   b.  <u>Processing procedures</u>.  Review inquiry and any claims folder information to determine whether inquiry is a <u>previous determination</u> (previously worked case), or an inquiry with <u>no previous determination</u>.

   <u>Note</u>.  For expediency in case completion, complete and provide response to previous determination type inquiries first, as detailed below, since previously documented information is readily available in claims folder.

   (1)  <u>Previous determination</u>.  If a Form 46, ARPC Form 632 or 646 or NPRC Test Forms 02-03 or 02-12 is contained in the folder, case has previously been worked, possibly as another case type.  Compare information in the claims folder and on the inquiry.  Remove documentation requested by VA from claims folder.  Provide the duplicate carbon in the claims folder, if any, of the PA AGO Form 23, otherwise, provide a copy of Form 23 to the VA.  In addition, provide <u>any originals</u> of any medical or clinical documentation in the claims folder to the VA.  The original, or copy of any medical or clinical documentation is not retained in the claims folder.  Prepare an NPRC Test Form 02-03, Additional Information, from the service history data in the claims folder, and provide a copy of the form to VA.

   (2)  <u>No previous determination</u>.  Perform an archival search for inquiries having no claims folder, or those inquiries having no previous determination.  If no previous determination has been made, and evidence of service appears to be positive, determine qualifying service and eligibility status.  This is accomplished by comparing cited dates of service in inquiry against the listing of

service dates (see note below) legitimate for PA service, and by comparing with Form 23 and VA Form 3101 information.  Service must have occurred within the range of allowable dates to be considered as valid PA service.  Verify service as USAFFE, Guerrilla, or both by reviewing the archive information and claims folder information.

Note.  The listing of legitimate service dates pertaining to USAFFE and Guerrilla service is derived from Appendix 13, titled, Notes of the Philippine Army 1941-1942, Bona fide USAFFE Units, in the Standard Operating Procedures (SOP) of the Recovered Personnel Records Branch, MPRC, dated August 31, 1955.  This SOP pertains to Circular No. 305, War Department, Washington 25, D.C., July 18, 1944.

   (a)  If no previous determination and service is verified as positive.  Prepare NPRC Test Forms 02-03, 02-04 and/or 02-05, based on type of service.  Provide the following documents to VA, attached to VA Form 3101:  Any originals of any physical or clinical documentation in the claims folder, one copy of NPRC Test Form 02-03, and any carbon copies in the claims folder of Form 23, (or provide a copy of Form 23), any court martial proceedings, Army Board proceedings, record of NSLI, and any POW information. The originals or copies of medical or clinical information are not retained in the claims folder.  (If subject is deceased, provide two copies of NPRC Test Form 02-03 to VA.)  File one copy of original request (VA Form 3101) in claims folder.  Search archives of National Service Life Insurance (NSLI), and if positive, provide one copy of NPRC Test Form 02-10 to VA.

   (b)  If no previous determination and service is NOT verified as positive.

   [1]  If Guerrilla service negative.  If evidence of service is negative, complete NPRC Test Form 02-04, indicating negative service.  Affiant information cannot be used to verify Guerrilla service.  Stamp original of VA Form 3101 as NEGATIVE, and return by mail to VA liaison office.  Inquiries originating from the VA Manila office are returned to that office, and routed through the liaison office.  File one copy of VA Form 3101 and one copy of NPRC Test Form 02-04 in the claims folder.

Note.  Guerrilla service cannot be verified by affidavits, and may only be used to verify USAFFE service.  For Guerrilla and USAFFE time the following service time is considered as valid:

USAFFE Time – from Sep 1, 1941 to May 7, 1942
USAFFE PA Air Corps – Aug 15, 1941 to May 7, 1942
Guerrilla Time – from May 7, 1942 to Jun 30, 1946

[2]  If USAFFE service negative.  If service cannot be verified with reasonable certainty, search the PA affidavit information for further evidence of service.  This is accomplished by searching for affiant claim folder and comparing affiant information against information available on subject individual in inquiry.  Claims folder must contain affidavits from affiants which are already documented, and affiant information must have occurred and be documented prior to June 30, 1948.

[a]  If USAFFE service negative and no record of service exists.  Review request and determine whether there is a negative or positive archives hit on rosters.  For an archives hit to be positive, the information found in the archives must agree with information in the claims folder.

<1>  No archives hit on rosters.  Create a new claims folder.  Prepare NPRC Test Forms 02-03 and 02-04.  Stamp original copy of VA Form 3101 as negative and return by mail to VA.  File one copy of VA Form 3101 and NPRC Test Forms 02-03 and 02-04 in the claims folder.

<2>  Positive archives hit on rosters.  If there is evidence of service on rosters, but no claims folder exists in the military organizational files, request additional information from VA to complete inquiry.  Prepare NPRC Test Form 02-01, Request for Additional Information on VA Form 3101 (for Form 23 information), and mail to VA.  Suspense case completion, and upon receipt of the Form 23 information from VA, inquiry can be completed.

[b]  If USAFFE service negative and a record of service exists.  If claims folder information indicates a record of service does exist, compare to archives information to determine whether archives hit is positive or negative.

<1>  If a positive archives hit.  Complete VA Form 3101 and prepare NPRC Forms Test Forms 02-03 and 02-05.  Mail original VA Form 3101 and one copy of Form 02-03 with appropriate documentation, to the VA.  File one copy of VA Form 3101 and the original of NPRC Forms 02-03 and 02-05 in the claims folder.

<2>  If a negative archives hit.  Search for secondary evidence in the claims folder by searching for affiant evidence.  If

claims folder contains one affiant - affiant must be the rank of sergeant or above.  If claims folder contains two or more affiants – affiant can be any rank.  If two or more affiants, at least two affiants information must match in individual's record.  Compare the affiant information in the claims folder of subject of inquiry, and determine whether information matches.  If information matches positive service is verified.  If information does not match, negative service is verified.

<a>  Positive service is verified.  Complete VA Form 3101 and prepare NPRC Test Forms 02-03 and 02-05.  Mail the original VA Form 3101 and one copy of NPRC Test Form 02-03 with appropriate documentation to the VA.  File one copy of VA Form 3101 and the original of NPRC Test Forms 02-03 and 02-05 in the claims folder.

<b>  Negative service is verified.  Prepare NPRC Test Forms 02-03 and 02-04.  Complete VA Form 3101 and mail negative report to the VA.  File one copy of VA Form 3101 and NPRC Forms 02-03 and 02-04 in the claims folder.

3.   **Immigration and Naturalization (INS)**.  Immigration and Naturalization Service inquiries are normally submitted to NPRC on INS Form N-426, Request for Certification of Military or Naval Service.  Inquiries may be received in other forms, or from individuals who served or allegedly served with the Philippine Commonwealth Army, including recognized guerrillas, in the service of the United States during the period December 8, 1941 and June 30, 1946.

    .   Service history data.  This data is based on evidence available in the PA military organizational records, and details regarding positive or negative service are provided to INS on Form N-426.  A copy of this form, upon completion, is filed in the claims folder.  Information regarding service in a regular Philippine Army unit during or after the liberation, including evidence of beginning and ending dates of service, location of service, release and alienation data is furnished on Form N426.  This data is used by INS for properly adjudicating a INS claim.  It is important therefore to use great care and accuracy in providing service history data.

    a.   Processing procedures.  The general processing procedures detailed in processing Veterans Affairs inquiries also apply to INS processing with the exception of the following:

    (1)  Review the claims folder (if any) to determine a positive match with the individual on the inquiry.  Determine eligibility status by comparing cited dates of service in inquiry against the listing of service dates legitimate for PA service.  (Compare Form 23, Form 22A, or Form 9 (for deceased) and Form N-426 information).  Service must have occurred within the range of allowable dates to be considered as valid PA service.  Verify service as USAFFE,

Guerrilla, or both by reviewing the archives information and claims folder information.

(2)  Review inquiry by comparing with claims folder information to determine whether Inquiry is a <u>previous determination</u> (previously worked case), or an inquiry with <u>no previous determination</u>.

<u>Note</u>.  For expediency in case completion, complete and provide response to previous determination type inquiries first, as detailed below, since previously documented information is readily available in claims folder.

(a)  <u>Previous determination</u>.  If a Form 46, ARPC Form 632 or 646, or NPRC Test Forms 02-03, or 02-12 are contained in the folder, case has previously been worked, possibly as another case type.  Compare information in the claims folder and on the inquiry.  Extract information requested by INS from claims folder, and provide requested information on the Form N-426.  File one copy of request and reply information in the claims folder.

(b)  <u>No previous determination</u>.  Perform an archival search for inquiries having no claims folder, or those inquiries having no previous determination.  If no previous determination has been made, and service evidence indicates positive service, determine qualifying service and eligibility status.  This is accomplished by comparing cited dates of service in inquiry against the listing of service dates (see note below) legitimate for PA service, and by comparing with Form 23 and inquiry information.  Service must have occurred within the range of allowable service dates to be considered as valid PA service.  Verify service as USAFFE, Guerrilla, or both by reviewing the archives information and claims folder information.  Prepare an NPRC Test Form 02-03, from the service history data in the claims folder, and provide a copy of this form to INS.

<u>Note</u>.  The listing of legitimate service dates pertaining to USAFFE and Guerrilla is derived from Appendix 13, titled, Notes of the Philippine Army 1941-1942, Bona fide USAFFE Units, in the Standard Operating Procedures (SOP) of the Recovered Personnel Records Branch, MPRC, dated August 31, 1955.  This SOP pertains to Circular No. 305, War Department, Washington 25, D.C., July 18, 1944.

[1]  <u>If no previous determination and service is verified as positive</u>.  Prepare NPRC Test Forms 02-03, 02-04 and/or 02-05

based on type of service.  Complete the reverse side of INS Form N-426 with applicable information.  File a copy of original request from INS, front and reverse side, and originals of NPRC Test Forms in claims folder.

[2]  If no previous determination and service is NOT verified as positive.

[a]  If Guerrilla service negative.  If evidence of service is negative, complete NPRC Test Form 02-04, indicating negative service.  Indicate negative service on Form N-426.  Stamp and apply seal to reverse side of Form N426 at the bottom of form.  Mail original of Form N-426 to INS.  File one copy of Form N-426 and NPRC Test Form 02-04 in the claims folder.

Note.  Guerrilla service cannot be verified by affidavits, and may only be used to verify USAFFE service.  For Guerrilla and USAFFE time the following service time is considered as valid:

USAFFE Time – from Sep 1, 1941 to May 7, 1942
USAFFE PA Air Corps – Aug 15, 1941 to May 7, 1942
Guerrilla Time – from May 7, 1942 to Jun 30, 1946

[b]  If USAFFE service negative.  If service cannot be verified with reasonable certainty, search the PA affidavit information for further evidence of service.  This is accomplished by searching for affiant claim folder and comparing affiant information against information available on subject individual in inquiry.  Claims folder must contain affidavits from affiant that is already documented, and affiant information must have occurred and be documented prior to June 30, 1948.

<1>  If USAFFE service negative and no record of service exists.  Review request and determine whether there is a negative or positive archives hit on rosters.  For an archives hit to be positive, the information found in the archives must agree with information in the claims folder.

<a>  No archives hit on rosters.  Create a new claims folder.  Prepare NPRC Test Forms 02-03 and 02-04.  Complete Form N-426 to indicate negative service.  Mail original copy of Form N-426 to INS.  File one copy of Form N-426 and originals of NPRC Test Forms 02-03 and 02-04 in the newly created claims folder.

<b>  Positive archives hit on rosters.  If evidence of service exists on rosters, but no claims folder exists in the military organizational files, request additional information from VA to

21

complete inquiry.  Prepare NPRC Test Form 02-01, Request for Additional Information on VA Form 3101 (for Form 23 information), and mail to VA.  Suspense case and upon receipt of the Form 23 information from VA, inquiry can be completed.

    <2>  If USAFFE service negative and a record of service exists.  If claims folder information indicates a record of service does exist, compare to archives information to determine whether archives hit is positive or negative.

    <a>  If a positive archives hit.  Prepare NPRC Test Forms 02-03 and 02-05 or 05A.  Form N-426 is noted on reverse of form with service entry location, service dates, branch of service, and type of discharge.  Stamp and apply NPRC seal to reverse side of Form N-426 at the bottom of form.  Mail original of Form N-426 to INS.  File one copy of Form N-426 and originals of NPRC Test Forms in claims folder.

    <b> If a negative archives hit.  Search for secondary evidence in the claims folder by searching for affiant evidence.  If claims folder contains one affiant - affiant must be sergeant or above.  If claims folder contains two or more affiants – affiant can be any rank.  If two or more affiants, at least two affiants information must match in individual's record.  Compare the affiant information in the claims folder of subject inquiry, and determine whether information matches.  If information matches positive service is verified.  If information does not match, negative service is verified.  Stamp, date and apply NPRC seal to reverse side of Form N-426 at the bottom of form.  Mail original of Form N-426 to INS.  File one copy of Form N-426 in claims folder.

    {1}  Positive service is verified.  Prepare NPRC Test Forms 02-03 and 02-05.  Form N-426 is noted on reverse of form with service entry location, service dates, branch of service, and type of discharge.  Stamp, date and apply NPRC seal to reverse side of Form N-426 at the bottom of form.  Mail original of Form N-426 to INS.  File one copy of Form N-426 and originals of NPRC Test Forms in claims folder.

    {2} Negative service is verified.  Prepare NPRC Test Forms 02-03 and 02-04.  Complete Form N-426 to indicate negative service.  Mail original copy of Form N-426 to INS.  File one copy of Form N-426 and originals of NPRC Test Forms in the claims folder.

4.  **Statement of Service**.  Inquiries regarding "Statement of Service" or "Certification of Service" normally are received from three sources.  These sources are the Social Security

Administration (SSA), regarding retirement benefits, or inquiries from SSA regarding PL 106-109 inquiries, or from individuals requesting a statement of service.

.    General.  SSA inquiries are usually submitted to NPRC on Form SSA 654-U4, Request for Information from Uniformed Services.  Inquiries may be received in other forms, and from other sources regarding individuals who served or allegedly served with the Philippine Commonwealth Army, including recognized guerrillas, in the service of the United States during the period December 8, 1941 and June 30, 1946.

a.   Service history data.  This data is based on evidence available in the PA military organizational records, and details regarding service status are provided to SSA on Form SSA-654-U4.  A PA Form letter, Statement of Service, is also provided to SSA regarding evidence of positive or negative service for the individual subject of inquiry.  Information regarding service in a regular Philippine Army unit during or after the liberation, including evidence of beginning and ending dates of service, location of service, release and alienation data is furnished on this form letter.  A copy of SSA-654-U4, and the PA Statement of Service form letter are filed in the claims folder.  The data provided to SSA is used for properly adjudicating a claim.  It is important therefore to use great care and accuracy in providing service history data.

b.   Processing procedures.  The general processing procedures detailed in processing Veterans Affairs inquiries also apply to statement of service processing with the exception of the following:

(1)  Review the claims folder (if any) to determine a positive match with the individual on the inquiry.  Determine eligibility status by comparing cited dates of service in the inquiry against the listing of service dates legitimate for PA service.  Service must have occurred within the range of allowable service dates to be considered as valid PA service.  Verify service as either USAFFE, Guerrilla, or both by reviewing the archives information and claims folder information.

(2)  Review inquiry by comparing with claims folder information to determine whether Inquiry is a previous determination (previously worked case), or an inquiry with no previous determination.

Note.  For expediency in case completion, complete and provide response to previous determination type inquiries first, as detailed below, since previously documented information is readily available in claims folder.

(a)  Previous determination.  If a Form 46, an ARPC Form 632 or 646, or NPRC Test Forms 02-03 or 02-12 is contained in the folder, case has previously been worked, possibly as another case type.  Compare information in the claims folder and on the inquiry. If inquiry is from SSA on a Form SSA-654-U4, extract information

from claims folder and complete form; if inquiry is a SOS or SSI inquiry, complete PA form letter, Statement of Service.  File one copy of all completed forms in claims folder, and return completed form to requestor.

(b)  No previous determination.  Perform an archival search for inquiries having no claims folder, or those inquiries having no previous determination.  If no previous determination has been made, and service is found to be positive, determine qualifying service and eligibility status.  This is accomplished by comparing cited dates of service in inquiry against the listing of service dates (see note below) legitimate for PA service, and by comparing with Form 23 and inquiry information.  Service must have occurred within the range of allowable dates to be considered as valid PA service.  Verify service as USAFFE, Guerrilla, or both by reviewing the archives information and claims folder information...  Prepare an NPRC Test Form 02-03, Additional Information, from the service history data in the claims folder, and provide a copy of this form to SSA.

Note.  The listing of legitimate service dates pertaining to USAFFE and Guerrilla is derived from Appendix 13, titled, Notes of the Philippine Army 1941-1942, Bona fide USAFFE Units, in the Standard Operating Procedures (SOP) of the Recovered Personnel Records Branch, MPRC, dated August 31, 1955.  This SOP pertains to Circular No. 305, War Department, Washington 25, D.C., July 18, 1944.

[1]If no previous determination and service is verified as positive.  Prepare NPRC Test Forms 02-03, and/or 02-05 based on type of service.  Prepare a written response to the inquiry, indicating positive service, selecting the appropriate paragraphs from the PA library, or if applicable complete PA Form Letter, Statement of Service, or the reverse side of SSA-654-U4.  File one copy of the response, and the original inquiry from the requestor in the claims folder, or file one copy of the completed forms in the claims folder.  Mail the original of appropriate response to the requestor.

[2]  If no previous determination and service is NOT verified as positive

[a]  If Guerrilla service negative.  If evidence of service is negative, complete NPRC Test Form 02-04, indicating negative service.  Prepare a written response to the inquiry, selecting the appropriate paragraphs from the PA Library, or complete PA Form

24

Letter, Statement of Service, or the reverse of Form SSA-654-U4, as appropriate.  File one copy of the written response with the original inquiry from the requestor, or one copy of completed form, and one copy of NPRC Test Form 02-04 in the claims folder.  Mail the written response to the requestor.

Note.  Guerrilla service cannot be verified by affidavits, and may only be used to verify USAFFE service.  For Guerrilla and USAFFE time the following service time is considered as valid:

USAFFE Time – from Sep 1, 1941 to May 7, 1942
USAFFE PA Air Corps – Aug 15, 1941 to May 7, 1942
Guerrilla Time – from May 7, 1942 to Jun 30, 1946

[b]  If USAFFE service negative.  If service cannot be verified with reasonable certainty, search the PA affidavits information for further evidence of service.  This is accomplished by searching for affiant claim folder and insuring affiant documentation matches information available on subject of inquiry.  Claims folder must contain affidavits from affiants which are already documented, and affiant information must have occurred and be documented prior to June 30, 1948.

<1>  No archives hit on rosters.  Create a new claims folder.  Prepare NPRC Test Form 02-03 and 02-04.  Prepare a written response for DD Form 149, and 293, or a letter indicating negative service.  Mail original copy of written response, either the DD Form 149 or 293, or letter to the requestor.  File the original inquiry from the requestor, and one copy of DD Form 149, 293 or letter, and NPRC Test Forms in the newly created claims folder.

<2>  Positive archives hit on rosters.  If evidence of service exists on rosters, but no claims folder exists in the military organizational files, request additional information from VA to complete inquiry.  Prepare NPRC Test Form 02-01, Request for Additional Information to VA (for Form 23 information), and mail to VA.  Suspense case, and upon receipt of the Form 23 information from VA, inquiry can be completed.

[c]  If USAFFE service negative and a record of service exists.  If claims folder information indicates a record of service does exist, compare to archives information to determine whether archives hit is positive or negative.

<1>  If a positive archives hit.  Prepare NPRC Test Forms 02-03 and 02-05.  Prepare a written response to the inquiry, selecting the appropriate paragraph from the PA library, and mail

the written response to the requestor.  File one copy of the written response, one copy of the NPRC Test Forms, and the original inquiry from the requestor in the claims folder.

<2>  <u>If a negative archives hit</u>.  Search for secondary evidence in the claims folder by searching for affiant evidence.  If claims folder contains one affiant - affiant must be sergeant or above.  If claims folder contains two or more affiants – affiant can be any rank.  If two or more affiants, at least two affiants information must match in individual's record.  Compare the affiant information in the claims folder of subject inquiry, and determine whether information matches.  If information matches positive service is verified.  If information does not match, negative service is verified.

<a>  <u>Positive service is verified</u>.  Prepare NPRC Test Forms 02-03 and 02-05.  Prepare a written response to the inquiry, selecting the appropriate paragraphs from the PA library and mail the written response to the requestor.  File one copy of the written response, one copy of the NPRC Test Forms and the original inquiry from the requestor in the claims folder.

<b>  <u>Negative service is verified</u>.  Prepare NPRC Test Forms 02-03 and 02-04.  Prepare a written response to the inquiry, selecting the appropriate paragraphs from the PA library and mail the written response to the requestor.  File one copy of the written response, one copy of the NPRC Test Forms, and the original inquiry from the requestor in the claims folder.

5.  **Claims and appeals**.  Claims and appeals inquiries regard appeals on prior certifications to the Department of Veterans Affairs, or other Government agencies.  An appeal may contain new evidence that alone, or in conjunction with other evidence in the PA archives/claims folder, warrants a re-determination of service.  Examples are:
- Documents showing military service at the outbreak and/or during World War II.
- Proof of identity, if lack of identification or wrong application of an archive was the cause of previous denial.
- Reference to or location of archives, which were not previously located, authenticated, or considered in prior determination.
- Discovery of obvious errors in prior determinations.

d.  <u>General</u>.  Claims and appeals inquiries are normally submitted in the form of a DD Form 149, (no title), forwarded from the Army Board of Corrections, from individuals requesting records correction.  An appeal may also be a letter from an individual, their Power of Attorney, or legal representative.  These inquiries regard individuals who served or allegedly served with the Philippine Commonwealth Army, including recognized guerrillas, in the service of the United States during the period December 8, 1941 and June 30, 1946.

e. <u>Service history data</u>.  This data is based on evidence available in the PA military organizational records.  In these cases archive information is re-examined to provide any previously missed details regarding positive service, to search for mis-filed claims folders, and other archive and affiant information, and to ensure the previously provided service certification was correct.

f. <u>Processing procedures</u>.  The general processing procedures detailed in processing Veterans Affairs inquiries also apply to claims and appeals processing with the exception of the following:

(1)  Review the claims folder (if any), to determine a positive match with the individual on the inquiry.  Establish eligibility status by comparing cited dates of service in inquiry against the listing of service dates legitimate for PA service.  Service must have occurred within the range of allowable dates to be considered as valid PA service.  Verify service as either USAFFE, Guerrilla, or both by reviewing the archives information and claims folder information.

Note.  The listing of legitimate service dates pertaining to USAFFE and Guerrilla is derived from Appendix 13, titled, Notes of the Philippine Army 1941-1942, Bona fide USAFFE Units, in the Standard Operating Procedures (SOP) of the Recovered Personnel Records Branch, MPRC, dated August 31, 1955.  This SOP pertains to Circular No. 305, War Department, Washington 25, D.C., July 18, 1944.

(2)  <u>If previous determination was negative, and service is verified as positive</u>.  Prepare NPRC Test Forms 02-03, 02-04 and/or 02-05 based on type of service.  Prepare a written response to the inquiry, selecting the appropriate paragraph from the PA library based on evidence of service re-determined, document the re-determination, and mail the written response to the requestor.  File one copy of the written response, the original inquiry from the requestor, and the NPRC Test Forms in the claims folder.

(3)  <u>If previous determination was negative and service is NOT verified as positive</u>.  If service cannot be verified with reasonable certainty, search the PA archive and affiant information, if any for further evidence of service.  Any affiant information must be compared to, and match information available on subject individual in inquiry.  Claims folders must contain affidavits from affiants which is already documented, and affiant information must have occurred and be documented prior to June 30, 1948.

Note.  Guerrilla service cannot be verified by affidavits, and may only be used to verify USAFFE service.  For Guerrilla and USAFFE time the following service time is considered as valid:

27

USAFFE Time – from Sep 1, 1941 to May 7, 1942
USAFFE PA Air Corps – Aug 15, 1941 to May 7, 1942
Guerrilla Time – from May 7, 1942 to Jun 30, 1946

(a) Positive service is verified.  Prepare NPRC Test Forms 02-03 and 02-05.
Prepare a written response to the inquiry, selecting the appropriate paragraph
from the PA library, and mail the written response to the requestor indicating a
re-determination.  File a copy of the original request, and response, and one
copy of the NPRC Test Forms in the claims folder.

(b) Negative service is verified.  If evidence of service is
negative, complete NPRC Test Form 02-04, indicating negative
service.  Prepare a written response to the inquiry, selecting the
appropriate paragraph from the PA library and mail the written
response to the requestor.  File one copy of the written response,
the original inquiry from the requestor, and NPRC Test Form in the
claims folder.

6. **Decorations and Awards**.  Inquiries regarding Decorations and Awards normally are
received from individuals, or their next of kin, who served or allegedly served with the
Philippine Commonwealth Army, including recognized guerrilla forces, in the service of
the US Armed Forces in the Philippines for the period of December 8, 1941 and June 30,
1946. Only those persons for whom a positive service identity can be established are
potentially entitled to decorations and awards.

. Service history data.  This data is based on evidence available in the PA military
organizational records, and is used to determine positive or negative service
regarding eligibility for decorations and awards.  Information regarding service
in a regular Philippine Army unit during or after the liberation, including
evidence of beginning and ending dates of service, location of service, release
and alienation data, and awards eligibility data must be verified.

a. Types of Awards.  The following decorations and service awards are appropriate
for former USAFFE/Guerrilla veterans, when eligible by service history data:

**Presidential Unit Emblem** – for service during the periods
December 8 – 31, 1941; January 6 through February 14 1942; or
December 7, 1941 through May 10, 1942.  Note:  Oak Leaf
Clusters will not be awarded to Filipino Nationals.
**American Defense Service Medal** – for service prior to December
7, 1941.
**Asiatic-Pacific Campaign Medal** – for service in the Asiatic-
Pacific Theater.  Bronze Stars awarded for battle campaign during
the period December 7, 1941 through July 4, 1945.
**World War II Victory Medal** – Applicable whenever veteran was
honorably discharged or died in service.
**Philippine Defense Ribbon with One Bronze Service Star** – For
service of not less than 30 days between December 8, 1941 and

June 15, 1942.

**Philippine Liberation Ribbon** – For service of not less than 30 days between October 17, 1944 and September 3, 1945.  Up to 2 Bronze Service Stars may be awarded; however, no Bronze Service Stars are awarded for Papua or New Guinea campaigns.

**Philippine Independence Ribbon** – Awarded to veterans who are recipients of both the Philippine Defense Ribbon and the Philippine Liberation Ribbon.

**POW Medal** – Awarded to PA USAFFE veterans credited with POW time.

**Combat Infantry Badge** – Awarded to infantry PA USAFFE from a unit of regimental size or smaller.  Entitles veteran to a regular Bronze Star.

**Purple Heart** – Conditions for awarding the Purple Heart are the same as for member of the United States Armed Forces.  Periods during which the veteran is carried in a status of "Pre-War Service" or "Missing", or "No Casualty" are not considered in evaluation eligibility for this award.

**Accolade** – Awarded when veteran was killed in action.

b.  Processing procedures.  The general processing procedures detailed in processing Veterans Affairs inquiries also apply to decorations and awards processing with the exception of the following:

(1)  The Archives Technician will review the attached claims folder (if any), searched from the PA military organizational files, to determine a positive match with the individual on the inquiry. Determine eligibility status by comparing cited dates of service in inquiry against the listing of service dates legitimate for PA service. (Compare Form 23, Form 22A, or Form 9 (for deceased) and inquiry information).  Service must have occurred within the range of allowable dates to be considered as valid PA service.  Verify service as either USAFFE, Guerrilla, or both by reviewing the archives information and claims folder information.

Note.  The listing of legitimate service dates pertaining to USAFFE and Guerrilla is derived from Appendix 13, titled, Notes of the Philippine Army 1941-1942, Bona fide USAFFE Units, in the Standard Operating Procedures (SOP) of the Recovered Personnel Records Branch, MPRC, dated August 31, 1955.  This SOP pertains to Circular No. 305, War Department, Washington 25, D.C., July 18, 1944.

(2)  Review inquiry by comparing with claims folder information to determine whether inquiry is a previous determination (previously worked case), or an inquiry with no previous determination.

Note.  For expediency in case completion, complete and provide response to previous determination type inquiries first, as detailed below, since previously documented information is readily available in claims folder.

(a)  Previous determination.  Examine claims folder information.  If a Form 46, and/or ARPC Form 632 or 646, or NPRC Test Forms 02-03 or 02-12 is contained in the folder, case has previously been worked, possibly as another case type.  Compare information in the claims folder and on the inquiry.  If information available in the claims folder is compatible with inquiry information, verify qualification for award.

[1]  If qualification for award is verified.  If information in the inquiry is substantiated in the claims folder, qualification for award is verified.  Complete DA Form 1577, Authorization for Issuance of Awards.  Mail the original with copies 2 and 3 of DA Form 1577 to the US Army Soldier and Biological Chemical Command, IMMC, Soldier Systems Directorate, 700 Robbins Avenue, PO Box 57997, Philadelphia, PA 19111-7997.  Mail copy 4 to the individual award recipient.  File original inquiry from requestor, one copy of DA Form 1577, and one copy of DA form 1577 in claims folder.

[2]  If qualification for award is not verified.  If information in claims folder does not support inquiry award requested, prepare form letter by selecting appropriate paragraph from the PA Library to respond to requestor with explanation of non-qualification.  File one copy of response with original inquiry in the claims folder.

(b)  No previous determination.  Perform an archival search for inquiries having no claims folder, or those inquiries having no previous determination.  If no previous determination has been made, and service is found to be positive, determine qualifying service and eligibility status for award requested.  This is accomplished by comparing cited dates of service in inquiry against the listing of service dates (see note below) legitimate for PA service, and by comparing with Form 23 and inquiry information.  Service must have occurred within the range of allowable dates to be considered as valid PA service.  Verify service as USAFFE, Guerrilla, or both by reviewing the archive information and claims folder information.

Note.  The listing of legitimate service dates pertaining to USAFFE and Guerrilla is derived from Appendix 13, titled, Notes of the Philippine Army 1941-1942, Bona fide USAFFE Units, in the Standard Operating Procedures (SOP) of the Recovered Personnel

Records Branch, MPRC, dated August 31, 1955.  This SOP pertains to Circular No. 305, War Department, Washington 25, D.C., July 18, 1944.

[1]  <u>If no previous determination and service is verified as positive</u>.  Prepare <u>NPRC Test Forms 02-03</u>, <u>02-04</u> and/or <u>02-05</u> based on type of service.  Review inquiry and claims folder and compare information to verify qualification for award.

[a]  <u>Qualification for award is verified</u>.  If qualification for award is verified by information in the claims folder, complete <u>DA Form 1577</u>, Authorization for Issuance of Awards.  Mail the original with copies 2 and 3 of <u>DA Form 1577</u> to the US Army Soldier and Biological Chemical Command, IMMC, Soldier Systems Directorate, 700 Robbins Avenue, PO Box 57997, Philadelphia, PA 19111-7997.  Mail copy 4 to the individual award recipient.  File original inquiry from requestor, one copy of <u>DA Form 1577</u>, and one copy of ARPC Forms in claims folder.

[b]  <u>Qualification for award is not verified</u>.  If information in claims folder does not support inquiry award requested, prepare form letter by selecting appropriate paragraph from the PA Library to respond to requestor with explanation of non-qualification.  File one copy of response with original inquiry in the claims folder.

[2]  <u>If no previous determination and service is NOT verified as positive.</u>

[a]  <u>If Guerrilla service negative</u>.  If evidence of service is negative, complete <u>NPRC Test Form 02-04</u>, indicating negative service.  Indicate negative service on inquiry response by selecting the appropriate paragraphs from the PA Library.  Mail original of response to the originator of inquiry.  File one copy of response and NPRC Test Form in the claims folder.

<u>Note</u>.  Guerrilla service cannot be verified by affidavits, and may only be used to verify USAFFE service.  For Guerrilla and USAFFE time the following service time is considered as valid:

USAFFE Time – from Sep 1, 1941 to May 7, 1942
USAFFE PA Air Corps – from Aug 15, 1941 to May 7, 1942
Guerrilla Time – from May 7, 1942 to Jun 30, 1946

[b]  <u>If USAFFE service negative</u>.  If service cannot be verified with reasonable certainty, search the PA affidavit information for further evidence of service.  This is accomplished by searching for affiants claim folder and insuring

affiant information matches information available on subject individual in inquiry.  Claims folder must contain affidavits from affiant which is already documented, and affiant information must have occurred and be documented prior to June 30, 1948.

<1>  If USAFFE service negative and no record of service exists.  Review request and determine whether there is a negative or positive archives hit on rosters.  For an archives hit to be positive, the information found in the archives must agree with information in the claims folder.

<a>  No archives hit on rosters.  Create a new claims folder.  Prepare NPRC Test Forms 02-03 and 02-04.  Prepare a response to the originator of inquiry from the PA Library pattern paragraphs to indicate negative service.  Mail original of response to originator of inquiry.  File one copy of response and NPRC Test Forms in the newly created claims folder.

<b>  Positive archives hit on rosters.  If there is evidence of service on rosters, but no claims folder exists in the military organizational files, request additional information from VA to complete inquiry.  Prepare NPRC Test Form 02-01, Request for Additional Information to VA (for Form 23 information), and mail to VA.  Suspense case and upon receipt of the Form 23 information from VA, inquiry can be completed.

<2>  If USAFFE service negative and a record of service exists.  If claims folder information indicates a record of service does exist, compare to archives information to determine whether archives hit is positive or negative.

<a>  If a positive archives hit.  Prepare NPRC Test Forms 02-03 and 02-05.  If qualification for award is verified by information in the archives, complete DA Form 1577, Authorization for Issuance of Awards.  Mail the original with copies 2 and 3 of DA Form 1577 to the US Army Soldier and Biological Chemical Command, IMMC, Soldier Systems Directorate, 700 Robbins Avenue, PO Box 57997, Philadelphia, PA 19111-7997.  Mail copy 4 to the individual award recipient.  File original inquiry from requestor, one copy of DA Form 1577, and one copy of NPRC Test Forms in claims folder.

<b>  If a negative archives hit.  Search for secondary evidence in the claims folders by searching for affiant evidence.  If claims folder contains one affiant - affiant must be sergeant or above.  If claims folder contains two or more affiants – affiant can be any rank.  If two or more affiants, at least two affiants

information must match in individual's record.  Compare the affiant information in the claims folder of subject inquiry, and determine whether information matches.  If information matches positive service is verified.

{1}  Positive service is verified.  Prepare NPRC Test Forms 02-03 and 02-05 or 05A.  If qualification for award is verified by information in the claims folder, complete DA Form 1577, Authorization for Issuance of Awards.  Mail the original with copies 2 and 3 of DA Form 1577 to the US Army Soldier and Biological Chemical Command, IMMC, Soldier Systems Directorate, 700 Robbins Avenue, PO Box 57997, Philadelphia, PA 19111-7997.  Mail copy 4 to the individual award recipient.  File original inquiry from requestor, one copy of DA Form 1577, and one copy of NPRC Test Forms in claims folder.

{2}  Negative service is verified.  Prepare NPRC Test Forms 02-03 and 02-04.  Prepare a response to the originator of inquiry from the PA Library pattern paragraphs to indicate negative service.  Mail original of response to originator of inquiry.  File one copy of original request, one copy of NPRC Test Forms, and one copy of reply in the claims folder.

7. **Routine Correspondence.**

   .    General.  Inquiries categorized as routine correspondence are normally received from the general public residing in the Philippines, who are requesting information regarding individuals who served, or allegedly served with the Philippine Commonwealth Army, including recognized guerrilla forces, in the service of the US Armed Forces in the Philippines for the period of December 8, 1941 through June 30, 1946.  This type correspondence is usually "turnaround" type, either directing the requestor to contact the appropriate agency for a response, or forwarding the inquiry to the appropriate agency, if known.  These instructions apply to those inquiries that are routine or repetitive in nature, or which cannot be segregated as a request from a Government agency, or do not regard the following:

   Decorations and Awards
   Claims and Appeals
   Statements of Service
   Special Correspondence (Congressional or White House)

   a.   Service history data.  This data is based on evidence available in the PA military organizational records.  Information regarding service in a regular Philippine Army unit during or after the liberation, including evidence of beginning and ending dates of service, location of service, release and alienation data and other information provided to individuals in response to routine

correspondence inquiries, must comply with the Freedom of Information Act of 1974 (FOIA) and the Privacy Act as releasable data.

b.  Processing procedures.  All general inquiries received from individuals, their next of kin, or representative will be responded to except when specific authority to file without action is received from the Supervisor.

(1)  Copies of claims folders information, and other archive information requested from individuals residing in the Philippines are provided in accordance with NPRC policies and directives and must comply with the FOIA and Privacy Act guidance.

(2)  Requests for copies of records from persons residing in the US (or naturalized citizens residing on Guam) will be released in accordance with NPRC policies and directives and must comply with the FOIA and Privacy Act guidance.

(3)  Select the appropriate paragraphs from the PA Library in providing a response to requestor, providing appropriate information under above guidelines.  Provide the address of the appropriate organization or agency to which the inquiry should be directed if known, or forward the inquiry to the appropriate organization.

8.  **Special Correspondence**.  Inquiries classified as special correspondence usually regard Congressional, White House, or Freedom of Information Act (FOIA) correspondence.

.  Service history data.  This data is based on evidence available in the PA military organizational records, and details regarding positive service may be provided to the originator of inquiry.  This may include information regarding service in a regular Philippine Army unit during or after the liberation, including various incidents thereof, death data, medical data, and insurance data, etc.  It is important therefore to use great care and accuracy in providing service history data.

a.  Processing procedures.  Special correspondence requires priority processing from receipt and initial processing through completion.

(1)  Review the claims folder for previous denial information, and appropriate action required for processing is determined.  Verify eligibility status by comparing cited dates of service in inquiry against the listing of service dates legitimate for PA service. Service must be within the range of allowable dates to be considered as valid for PA service.  Verify service as either USAFFE, Guerrilla, or both by reviewing the archives information and claims folder information.

Note.  The listing of legitimate service dates pertaining to USAFFE and Guerrilla service is derived from Appendix 13, titled, Notes of the Philippine Army 1941-1942, Bona fide USAFFE Units, in the

Standard Operating Procedures (SOP) of the Recovered Personnel Records Branch, MPRC, dated August 31, 1955.  This SOP pertains to Circular No. 305, War Department, Washington 25, D.C., July 18, 1944.

(2)  Review inquiry by comparing with claims folder information to determine if inquiry is a previous determination (previously worked case), or an inquiry with no previous determination.

(a)  Previous determination.  Examine claims folder information.  If a DARP Form 46, and/or ARPC Form 632 or 646, or NPRC Test Forms 02-03, or 02-12 is contained in the folder, case has previously been worked, possibly as another case type.  Compare information in the claims folder and on the inquiry.  Determine if inquiry can be answered from information regarding previous determination.  Prepare written response with appropriate paragraphs from PA Library.  File one copy of response, and original inquiry in claims folder.  Mail response to originator of inquiry.

(b)  No previous determination.  Perform an archival search for inquiries having no claims folder, or those inquiries having no previous determination.  If no previous determination has been made, and service is found to be positive, determine qualifying service and eligibility status.  This is accomplished by comparing cited dates of service in inquiry against the listing of service dates (see note below) legitimate for PA service, and by comparing with Form 23 and VA Form 3101 information.  Service **must** have occurred within the range of allowable dates to be considered as valid PA service.  Verify service as USAFFE, Guerrilla, or both by reviewing the archives information and claims folder information.

Note.  The listing of legitimate service dates pertaining to USAFFE and Guerrilla service is derived from Appendix 13, titled, Notes of the Philippine Army 1941-1942, Bona fide USAFFE Units, in the Standard Operating Procedures (SOP) of the Recovered Personnel Records Branch, MPRC, dated August 31, 1955.  This SOP pertains to Circular No. 305, War Department, Washington 25, D.C., July 18, 1944.

[1]  If no previous determination and service is verified as positive.  Prepare NPRC Test Forms 02-03, 02-04 and/or 02-05, based on type of service.  Prepare written response with appropriate paragraphs from PA Library.  File one copy of response, and original inquiry in claims folder.  Mail response to originator of inquiry.

[2]  If no previous determination and service is NOT not verified as positive

[a]  If Guerrilla service negative.  If evidence of service is negative, complete NPRC Test Form 02-04, indicating negative service.  Affiant information cannot be used to verify Guerrilla service.  Prepare appropriate response to originator of inquiry using paragraphs from the PA Library.  File one copy of response, NPRC Test Form 02-04 and original inquiry in claims folder.  Mail response to originator of inquiry.

Note.  Guerrilla service cannot be verified by affidavits, and may only be used to verify USAFFE service.  For Guerrilla and USAFFE time the following service time is considered as valid:

USAFFE Time – from Sep 1, 1941 to May 7, 1942
USAFFE PA Air Corps – Aug 15, 1941 to May 7, 1942
Guerrilla Time – from May 7, 1942 to Jun 30, 1946

[b]  If USAFFE service negative.  If service cannot be verified with reasonable certainty, search the PA affidavit information for further evidence of service.  This is accomplished by searching for affiants claim folder and comparing affiant information against information available on subject individual in inquiry.  Claims folder must contain affidavits from affiants which are already documented, and affiant information must have occurred and be documented prior to June 30, 1948.

<1>  If USAFFE service negative and no record of service exists.  Review request and determine whether there is a negative or positive archives hit on rosters.  For an archives hit to be positive, the information found in the archives must agree with information in the claims folder.

<a>  No archives hit on rosters.  Create a new claims folder.  Prepare NPRC Test Forms 02-03 and 02-04.  Prepare appropriate response to originator of inquiry using paragraphs from the PA Library.  File one copy of response, one copy of NPRC Test Forms, and original inquiry in claims folder.  Mail response to originator of inquiry.

<b>  Positive archives hit on rosters.  If there is evidence of service on rosters, but no claims folder exists in the military organizational files, request additional information from VA to complete inquiry.  Prepare NPRC Test Form 02-01, Request for Additional Information, to VA (for Form 23 information), and mail to VA.  Notify originator of inquiry of reason for delay in processing.

File one copy of NPRC Test Form 02-01, one copy of notification of delay in processing to originator, or memorandum if originator is notified by telephone, in claims folder.  Suspense case and upon receipt of the Form 23 information from VA, inquiry can be completed.

      <2>  <u>If USAFFE service negative and a record of service exists</u>.  If claims folder information indicates a record of service does exist, compare to archives information to determine whether archives hit is positive or negative.

      <a>  <u>If a positive archives hit</u>.  Prepare NPRC Test Forms 02-03 and 02-05.  Prepare appropriate response to originator of inquiry using paragraphs from the PA Library.  File one copy of response, one copy of NPRC Test Forms and original inquiry in claims folder.  Mail response to originator of inquiry.

      <b>  <u>If a negative archives hit</u>.  Search for secondary evidence in the claims folder by searching for affiant evidence.  If claims folder contains one affiant - affiant must be rank of sergeant or above.  If claims folder contains two or more affiants – affiant can be any rank.  If two or more affiants, at least two affiants information must match in individual's record.  Compare the affiant information in the claims folder of subject of inquiry, and determine whether information matches.  If information matches positive service is verified.  If information does not match, negative service is verified.

      {1}  <u>Positive service is verified</u>.  Prepare NPRC Test Forms 02-03 and 02-05 or 05A.  Prepare appropriate response to originator of inquiry using paragraphs from the PA Library.  File one copy of response, the NPRC Test Forms, and original inquiry in claims folder.  Mail response to originator of inquiry.

      {2}  <u>Negative service is verified</u>.  Prepare NPRC Test Forms 02-03 and 02-04.  Prepare appropriate response to originator of inquiry using paragraphs from the PA Library.  File one copy of response, the NPRC Test Forms, and original inquiry in claims folder.  Mail response to originator of inquiry.

9.
_____

## 10. Appendix A
## 11. TABLE OF CONTENTS

| Paragraph Title | Paragraph Number |
| --- | --- |
| General............................................................ | 1 |
| Categories of valid service...................................... | 2 |
| Organizations..................................................... | 3 |
| Proof of USAFFE service.......................................... | 4 |
| Breakdown of PA service.......................................... | 5 |
| Grades, promotions, rates of pay................................. | 6 |
| Date and character of discharge.................................. | 7 |
| Death status..................................................... | 8 |
| Last date of entitlement to pay................................. | 9 |
| Cases previously adjudicated for arrears in pay for VA purposes.. | 10 |

12.
_____

## 13. Appendix A

1. <u>General</u>.  The Philippine Commonwealth Army was called into the service of the Armed Forces of the United States (US) by virtue of the Presidential Order issued on July 26, 1941.  Service of the Commonwealth Army in the US Armed Forces terminated as of 2400 hours, June 30, 1946, by virtue of GS #168, AFWESPAC, June 25, 1946, which released the military forces of the Government of the Commonwealth of the Philippines from duty in the US Armed Forces.  Veterans of the Commonwealth Army are considered to have rendered valid military service in the United States Armed Forces.  The term "Commonwealth Army" refers to persons who served before July 1, 1946 in the organized military forces of the Government of the Philippines, while such forces were in the service of the USAFFE, pursuant to the military order of the President of the United States dated July 26, 1941.  Included were organized guerrilla forces

38

under commanders appointed, designated, or subsequently recognized by the Commander-in-Chief (CIC), Southwest Pacific Area, or other component authority in the US Army, including individuals who were discharged from such service under conditions other than dishonorable.

2. <u>Categories of valid service</u>.  There are five categories of valid service for members of the PA:

. <u>PA USAFFE – Philippine Army US Armed Forces Far East</u>. Members who were inducted into the USAFFE service on or before the surrender of these forces on May 5, 1942.

a. <u>PA USAFFE Guerrillas - Philippine Army US Armed Forces Far East Guerrillas</u>.  Personnel who had military service with the US Armed Forces on or before May 5, 1942, and later had service in the guerrilla forces recognized by the US Army as manifested on Initial Reconstructed Rosters, Casualty Roster of recognized guerrilla units, or in letters of individual casualty or non-casualty recognition.  An inquiry for PA USAFFE guerrilla service, which is valid as a recognized guerrilla, but fails to establish the identity of the individual as a PA USAFFE, will be treated as a civilian guerrilla inquiry and will be handled accordingly.

b. <u>Civilian Guerrillas</u>.  Personnel recognized by the US Army as manifested on Initial Reconstructed Rosters, or casualty roster of recognized guerrilla units, or in letters of individual casualty or non-casualty recognition.  These individuals did not have military service in the US Armed Forces prior to May 6, 1942, but only subsequent service in the guerrilla forces.

c. <u>Regular PA service</u>.  Personnel who served in a regular component of the PA during or subsequent to the liberation but not later the June 30, 1946.  Members of the PA USAFFE serving with a guerrilla unit, and recognized civilian guerrillas, will be considered to have regular PA service from the date of their processing into the PA, or the date of service in a regular component of the PA, whichever is earlier.  Regular PA service may begin from the date a soldier entered a military hospital for treatment or from the date of his detention by the CIC, US Army, provided he was processed immediately following release from such hospitalization or detention for service in a regular component of the PA, or for immediate discharge.  Regular PA service of a PA USAFFE soldier who has no recognized guerrilla service will be considered to begin on the date he reported to a Replacement Battalion for processing.

d. <u>Current Enlistees</u>.  Personnel who entered into a valid enlistment contract in the PA for the first time during or after the liberation of the Philippines from the enemy (1944-1945), but prior to July 1, 1946.  These persons had neither PA USFFE nor recognized guerrilla service.  They were neither recovered nor processed into the PA, but are considered as regular members of such forces during the term of their enlistment.  Service of current enlistees

maybe established by evidence such as enlistment record, military orders, morning reports, etc.  Secondary evidence of enlistment, such as affidavits, will not be accepted.

3.  Organizations.  The organization to which a person allegedly belonged must be a bona fide PA USAFFE unit.  This may be determined by consulting the list of bona fide PA USAFFE units published by the former AGRD, or the numerous histories which have been compiled on PA USAFFE organizations which are part of the PA military organizational files.

4.  Proof of PA USAFFE service.

.  The requirements to prove that a person is a veteran are the basic claim forms, satisfactory evidence of military service, and discharge or separation from the service, and in death cases, proof of death (actual or presumed).  If evidence of these facts is not available, the claimant must furnish it.  In some cases, a certain amount of evidence indicating that the person performed military service may be indicated in the claims folder, but it does meet the requirements.

a.  PA USAFFE service for members of the PA or Philippine Constabulary may be established by military or non-military records.  The records should be authentic official documents executed by competent authority.  (If an original military record is received that is important in establishing service and its authenticity cannot be verified from the archives in the military organizational files, the following evidence may be used, depending on its accuracy, completeness, reliability, and validity as evaluated and determined by analysis and review:

(1)  National Service Life Insurance record if verified as pertaining to the soldier and is Based on an application made prior to May 7, 1942.

(2)  A verified Casualty Record showing the soldier was killed in action, captured, died, or treated at a field hospital, aid station, or other military medical installation for battle wounds or sickness prior to May 7, 1942.  Casualty certificates and medical tags or records containing this information must first have been verified as authentic by the properly designated person or persons, or must be supported by entry in the list of casualties in the field in the military organizational files.  If the name of signatory is legible, copies will be made of medical tags or records dated between December 8, 1941 and May 6, 1942 inclusive and filed in the individuals' claims folder for future use in establishing signatory's service.

(3)  Records and Death Certificates form POW Camps which can be verified from the PA archives or from other sources acceptable as authoritative.  Such records include the rosters of

personnel concentrated at O'Donnell Concentration Camp, the O'Donnell Death Rosters, Malaybalay POW records, and Bilibid Prison records.  Other POW data, such as the Report of the Puppet Governor of Pampanga and the Manila Tribune Files, are also of value in establishing PA USAFFE identify, even though they do not constitute official military records.  Since civilians were also held by the Japanese in the Prison camps, appearance of a person's name on these records and identity as a POW do not identify the person as a soldier.  Military grade or rank or service number must be shown to establish military identity.

(4)  Manila Tribune Listings of Released POW identifying the subject, and indicating the military rank or grade, or that the released POW was "ex-USAFFEE, or ex-soldier".

(5)  Lists of ex-POWs Employed by Toyo Menka Keisha must show military identity or Comparing the listing with evidence in the claims folder to establish military identity.

(6)  Other archive data, such as rosters, payrolls, general or special orders, combat narrative, etc., which exists in the archives and which are either authenticated original copies or acceptable true copies.  These archive records must be dated prior to May 7, 1942, except that special orders of the Visayan-Mindanao Forces dated as late as May 10, 1942 and other archives dated after May 7, 1942 may be given consideration when they establish that service of the person concerned was rendered prior to May 7, 1942.

b.  When proof of PA USAFFE service rests solely on any of he documents mentioned above and entries do not conclusively identify the document as pertaining to the subject of the claims, the documents must be supported by either:

(1)  Acceptable affidavit of at least one soldier who was a member of the same unit (not larger than a regiment) as the subject.  Such affidavit must state or infer how the affiant came to know of subject's PA USAFFE service and must be fully compatible with details of affiant's own service as shown by his claims folder.  The mere fact that an induction date was not stated is not a valid reason to find the affidavit unacceptable; or

(2)  Acceptable affidavit of at least one former member of the PA USAFFE who, although not a member of the same unit as the subject, has knowledge of the fact that the individual reported to a place of induction after being called to active duty, indicating the

41

date and place of induction and circumstances under which he became acquainted with such facts.

c.   In the absence of any of the PA USAFFE archives referred to above, PA USAFFE identity may be established as follows:

(1)  Authentic orders of call to active duty supported by acceptable evidence that the subject so reported prior to May 7, 1942.  Such evidence may be in the form of affidavit as described above.

(2)  Certain original guerrilla archives (such as those of the 6th and 8th military districts) wherein the PA USAFFE identity of the soldier can be presumed to have been well known to his unit commander and wherein his PA USAFFE identity is clearly stated. This applies only to guerrilla units which were, in essentia, unsurrendered PA USAFFE units consisting principally of persons who had been members of PA USAFFE organizations under unsurrendered PA USAFFE officers.  Such archive evidence must be weighed carefully and accompanied by other evidence in the form of acceptable affidavits before being given full weight as proof of PA USAFFE identity.  "Reconstructed" guerrilla records or records of late date will have no value as proof of PA USAFFE identity.  Only authentic early records on file in the military organizational files will be considered.

(3)  Photostatic copies of "Government of Commonwealth of the Philippines, Certificates of Deposit" are acceptable proof of military service and may be used in identifying PA USAFFE personnel and establishing active military service, provided that certificates show rank and organization and can be identified positively as pertaining the person concerned.  The certificates must have been properly authenticated by an official of the Philippine Government, an Adjutant General, or Assistant Adjutant General on duty at Headquarters, Armed Forces of the Philippines.  The authentication will be found on the reverse side of the certificate.  The certificate must also bear the official stamp of the US Government Benefits Sections, Welfare Branch, OTAG, General Headquarters, Armed Forces of the Philippines.

(4)  Acceptable affidavits of at least two soldier who were members of the same unit (not larger than a regiment) as the subject and have knowledge that he actually served as a member of the unit.  The affidavits must state or infer how affiants cam to know of the subject's service as a member of the PA USAFFE and must be fully compatible with the details of affiants' own service as

shown by their claims folders.  The fact that an induction date was not stated is not a valid reason to consider the affidavits unacceptable.

(5)  Acceptable affidvits of two former PA USAFFE soldiers who, although not member of the same unit as the subject, have knowledge of the fact that he reported to a place of induction after being called to active duty, indicating the date and place of induction and the circumstances under which they became acquainted with such facts.  These affidavits must be supported by affidavits of the municipal mayor and the chief of police who held these offices at the time of the call of the subject to active duty and who have knowledge of the fact that he was so called and was notified of the call.

(6)  PA USAFFE service may be established by one affidavit or any commissioned or non-commissioned officer (sergeant or above) who indicates that soldier served in the same unit in which affiant served.  The affidavit must have been executed prior to July 1, 1948, and affiant PA USAFFE service must be established.  If more than one affidavit is available in the claims folder, case cannot be considered as a "one affidavit case".  Affidvits of municipal officers will not be considered in determining whether or not case is a "one affidavit case".

d. Members of Philippine Constabulary units, except those who became actual casualties (KIA, WIA, MIA, or POW) as a result of the unit's engagement against the Japanese, will not be considered to have entered USAFFE service until they are actually inducted. Application of the procedure is restricted to casualties in Philippine Constabulary units which were actually opposing the enemy in organized combat and under orders of their superiors.  Mere member ship in the Philippine Constabulary is not sufficient to grant this status.  There must be acceptable evidence that the casualty of the person was a result of his action against the enemy and that action was a result of competent orders.  If a Philippine Constabulary member's active service terminated because he became a casualty during action against the enemy prior to the date he (or his unit) was inducted into the USAFFE, his PA USAFFE status will begin on the date of actual resistance against the enemy, provided his induction date cannot be established, or if his unit was inducted after he became a casualty, or the unit was never inducted.

5. <u>Breakdown of PA service</u>.
. <u>Pre-War Service</u>.  Only members of the PA USAFFE who were inducted into the service of the US Armed Forces prior to

43

December 8, 1941 qualify for this service, and can be established by the following evidence:

(1)  Official archives, such as payrolls, troop rosters, etc., showing the solder was actually on duty and serving with a bona fide unit of the PA which ad been inducted into the service of the US Armed Forces.

(2)  A soldier's allegation made at the time of processing may be accepted in the absence of positive evidence to the contrary to establish pre-war service, provided the organization in which service is claimed was a bona fide PA USAFFE unit and mobilized into the US Armed Forces.

a.  <u>Beleaguered Status</u>.

(1)  <u>Official entry</u>.  Beleaguered status will begin on the date of actual induction into the PA USAFFE or December 8, 1941, whichever is later.

(2)  <u>Official termination</u>.  Generally, beleaguered status will not extend beyond April 8, 1942 for those elsewhere in the Philippines. If the place of service cannot be determined, beleaguered status will not extend beyond May 5, 1942.  When evidence indicates that a soldier was engaged in actual combat against the enemy while serving in an organized PA USAFFE unit, beleaguered status may be extended to April 15, 1942 for those in Bataan or May 24, 1942, for those elsewhere in the Philippines.  If the evidence indicates that actual combat operations against the enemy, surrender to the enemy, separation from unit, or disbandment or disintegration of unit in combat.  Beleaguered status interrupted for any of the reasons (except death) may be regained upon rejoining any organized PA USAFFE unit prior to May 6, 1942.  A soldier who was separated from his unit to carry out an official mission in accordance with orders from competent authority will be determined in a beleaguered status as long as he was engaged in accomplishing that mission, but not after May 6, 1942.

(3)  The 14th and 121st Infantry, PA, were inducted into the US Armed Forces on January 5, 1942, and April 8, 1942 respectively. Beleaguered status of members of the 24th and 121st Infantry will not begin before January 5, 1942, or April 8, 1942, as the case may be.

44

b.  Prisoner of War Status.

(1)  Determinations of POW.  A soldier will be determine to be in a prisoner of war status during periods he was held under physical restraint (concentration, confinement, or internment) by the Japanese or their controlled agencies because of his previous military status or suspected anti-Japanese activities.  The status of a soldier immediately prior to his capture and detention by the Japanese or their agencies is not necessarily the determining factor in deciding whether he was a prisoner of war.  If he became a prisoner of war immediately after or on the occasion of the termination of beleaguered status, unless there is evidence to the contrary, it is presumed that the reason for the restraint was his PA USAFFE status.  Soldiers who had no anti-Japanese or guerrilla activities and those who were puppet government officials or employees, may in some cases, be determined to be prisoners of war even though prior to capture, their status is properly determinable as No Casualty Status.  Soldiers seized in the general roundup of former high ranking PA USAFFE officers in the latter part of 1944 or early 1945, or in a general roundup of PA USAFFE personnel, such as was staged in Guadalupe in December 1944, may have been in a No Casualty Status because they were employed by the puppet government or were following civilian pursuits; however, there is historical backgound for the presumption that they were seized because of their former military status.  Soldiers seized in a general roundup of inhabitants (or all male persons) by the Japanese or their agents, are not properly determinable as prisoners of war, even if they had former PA USAFFE status.  They may be properly determined as prisoners of war if it is shown that they were engaged in guerrilla activities and that the roundup was conducted as a retaliation for those guerrilla activities.  Persons identified as guerrillas or PA USAFFE by the "magic eye" during general zonification may also be determined as prisoners of war, even though, at the time of seizure, they were no longer engaged in anti-Japanese activities.  A soldier held under physical restraint by any guerrilla unit or by the US Army on suspicion of disloyalty is not a prisoner of war.  Further, prisoners of irregular armed bands or bandit groups, such as that of Emilio Escobar ("Sagad") are not prisoners of war, even though their PA USAFFE or guerrilla status may have been the cause of their seizure.

(2)  Proof of POW Status.  POW Register and Death Roster of persons concentrated at Camp O'Donnell, Capas, Tarlac, Malabalay, Old Bilibid, Tacloban, Leyte, Camp Bongabong, Camp Luna, Parang, etc., which are available in the military organizational

45

files will conclusively establish the POW status of a person regardless of evidence submitted to the contrary.  If the person's name is <u>not</u> listed in any of these records, or POW status is claimed for having been confined elsewhere, his POW status will be determined to be such <u>as may be established by satisfactory evidence</u>.

(a)  <u>Death March POW</u>.  If a soldier's PA USAFFE status is established, and he claims POW status for the Death March only, consistency and compatibility of statements in his claims folder in its entirety and the <u>War Claims Commission Form 602</u> may be considered basis for a positive period of POW status, must always be shown as terminated by escape, and will not be considered compatible to the situation if alleged to have extended beyond April 30, 1942.

(b)  <u>Capas Death Certificates</u>.  When a veteran claims PA USAFFE and/or POW service, and proof of POW service rests solely on a Capas Death Certificate which may pertain to him, it shall be a matter of procedure to accept the Capas Death Certificate as pertaining to the living veteran only when the records show that the certificate was previously used in establishing the same veteran's PA USAFE status for arrears in pay.  A complete check of all other possible claims folders/military records must be made in every case prior to making the certificate a part of the living claims folder.

(c)  <u>Manila Tribune Listings of Released POW</u>.  When PA USAFFE service is established, these records may be used as proof of POW status.  Military rank must be shown or paragraph heading must indicate a military status.

(d)  <u>Registration Forms Made by PA USAFFE Personnel</u>.  Original documents Commonly referred to as Proclamation #1 (Application for Registration under Proclamation #1 by the Chairman of the Executive Commission) and Proclamation #8 (Application for Registration under Proclamation #8 by the Chairman of the Executive Commission) are currently on file in Organization and Philippine Records.  In some cases these originals have been photostated and placed in the claims folder of the person concerned.  The photostats of these documents or an extract from Organization and Team files, when they indicate that subject was a military member of the PA USAFFE, are determined to be acceptable proof of PA USAFFE service and POW status in accordance with the herein prescribed procedure.  Both of these proclamations will receive the same consideration in determining

46

cases as authenticated clinical records, National Service Life Insurance data, POW records, etc., and the same principles regarding their pertinence will prevail when qualifying them for positive action in a case.

[1]  Proclamation #1.  This proclamation was issued for the benefit of PA USAFFE personnel who were in hiding or who had not been made prisoners of war to grant them the same standing as regularly released POWs.  Proclamation #1 is indicative of PA USAFE service only and the information on the actual application will apply.

[2]  Proclamation #8.  This proclamation was issued for the benefit of PA USAFFE personnel and POWs who were released from concentration camps because of sickness or other reasons to grant them the same standing as regularly released POWs.  Proclamation #8 is indicative of both PA USAFFE service and POW status and the information on the actual application will apply.  In adjudicating cases using this proclamation as proof of POW status, the termination date used will not necessarily be the actual date reflected on the proclamation.  The termination date will be the most compatible date in accordance with the best available evidence in the claims folder, and consistent with the overall procedure.

(3)  POW records with incomplete data.  If a claims folder contains a POW extract with only the last name and the first letter of the first name and no other identifying data, that POW record can be used only when all other files of the same last name and first name beginning with that letter are eliminated from consideration.

(a)  If it is found that a POW record could pertain to one of several persons, an exhaustive effort will be made to determine to whom the record pertains, and a copy of the determination placed in each file of that same name.

(b)  If there is only one file under the name on the POW record, and the information in the file is not compatible with the data on the POW record before the case is completed, a full explanation will be written in the Memo for Record concerning each discrepancy noted.

(c)  If a definite decision cannot be made as to which file the POW record pertains, a negative determination for POW status will be made.  The Memo for Record wil include all the facts considered in arriving at that decision.  Upon receipt of further evidence, reconsideration is warranted.

(d)  If there is only one claims folder or record and a search of archives does not contradict the possibility of there being only one soldier in the service by this same name, a POW record will be used unless a major discrepancy is noted and made a matter of record in the file.

(4)  Termination of POW status.

(a)  If a POW of the Japanese was released from a concentration camp or other place of enforced custody under the Japanese Forces to enter a hospital, convalescent home or other institution under the puppet republic, or a charitable organization, his POW status will terminate on the date prior to release from concentration.  The date of release and entire period of hospitalization or convalescence will not be determined as POW status.

(b)  Educational Corps.  An Educational Corp was organized by the Imperial Japanese Forces to train Philippine Army personnel for positions with the Japanese Army and/or the various Puppet Government agencies.  One school functional at Camp O'Donnell, Capas, and Tarlac for enlisted men and another at Camp Del Pilar, Dau and Pampanga for officers, and later for enlisted personnel also.

(c)  Arbitrary Termination of POW.  When the soldier's file contains evidence Indicating membership in the Japanese sponsored Bureau of Constabulary immediately following or shortly after his release from concentration camp, and no evidence is found indicating period of constabulary training, deduct 30 days from the date he indicated on his processing paper as the last date of POW.  In applying this procedure in the case of former pre-surrender constabulary officers and enlisted men, the arbitrary deduction will be 15 days instead of 30 days.

(d)  Camp Casisang, Malaybalay.  POW concentrated at the POW Camp Casisang, Malaybalay, had been either released or transferred prior to January 12, 1943.  Released prisoners were allowed to take up residence in the town of Malaybalay, but were no long in a POW status.  Prisoners not released were transferred to Cagayan, and then to other places; therefore, no POW status beyond January 11, 1943 will be granted for periods of alleged concentration at Malaybalay POW Camp.

(e)  O'Donnell Concentration Camp.  If a soldier was confined at O'Donnell Camp, and the date his POW status began cannot be

48

determined from the evidence, he will be presumed to have been a POW from May 6, 1942.  Similarly, when the date of termination of his POW status cannot be determined, he will be presumed to have been a POW until January 25, 1943, the last date that the concentration camp existed as such.  POW status at O'Donnell after January 25, 1943 is not authorized.

(f)  Medical personnel and Field Grade Officers whose files do not contain documentary evidence proving POW status at O'Donnell Camp beyond August 8, 1942 will be determined to have been released August 9, 1942.

(g)  <u>Cebu Concentration Camp</u>.  POW status will be allowed soldiers at this camp only if their names appear on the Cebu Provincial Jail Roster.  POW status will terminate on November 15, 1942 at Cebu Camp.

(h)  <u>Lists of Ex-POW employed by Toyo Menka Keisha</u>.  This evidence is similar to the Manila Tribune Listings and may be used to establish POW status.  Soldiers whose names appear on these lists will not be considered as POW during periods of actual employment.  The ending dates of POW status will depend on the case involved.  When this date cannot be resolved, the limiting date for POW status at O'Donnell Concentration Camp will be used.

c.  <u>Determining Guerrilla Service</u>.

(1)  <u>General</u>.  Recognition of guerrillas was performed by the Guerrilla Affairs Division, Armed Forces Pacific (AFPAC), later Armed Forces West Pacific (AFWESPAC) and Philippine Ryukyus Command (PHILRYCOM).  Recognition may be individual or by unit.  The guerrilla service of a person is considered recognized with active service is his name appears on a reconstructed roster, casualty roster, or individual letter of recognition.  With the <u>close of the recognition program on Jun 30, 1948</u>, <u>no additions, deletions, or changes to the rosters are authorized</u>; therefore, when a person's name appears on an approved roster and an examination of the file reveals proof that he did not, in fact, render service in the guerrilla forces, a negative Missing Persons Act determination will be made.

(2)  <u>Troop Rosters</u>.  There are two types of Troop Rosters, the Reconstructed Initial Troop Roster and the Reconstructed Revision Troop Roster.  The Reconstructed Initial Troop Roster contains the names of all recognized member of a unit, exclusive of recognized casualties and those individually recognized members of unit, exclusive of recognized casualties and those individually

49

recognized.  Any person, other than those recognized as casualties or individually recognized whose name is not listed on the Reconstructed Initial Troop Roster, is not recognized, and has no recognized guerrilla standing.  The Reconstructed Revision Troop Roster contains the names of recognized members of a guerrilla unit who are entitled to a revision or extension of their recognition dates.  This revision is limited to guerrilla organizations whose dates of recognition had been revised, that is, set back or extended.  Not all recognized guerilla units had their dates of recognition revised.  Originally, the recognition of guerrilla units was set as of a certain date, generally beginning on the date of attachment of the guerrilla unit to a using unit of the US Liberation Forces in 1944 and 1945.  There are however, certain units whose original dates of recognition were later revised so as to grant members of the unit recognition from an earlier date.  Certain units have only one troop roster that serves as both a Reconstructed Initial Troop Roster and Reconstructed Revision Troop Roster.  Most units whose recognition dates have been revised have the two rosters.  In determining the period of a soldier's recognition, reference will be made to the letter of recognition and the list of recognition dates of all recognized guerrilla unit.  When a unit has both a Reconstructed Initial Troop Roster and a Reconstructed Revision Troop Roster, the appearance of a person's name on the Reconstructed Revision Troop Roster only is not considered sufficient to grant him recognized guerrilla standing.  This is because the Reconstructed Revision Troop Roster is merely a roster of members already recognized who are entitled to a revision of dates of recognition.  On the other hand, if a person's name is listed on the Reconstructed Initial Troop Poster, he is entitled to recognized guerrilla service for the period indicated on the Reconstructed Initial Troop Roster, or in the absence thereof, for the period established by evidence but not earlier that the original date of recognition of the unit.  For those persons who are listed on both rosters, the period of their recognized guerrilla service will be that indicated as the period of service on the Reconstructed Revision Troop Roster, or in the absence thereof, that period established by evidence, but not prior to the date of recognition or date of activation of the component unit in which he served, whichever is later.

   (3)  <u>Seventh and Tenth Military Districts</u>.  Persons whose names are listed on the Reconstructed Initial Troop Rosters of the 7th and 10th Military Districts will not be granted recognized guerrilla service for any period unless their names are also manifested on authentic archive records of the unit concerned which may be included in the file or in the custody of the Organization and

Philippine records.  This requirement is added because the Reconstructed Initial Troop Rosters of these two commands were compiled from the archive records – organization rosters, orders, payrolls, vouchers, etc., kept by the organizations, and were recovered.  It is necessary to verify names of persons listed on the Reconstructed Initial Troop Rosters of these two commands with archive records.  If a person's name appears on an archive record of the 7th or 10th Military District but is not carried on the approved roster, he is not recognized.

Note.  The revised data of recognition of any unit in the 10th Military District will be determined by referring to the Catalog of Guerrilla Organization Records.  If a member of the 7th or 10th Military District is listed on a casualty roster or is individually recognized, the existence of archive records is not a prerequisite for valid recognition, i.e., the casualty roster or letter of individual recognition is a sufficient criterion for recognition.  Unlike the Reconstructed Initial Troop Rosters of the 7th and 10th Military Districts, the casualty rosters and letters of individual recognition for these commands were acted upon and considered by Guerrilla Affairs Division independent of the archive records; however, archives check should also be made on each individual listed on the casualty roster or letter of individual recognition.  Archive records will provide reliable information regarding the incidents of the veteran's service.  In many cases, archive records have shown definitely that certain persons listed on the casualty rosters were civilians – not military personnel.

    (4)  Casualty Rosters.  In unit recognition, the names of recognized members of the unit are listed on a Troop Roster or a Casualty Roster.  The most common types of casualty rosters are classified as Killed in Action (KIA), Killed in Line of Duty (KILD), Died in Line of Duty (DILD), Wounded in Action (WIA), and Missing in Action (MIA).  There are also rosters regarding CAPTURED by the enemy, Injured in the Line of Duty (IILD), and Wounded in Line of Duty (WILD).  Soldiers who are recognized as WIA, WILD, or IILD are considered recognized from date of joining, date of casualty, or date of recognition of the unit, whichever is appropriate.  Soldiers who are recognized in any type of casualty roster will be considered recognized from the date of recognition of the unit, or from date of joining, whichever is later.  Exception:  If a soldier entered into a casualty status prior to date of recognition of his unit, he may be considered recognized on the date of casualty.  Dates of casualty may be indicated on the casualty roster or letter of individual casualty recognition.  If convincing evidence shows this date to be in error, a deviation may be made.  In all casualty

51

recognition, the object is twofold:  namely, recognition as a guerrilla as well as recognition of the injury or death, so as to give it prima facie presumption of service connection.

(5)  Individual Recognition.  Individual recognition may be for one day only, usually in casualty recognition, which is the date of casualty; or it may be for a fixed period from a given date to another given date, both dates inclusive.  In certain instances, and individual recognition my not be for a fixed period, but one which has the effect or recognizing the individual concerned with the organization to which he belonged.  In this case, the recognition of the unit applies to the individual.  The letter of individual recognition should always be consulted to determine the period of recognized guerrilla service.  Individual recognition may be accorded to one who may have belonged to a guerrilla organization that has never been recognized.  In these instances, that fact is stated on the letter and the inclusive periods of recognition are always given.

(6)  Hospital Confinement.  When evidence indicates a soldier was confined in a Army hospital on the indicated ending date of service, he is not discharged on that date, but is still considered in the service, but not after June 30, 1946.

(7)  Terminal Date Guerrilla.  A terminal data guerrilla unit is one that has been recognized for a fixed period with an initial and a terminating data of recognition.  In some units, like those of the Zambales Military District, the revision of recognition was not a setting back, but an extension from a given data to another given date.  This was because the recognition dates of the units affected were limited to a fixed period.  A person listed on a troop roster, regardless of the unit, having a period of service that includes both a beginning and an ending date is considered a terminal date guerrilla and is therefore considered discharged on the indicated ending date.  Terminal Data Guerrillas who were processed into Regular Philippine Army service, and actually served therein without an intervening break at time of termination of recognition, are not considered as separated from the service.

(8)  Special Instructions (name on approved roster).

(a)  Beginning and Ending Dates on Roster.  If a soldier's name appears on a recognized guerrilla roster and period of service is indicated with beginning and ending dates, the only requirement for determination is to identify the name appearing on the roster with the subject.  If the Form 23 or other papers in the claims folder are consistent, the case should be concluded, provided it is the only file

of record of same name wherein service is claimed with the same organization.

(b)  Beginning Date on Roster (Discharge Certificate Available).  If the beginning date of service is indicated on the roster, but no ending date, and a discharge certificate is available in the claims folder, use the date on the discharge certificate as the last date of service.  Only the identity of the solder is required.

(c)  Beginning Date Only Available.  If no evidence or indication of a specific date of discharge is available, an arbitrary date of discharge of September 26, 1945 will be used if no evidence is present to the contrary.  If Form 23 indicates a specific date of discharge, this date will be used rather than the arbitrary date, if consistent.

(d)  No Period of Service Shown on Roster.  If no period of service is indicated on the roster, the period of service will be determined based on data contained in the claims folder and in compilation of data prepared for guerrilla units.  Full use will be made of recognition dates of the unit in determining the periods of service of a soldier, other evidence not being contrary.

(e)  When guerrilla units in the 10th military district show activation on or about November 1942, service begins the last day of that particular month.

(f)  Inactive period shown on revised roster.  If an inactive period is shown on the Approved guerrilla roster and specific dates are not indicated, such as "inactive 8 months", the breakdown of service will begin with one day recognized guerrilla service for the date of joining of induction and the eight months of inactive service will follow, being identified as "No Casualty Status".

(g)  Service Under an Alias.  Some persons claim to be listed on approved guerrilla rosters under an alias.  The following are requirements to establish the identity of a soldier who is alleged to be listed on an approved guerrilla roster under an alias:

[1]  Affidavit of Commanding Officer.  Affidavit executed by the CO of the guerrilla unit to which soldier belongs establishing that he is the CO of the guerrilla unit from a certain date to a certain date; that he personally knows the soldier; that he authorized the use of the alias by the soldier for purpose of military secrecy during operations; that the alias appearing in the recognized roster and the true name refer to one and the same person; and that he will hold

himself pecuniarily liable for any wrong payment made to that person whom he has identified.

[2] <u>Joint Affidavit of Two Disinterested Persons</u>.  A joint affidavit of two disinterested persons, belonging to the same unit as the soldier, who have personal knowledge of the fact that he is the same person as the alias in the roster; that they are not related to the soldier, that they have personal knowledge of these facts because they belong to the same unit; and that they hold themselves pecuniarily liable for any wrong payment made to that person whom they have identified.

<u>Note</u>.  All affidavits must be dated prior to June 30, 1948 and be a matter of record.

[3] <u>Records Check for Other Claims</u>.  A records check will be made for the existence of claims under the various names in all cases in which aliases or discrepancies in name are involved.  The results will be documented in a Memorandum for Record.  Cases involving identification of a soldier's alias or wide discrepancies in spelling of his name will be submitted to the Supervisor, VA Branch, for approval in a Memorandum for Record, outlining the circumstances of the case and giving appropriate recommendations.  In determining the identity of a person so as to grant him military status either as PA USAFFE or guerrilla in this type case, extreme caution will be taken to forestall unscrupulous attempts to identify undeserving persons with names of those whose military service is officially of record.

d.  <u>Missing Status</u>.  A missing status is the period during which a soldier is determined to bein a casualty status during enemy occupation other than while beleaguered, prisoner of war, or a recognized guerrilla receiving current pay.

(1)  <u>Evading capture</u>.  A soldier who evaded capture, fled to the hills, or remained in hiding to avoid capture, until his return to military control, will be determined to be in a missing status for such period.  Periods of travel to a person's home after evading capture or escape as a POW from the Death March or from concentration camp will be determined as coming within the purview of this section.

(2)  <u>Surrender or disbandment of unit</u>.  Soldiers remaining with their unit before disbandment or awaiting formal surrender for the period immediately following April 8, 1942 or May 5, 1942, as the

case may be, will be entitled to a missing status for such period until actual surrender or disbandment.

(3) Period of illness.  A soldier will be determined to be in a missing status during periods of service-connected illness, provided such illness seriously impaired his earning power and caused him deprivation and hardship to an extent greater than that generally suffered by other residents incident to the Japanese occupation.  It is realized that this determination will be very difficult to make in most cases.  It can be assumed, however, that such illnesses as Dysentery, Beri-Beri, Malaria, and Malnutrition are service-connected.  Lacking evidence to the contrary, if a soldier died of any of these diseases within six months after escape from Bataan, or after release or escape from the concentration camp, he may be presumed to have been ill with that disease from the time of escape or release until his death.  When a soldier became ill of any of these diseases within this six month period after release or escape, such disease will be presumed to have been contracted prior to release or escape and therefore service-connected.  Missing will be awarded only for the periods of actual illness.  Intervening periods of No Casualty Status will not preclude the award of missing as indicated.  In all cases, the fact of such illness must be established either by an affidavit or the attending physician or by a statement of an established medical institution.  If a soldier was treated in a military hospital, he will be determined to be in a missing status during that period of hospitalization, unless there is evidence showing that his illness was not service-connected.

(4) Disability.  A soldier suffering from a service-connected disability, such as loss of the use of any one or more limbs, loss of sight of one eye, etc., will be determined to be in a missing status. The requirements of proof outlined in the preceding sub-paragraph will apply.  Affidavits of commissioned officers who by reason of their duties, were in a position to know the facts may be accepted to substantiate a claim for disability resulting from injury in the battlefield.

(5) Recognized Guerrilla Service.  A soldier will be determined to be in a missing status during period of recognized guerrilla service prior to the date he or his unit began receiving current pay. See "Catalog of Guerrilla Organization Records" for dates of receipt of current pay.

(6) Unrecognized Guerrilla Activities.  Member of the Philippine Army USAFFE will be determined to be in a missing status during period of active unrecognized guerrilla service or active

55

participation in the anti-Japanese movement.  Unrecognized guerrilla service may be proved by acceptable affidavits or certificates of guerrilla unit commander or any two members, preferably commissioned officers, belonging to the same unit.  Credit will not be given for unrecognized guerrilla service to a person who claimed to be an agent of the guerrillas when such claim is based merely on the fact that he provided a meager amount of information to another authentic agent.  In order to claim service as an agent of a guerrilla unit, it must be clearly shown that the person was duly appointed as an agent and ordered by competent authority to perform these duties.

(a)  Unrecognized Guerrilla Service Under an Immediate Commander.

[1]  In order that a soldier may be considered to have guerrilla service under a commissioned officer, it is necessary that he either shall have served in a guerrilla unit under an immediate commander who was a commissioned officer of the US Army, Navy, Marine Corps, or was a commissioned officer of the Commonwealth Army recognized by, and cooperating with, the US Forces.

[2]  Immediate commander means the person occupying the military position of direct responsibility for, and control over, the soldier's acts.  The term is elastic and may mean the platoon leader and up along the chain of command, depending on who was occupying the position of immediate responsibility for, and control over, the soldier's acts.  If a soldier was a member of a company, or a similar unit, his immediate commander should normally be his platoon leader, or company commander (or similar unit commander).  If soldier was in a battalion or regimental staff, his immediate commander would be the battalion commander or regimental commander, as the case may be.

[3]  Unrecognized guerrilla service under an immediate commander will be established by an affidavit or a certificate of the immediate commander concerned or authentic archive records.  When an affidavit or certificate is used, the commander must identify himself as such and state the periods of soldier's active service with a general description of the soldier's duties.  If authentic archives are used, they must be verified to ensure that the officer was an immediate commander, that the soldier's period of service was entirely under that officer, and that there were no periods of absence from duty with the guerrilla force for the period involved.  Archives may be in the claims folder or in the Military

56

Organizational Records.  Archive information that may prove helpful are monthly payrolls, rosters, consolidated reports, orders, miscellaneous unit letters or communications, personnel reports, intelligence reports, various commendations or recommendations, etc.  The absence of an archive for a particular period does not in itself establish that a soldier was absent from duty.  If a soldier is unaccounted for in the guerrilla archives for a period not exceeding 3 months, his status may be determined as missing for that period.  The immediate commander will be the commander under whom the soldier served prior to the period during which archives are not available, provided there is not evidence indicating soldier was transferred.  The immediate commander will be the commander under whom the soldier served after the period during which archives are not available if the evidence indicates the soldier was transferred.  If neither commander was recognized during the period in question, soldier's status will be determined as missing (Unrecognized Guerrilla Service), not under an immediate commander.

[4]  If the immediate commander was a commissioned officer of the US Army, Navy, or Marine Corps, it is neither necessary that he be a commissioned officer all the time, nor that he be a recognized guerrilla officer.  It is proof enough that he was occupying the position of immediate commander even if he was not legally a commissioned officer at the time, as long as he was subsequently commissioned for his guerrilla activities.  A soldier's service under a commissioned officer of the US Army, Navy, or Marine Corps will be gin on the date the officer became his immediate commander.

[5]  If the immediate commander was a commissioned officer of the Commonwealth Army, he must have been a recognized guerrilla officer.  He did not have to be recognized as a commissioned officer throughout his period of recognized guerrilla service.  He may have been recognized in an enlisted grade for a period and later as an officer; however, he must have been immediate commander with respect to the soldier during the period of his commander's recognition.  Soldier's service under such a recognized officer of the Commonwealth Army began on the date the recognized guerrilla service of the immediate commander began, or on the date such commander became soldier's immediate commander, whichever is later.  If soldier died or became a casualty due to enemy action prior to the beginning date of his immediate commander's recognized guerrilla service, he may be considered to have served under that commander on the date of casualty only.  In determining the length of service under an officer

57

of the Commonwealth Army, a soldier may not be placed in a better position than he would have been had his guerrilla service under such commander been actually recognized.  In other words, the unrecognized guerrilla service can neither begin prior to, nor extend beyond the period of recognition of immediate commander, except when soldier died or became a casualty due to enemy action prior to the recognition of his immediate commander.  It is emphasized that although the immediate commander was a commissioned officer of the Commonwealth Army, he must have been recognized as a guerrilla officer also.  Thus, a commissioned officer of the PA USAFFE who was the immediate commander of a soldier in a guerrilla unit will not be considered a commissioned officer of the Commonwealth army recognized by, and cooperating with, the United States Forces, if such officer was not recognized as a guerrilla commissioned officer.

(b)  <u>Unrecognized Guerrilla Service Not Under an Immediate Commander</u>.  This type of service is appropriate when a soldier's immediate commander is not recognized or the other requirements of the preceding sub-paragraph 5e(6)(a) are not fulfilled.  Such service is supported by affidavits or certificates of any two recognized members belonging to the same unit as the solder (preferably commissioned officers).  The affiants will identify themselves in the affidavits or certificates stating the solder's period of active service and a general description of his duties.  Authentic archives that do not meet the requirements of preceding subparagraph 5e(6)(a) may be used alone or in conjunction with affidavits to support periods of unrecognized service of this type.

(c)  <u>Unrecognized Anti-Japanese Activity</u>.  This term covers service performed by a former PA USAFFE member against the Japanese, assisting the US Armed Forces, including the guerrillas. It should not be confused with "Spy Status".  Many types of activities were performed which may be considered in granting unrecognized anti-Japanese activities.  The following are a few of the more common activities alleged:  Form of intelligence reporting furnished to the guerrillas on Japanese locations, strength, airports, supply dumps and any known military plans or movements; forms of sabotage; obtaining foods, arms or ammunition, radios, medicines, and various supplies for the guerrillas; destruction of communication lines or hampering Japanese movements; housing transient guerrillas and treating sick or wounded guerrillas; etc.  It has been noted that many times the person will state in his processing papers, upon return to military control, that he did not join the guerrillas; however, he performed certain "anti-Japanese activities" for a given period.  Consideration must be given to

granting unrecognized anti-Japanese activity for any such alleged period, if substantiated in any form by an archive or an acceptable affidavit or certificate.

[1]  Unrecognized anti-Japanese activity may be based on affidavits or certificates of two PA USAFFE soldiers or recognized civilian guerrillas whose records show them to be in a position to make the affidavits or certificates.  The PA USAFFE affiants do not have to be recognized guerillas; however, the statements in their affidavits must coincide with their own official records which place them in a position compatible to the situation.

[2]  Unrecognized anti-Japanese activity may be based also on guerrilla archives when the guerrilla unit was not recognized, or when such unit was at one time recognized but subsequently the recognition was revoked.

(d)  Spy Status.  PA USAFFE guerrilla personnel who were employed by the Japanese or a Japanese-controlled agency in any capacity other than as prisoners of war will be determined to be in a missing status for the entire period of employment if satisfactory evidence is presented in the form of affidavits that state they were "planted" as spies during such employment for the purpose of gathering and furnishing their guerrilla unit information of military importance, and that they complied with instructions of their superior officers.  To be accepted, such affidavits should be executed by their guerrilla commanders, who must be a least a Battalion or similar unit Commander.  (Units similar to a battalion are:  squadrons, separate companies, separate troops, separate batteries, or separate detachments.)  The affiants must describe themselves in the affidavits as the soldier's battalion or similar unit or higher commander.  To establish spy status, it is essential that before solder was "planted" he must have been a member of a guerrilla unit under the command of the officer who executed the affidavit.

(e)  Civilian Employment During the Liberation.  A soldier employed in any capacity, other than military, by the US Army or Philippine Commonwealth Government, during the liberation, but prior to return to military control, whether or not a regular salary was received, will be determine to be in a missing status for the period of such employment.

(f)  Confinement by Guerrilla Unit.  A soldier who was held in confinement or under physical restraint by a guerrilla unit will be determined in a missing status for the period of confinement,

provided he was released without trial by court-martial, or if tried by court-martial, he was not convicted.  If the soldier was killed or executed without trial, his case will be decided on its merits, taking into account the cause or causes of confinement.

(g)  Period of Absence, Missing or Missing in Action (whereabouts unknown) in Finds of Death Cases.

e.  No casualty status.  This is any period after December 8, 1941 during which sufficient evidence is not available to establish that a soldier is entitled to benefits under the Missing Persons Act.

f.  Desertion and Absence Without Leave (AWOL).

(1)  Desertion.  The only competent evidence of desertion is the approved findings of a general court-martial.  The inclusive periods during which a soldier was absent in desertion will be the period so stated in the approved findings of a general court-martial.

(2)  AWOL.  If convincing evidence is on file showing that the soldier's unauthorized absence was excusable and justifiable, no determination of AWOL will be made.  Mere lack of intent, however, is not sufficient excuse.  When a soldier has been tried by a court-martial for AWOL, his acquittal or conviction constitutes a conclusive determination of the question.  In the absence of a finding or decision by a court-martial, a determination that soldier was AWOL may be made in the following instances:

(a)  When a soldier is listed on the records of his organization as AWOL.

(b)  When soldier admits AWOL in a statement which is a part of the evidence on file.

(c)  When statements of the soldier's superior officers or other members of his unit, who were in a position to know, indicate that he was AWOL.

(d)  When a soldier was absent and not performing active military service for unexplained or unjustified reasons.

(e)  Several troop rosters (usually for unit on Mindanao) in organizational and military records indicate that some soldiers "deserted".  These rosters are dated after May 7, 1942.

[1]  If a soldier's name on one of these rosters is followed by the remark "deserted" and a specific date of desertion of May 5,

1942 or earlier is given, the soldier will be considered as AWOL from that date until beginning date of recognized guerrilla service, beginning date of unrecognized guerrilla service under an AUS or recognized guerrilla officer, or date of return to military control.

[2]  Soldiers listed on these rosters with date of "desertion" given as May 6, 1942 or later will be considered to have evaded surrender and will be considered in whatever status is appropriate on the basis of claims folder.

[3]  Soldiers listed on troop rosters of the 101st Division (PA) initiated after the units were surrendered with the remark "deserted", but no specific date of desertion is given, will be considered as having been with the unit through May 5, 1942, and to have entered whatever status is appropriate based on claims folder evidence, except that "Missing" under Staff Memo 14 "with his unit prior to disbandment" is not appropriate, because the roster's existence indicates the unit did not disband and the soldier's name being listed as a deserter indicates that he did not surrender with his unit.

(f)  A soldier listed on the records of his organization as a deserter who in fact was a deserter, but was not tried for desertion will be considered AWOL.  A soldier maybe determined AWOL also if after being tried by a competent court-martial for desertion, was acquitted on a technicality, or if convicted, the sentence was disapproved by the reviewing authority on a technicality, provided the findings show that soldier was absent without authority, but not under circumstances amounting to desertion.

(g)  Confinement by Civil Authorities.  A soldier arrested and confined by civil authorities for a civil offense will be considered AWOL.  If released without trial or not prosecuted, or if tried was acquitted, he is restored to duty from the date of arrest.

(h)  AWOL from a Guerrilla Organization.  A PA USAFFE soldier who joined a Guerrilla organization and absented himself from duty without authority may be determined AWOL during the period of absence, provided his organization is a recognized unit, or if not, his unit commander is individually recognized, regardless of whether or not the soldier is recognized.

(3)  Determination of Period of AWOL.

(a)  A soldier will be determined as AWOL from the beginning date of unauthorized absence to the date of his arrest by, or surrender to, military authorities, or reporting to duty.

(b)  If a PA USAFFE soldier joined a guerrilla unit and went AWOL as provided in sub-paragraph 5g(2)(h) above, his period of AWOL will be terminated upon entry into a POW status or missing status by joining another guerrilla unit, whether or not the latter is a recognized unit.  In such cases, a period of AWOL will be determined only during the period of recognition of the unit or of the unit commander.

(c)  A period of AWOL not exceeding 24 hours will not be considered AWOL, except when a soldier went AWOL and died before the lapse of 24 hours.  In such cases, a finding of Not in Line of Duty is proper.

(d)  Clinical and Medical records frequently reveal period of AWOL that should be indicated in the determination of soldier's status.

(e)  The period after August 15, 1945 to the actual date of return to military control is an AWOL status unless the absence is supported by acceptable evidence of sickness or other bona fide reasons which would warrant a Missing or No Casualty Status.  Note.  Compatible statements of soldier may be considered acceptable.

g.  Return to Military Control.

(1)  Determination of Date (PA USAFFE).

(a)  No Recognized Guerrilla Service.  A PA USAFFE soldier who has not recognized guerrilla service will be considered to have returned to military control on the date he reported to a replacement battalion for processing, not the date his processing actually began or was completed.

(b)  Recognized Guerrilla Service.  A PA USAFFE soldier who has recognized guerrilla service will be considered to have returned to military control on the date he reported to a replacement battalion for processing or on the date his guerrilla unit came under the operational control of the 6th or 8th Army, whichever is earlier. (The date a member of a recognized guerrilla unit came under the operational control of the 6th or 8th Army is the date when he was first attached to any unit of the liberation forces.  If this date cannot

be ascertained, the date he began receiving current pay will be considered as the date of attachment.) The date of return to military control cannot be earlier than the date of initial landings of Liberation Forces on the island where his unit operated. This is the first possible date when he could have been attached to the US Army. The first landing of US Liberation Forces were made on Leyte, October 19, 1944 and on the Island of Luzon, January 9, 1945. For dates of landing on other Philippine Archipelago Islands, refer to the letter of recognition of the guerrilla unit that operated on each island. (See list of dates of capitulation or areas within the Philippines to the Japanese and date of liberation of areas by American Forces in Reference Manual.)

(2) <u>Confined by CIC</u>. A PA USAFFE soldier who was confined by the CIC, or in a US Army Evacuation or Station Hospital will be considered to have returned to military control on the date his confinement began, unless he had previously returned to military control in accordance with the preceding sub-paragraphs.

(3) <u>AWOL</u>. A member of the PA USAFFE, a recognized guerrilla, or a current enlistee who while under military control became absent from duty without authority and later reported or was returned to duty, will be considered to have returned to military control on the date he reported or was returned to duty.

(4) <u>Subsequent to June 30, 1946</u>. A member of the PA USAFFE who reported to military control in the PA after June 30, 1946 will not be considered to have returned to military control under the Armed Forces of the US.

6. <u>Grades, Promotions, Rates of Pay</u>.

. When the PA USAFFE service of a deceased soldier has been established, but nosatisfactory evidence of grade is available, he shall be determined to be in the lowest grade possible, i.e., private, or if the evidence clearly show that he as a commissioned officer, he shall be determined to be a 3rd Lieutenant. Grades may not be determined on the basis of military position held, except that civilian drivers and mechanics inducted into the PA USAFFE shall be determined in grades not to exceed the following:

Ambulance drivers – Private
Drivers (other) – Private First Class
Mechanics – Corporal

If at any time there is an indication of civilian status or when the person refers to his status as a civilian driver, civilian mechanic, civilian radio operator, civilian telephone operator, etc., appropriate check should be made for "War Department Civilian Employee

File", civilian payroll data, and information in the "Unit Histories" or organizational and military records.  When official records and affidavits conflict, official records will prevail.

a.  <u>Original Grades</u>.  PA USAFFE soldier's grades as of December 8, 1941 or date of call to active duty, whichever is later, will be determined from the grade shown in Special Orders of Call to Active Duty, National Service Life Insurance Records, Casualty Reports, organizational and military records, promotion orders issued by authorized Headquarters prior to May 6, 1942, or from acceptable affidavits of unit Commanders, executive officers, personnel officers, first sergeants, platoon sergeants, squad leaders, and company clerks.

b.  <u>Promotions</u>.  All enlisted men's promotions or appointments in commissioned ranks prior to May 6, 1942 will be determined from available evidence and records, which may be any of the following: Special Orders issued by Headquarters, USAFFE or USAFIP, Fort Mills, Corregidor; Regimental Special Orders for non-commissioned officers; Company Orders – only for enlisted men claiming promotion to or demotion from the grade of private first class; Confirming Orders issued by Headquarters, Army of the Philippines, with authority from the Commanding General, AFPAC, AFWESPAC, or PHILRYCOM; and acceptable affidavits of persons, such as unit commanders, executive officers, personnel officers, first sergeants, platoon sergeants, squad leaders, and company clerks, stating that orders were in fact issued for the promotion or commission in question.  When official records and affidavits conflict, official records will prevail.

(1)  <u>POW Record or Death Certificate</u>.  When such record shows a grade higher than that shown in a NSLI record, the soldier will be presumed to have been promoted to the higher grade on the first day of the month following the insurance policy's effective date.  If the effective date of promotion will be after the termination of beleaguered status or the effect will be promotion from an enlisted grade to a commissioned rank, the promotion will not be considered, the lower grade will prevail.  Promotions of officers will not be presumed under this procedure.

(2)  <u>Guerrilla Ranks and Grades</u>.

(a)  When a PA USAFFE soldier's name appears on a recognized guerrilla roster or individual letter of recognition with a higher rank or grade than his last PA USAFFE one, the guerrilla rank or grade will be accepted beginning on the date of recognition or effective date of promotion, whichever is later.

(b)  If a PA USAFFE soldier is a recognized guerrilla with a rank or grade lower than his PA USAFFE one, guerrilla rank or grade will not be considered in the grade determination.

(c)  All guerrilla promotions after the date of recognition or date of induction, whichever is later, will be considered in the grade determination, however, the highest acceptable guerrilla rank or grade will be the one shown on the guerrilla roster.  A rank or grade higher than that shown on the recognized roster will be considered only when it has been confirmed by Headquarters, Army of the Philippines, with authority from the Commanding General, ARPAC, AFWESPAC, or PHILRYCOM.

(c)  <u>Discrepancies</u>.  When a discrepancy exists regarding a soldier's grade, the following rules will govern:

[1]  If a soldier is carried on a recognized roster in different grades, the lower grade will be considered his recognized grade.

[2]  If the name appears in more than one roster with different grades and the rosters bear the same date of recognition, the lower grade will be considered his recognized grade and he will be considered to belong to the unit on whose roster his name appears with the lower grade.

[3]  If his name appears on rosters of different units, with different grades, his grade on the roster that was approved earliest will be considered his recognized grade.

(3)  <u>After Death</u>.  When a soldier's recommendation for promotion was approved prior to his death, and appropriate promotion orders were issued after his death, the grade to which he was promoted will be considered his highest grade.

c.  <u>Pay and Allowances</u>.  (See Reference Manual, Recovered Personnel Records Branch, for monthly rates of pay and allowances of officers and enlisted men of the Philippine Commonwealth Army.)

7.  <u>Date and Character of Discharge</u>.  The date and character of a soldier's discharge from the service may be extracted from his discharge certificate, Form 55, Special Order of Discharge; WD AGO Form 40; WD AGO Form 100, clinical records; or final endorsement of service record.  a discharge may be honorable, other than honorable, or dishonorable.  Every effort should be made to obtain copies of the Special Orders of Discharge from the organizational and military records.  The guerrilla special orders authorizing the discharge of a PA USAFFE may be accepted as proof of discharge in the absence of evidence in conflict.  In case of discrepancy between one record and another in the date of discharge, the date shown on the special orders will be accepted.  AFP

may be consulted only in cases where the discharge data is material to the determinations. Those requests will be routed though the VA.

. Determination of Date. A soldier will not be discharged from the PA in the service of the US Armed Forces after June 30, 1946. In any case where evidence indicates a soldier continued serving in the PA after June 30, 1946, he will be considered as having been automatically separated on that date.

### a. Determination of Character.

(1) In determining character of separation, it is necessary to obtain information from the organizational and military records regarding court-martial proceedings, if any, against the soldier which might affect the character of the automatic separation from service.

(2) If the soldier was discharged dishonorably after June 30, 1946, the case will be suspended and a request to AFP for Board or court-martial proceedings will be made to determine whether the act affecting dishonorable discharge was committed on or prior to June 30, 1946. Such request will be dispatched through the VA.

(3) If a soldier died after discharge allegedly any date prior to June 30, 1946 and no discharge certificate or Special Order of Discharge is of record, and the claimant has indicated an inability to furnish the documents, the date and character of discharge will be administratively determined from the evidence in his 201 file and archive records without recourse to an outside agency.

### 8. Death Status.

. Fact of Death. The fact of death may be based on any of the following evidence. True copies of documents are acceptable if they are certified by the legal custodians of the documents. Documents certified by a commissioned officer of the Philippine Army or Philippine Constabulary (in active service) or by a DA Field Investigator may be acceptable also.

(1) Conclusive Proof. The following may be considered conclusive proof of death if not contradicted in any material aspect:

(a) Certified true copies of death certificates issued by Local Civil Registrars when evidence shows that the entries on the original certificate were made on or shortly after the date of death.

(b) Certificates of death issued by duly established medical institutions based on existing records accompanied by a statement signed by the custodian thereof that the original records were made by one whose official duty was to record such events and that entries thereon were made on or shortly after the date of death.

(c)  An affidavit signed by the medical officer or physician who attended the deceased at time of death, giving date, place, and cause of death.

(d)  An affidavit of at least one disinterested person who personally knew the deceased in life, and who actually saw and positively identified the dead body, or was present at the burial. The affiant must state the circumstances surrounding the death, how they came to this knowledge, and they must have been likely in the normal course of events.

(e)  A death certificate or casualty report showing that the soldier died after being processed into the PA and while still in the service thereof.  This document is considered an official report of death.

(f)  Official Guerrilla Casualty Roster or Burial Certificate (Church Record) which is corroborated by a statement of the next of kin that he or she was present at time of death or saw the dead body.

(2)  <u>Reasonably Conclusive Proof</u>.  The following evidence is considered only reasonably conclusive proof of death:

(a)  Death certificates and casualty reports issued by the Veterans Affairs Division or by the Philippine Executive Commission and Bureau of Public Welfare showing the soldier died before being processed into the Philippine Commonwealth Army.  If these certificates or casualty reports cannot be verified for authenticity against the list of casualties in the archive records of organizational and military records, they should be discarded.

(b)  Official Guerrilla Casualty Rosters of KIA, KILD, and DILD.

(c)  Burial Certificates (church records).

(d)  Affidavits or statements of persons based on actual perception of death, but not conforming strictly to affidavit referred to in sub-paragraph <u>8a(1)(d)</u> above.

(e)  Reports of death based on records whose accuracy has not been fully established, or statements of actual perception of the fact of death know under circumstances not fully explained.

a.  <u>Date, place, and cause of death.</u>  In addition to the fact of death, the date, place, cause, And circumstances surrounding death are necessary in the

determination.  The <u>cause of death is especially vital for determining its service connection, if any</u>, under the rules and regulations of the Veterans Administration.  Every effort therefore should be made to obtain this information and except in finding of death, the statement "unknown cause" or "unknown sickness" should not be shown.  If a soldier died of unnatural causes while under military control, a report of investigation or findings or a Board of Officer is necessary.  When death or injury was incurred in action or through enemy action, a report of a Board is not necessary; however, there must be evidence proving that death or injury was incurred in action or through enemy action.

(1)  Guidelines pertaining to line of duty status are maintained in Special VA Inquiry Section, VA Branch, Entitlements Division, PSD.

(2)  When a line of duty determination in death cases is necessary, prepare Memorandum through Branch Chief to Director, PSD, outlining the circumstances of death.

b.  <u>Findings of Death</u>.  A finding of death is the means of establishing death by presumption when the evidence regarding the fact and date of death are insufficient and the circumstances surrounding death are unknown.  A finding of death maybe made at any time after the expiration of twelve months absence when a person is absent, missing, or missing in action (whereabouts unknown), and the information received or a lapse of time without information establishes a reasonable presumption that he is no long alive.  In no case shall presumed date of death be subsequent to the date the finding is made, or earlier than the day following the expiration of twelve months absence.  The determination of the circumstances surrounding the presumed death will not be attempted.  The authority for making a finding of death is Section 5, Missing Persons Act (Public Law 490, 77the Congress, as amended).

c.  <u>Line of Duty</u>.

d.  <u>Presumption of Death</u>.  The presumed date of death shall be fixed in accordance with the following rules:

(1)  A soldier who was last seen, heard from, accounted for or reported to be alive prior to October 23, 1943 shall be presumed dead on October 23, 1944.

(2)  A soldier who was last seen, heard from, accounted for or reported to be alive on or after October 23, 1943 shall be presumed dead on the day following the expiration of twelve months from the date he was last heard from, accounted for, or reported to be alive.

e.  <u>Presumption of Death Justified</u>.

(1)  When evidence does not indicate actual death, but leaves a possibility of survival, the soldier may be presumed dead.  The following evidence is required for a finding of death:

(a)  Date and place last seen or heard from after December 7, 1941 must be shown either in official records or in acceptable affidavits of two or more disinterested persons who personally knew the deceased.

(b)  Affidavits of two or more disinterested persons from the soldier's locality, certifying to the fact that soldier has neither returned home nor has been heard of to the present.  Special attention will be given to affidavits referring to the soldier as "the late ___", or "deceased ___" in satisfying the requirements of proof of non-return.  Many instances have been noted where statements under oath as to the surviving relatives of the subject have been acceptable to establish non-return.

(2)  When date and circumstances of death are not available and claimant is not or would not be able to furnish additional evidence, an arbitrary presumptive date of death is justified if the file contains sufficient indication of non-return.  (Cases with NSLI, POW, medical records, etc., the arbitrary date will be that which is consistent with the type of acceptable archive of record.  For instances, a case with POW archive would result in arbitrary date of January 25 1943, other evidence consistent.  The cases will not be suspended for proof of death.)

(3)  When the name of the soldier is identified in a casualty roster which shows he was KIA, KILD, or DILD, and sufficient evidence is on file to establish that he did not die as indicated on the roster, but instead was missing and has never been seen again, a finding of death is justified.

(4)  When sufficient evidence is available to establish that a soldier was serving with a guerrilla unit and disappeared prior to the revised date of recognition of the unit, a finding of death is justified.  In such case, he would be considered recognized on the date he disappeared and in a missing status until the date of presumed death.

f.  <u>Status Until Presumed Date of Death</u>.  When a soldier was determined to be in a casualtystatus (Beleaguered, POW, Missing, Recognized Guerrilla, or Regular PA Service) on the date of disappearance he will be carried in a Missing Status to the date of presumed death.

g.  <u>Death in a No Casualty Status</u>.

(1)  A soldier who died while in a No Casualty Status is not subject to the Missing Persons Act; therefore, a determination or presumption of death is neither authorized no required in any case in which sufficient evidence is available to establish that a soldier died while in this status.  If however a determination of death is required for official purposes, the date seven years from date last seen or accounted for will be used and findings of death issued under previous determinations will be cancelled.

(2)  If in determining the status of a soldier under the Missing Persons Act, sufficient evidence is compiled to establish that he died in a No Casualty Status, the following procedures will be followed:

(a)  A termination date of status under the Missing Persons Act will be established for a person whose whereabouts is unknown while being carried in a no casualty status.  The termination date will be the date the person was last seen or accounted for while in a no casualty status.

(b)  If a determination of death is not required, a statement will be made that no evidence is available to indicate the whereabouts or activities subsequent to the date the person was last seen or accounted for.  Findings of death issued under previous determinations will be cancelled.

(c)  No action will be taken on previously determined cases solely to conform to these instructions unless the request is initiated by the Veterans Administration.

h.  <u>Death Due to Unnatural Causes</u>.  The Supervisor, VA Branch, will decide whether an immediate determination may be made in all cases in which veteran died in the service due to unnatural causes. This includes death by accident, gunshot wounds, shot by person or persons unknown, etc., and the records contain insufficient evidence concerning the facts and circumstances surrounding soldier's death.  If the soldier was serving in a regular component of the PA during or subsequent to the liberation of the islands and prior to July 1, 1946, a request will be sent to HPA for any record of an Investigation or findings of a Board of Officers concerning the soldier's death.  This request must be approved by the Supervisor, VA Branch.  (These instructions are not intended to cover death at the hand of the enemy.)

9.  <u>Last date of Entitlement to Pay</u>.  The last date of entitlement to pay of a deceased soldier will be determined as follows:

.   If the soldier died after he returned to military control, last date of entitlement to pay is date of death (determined or presumed), date of discharge, or June 30, 1946, whichever is earliest.

a.   If the soldier died without returning to military control.

(1)  When death (determined or presumed) occurred while in a status of AWOL, Desertion or No Casualty Status, last date of entitlement to pay will be one day prior to date such status began.

(2)  When death occurred while POW, Missing or during service with a Recognized Guerrilla or Regular PA Unit on or after October 23, 1944, last date of entitlement to pay will be date of death (determined or presumed), date of discharge, or June 30, 1946, whichever is earliest.

(3)  When death occurred while in a casualty status prior to October 23, 1944, last date of entitlement to pay will be:

(a)  October 23, 1944 when proof of death is only reasonably conclusive.

(b)  On the date the nearest of kin had personal knowledge or official notice of death, or October 23, 1944, whichever is earlier, when proof of death is conclusive.

b.   In deceased cases which have been adjudicated for arrears in pay, the arrears in pay determination should be taken into account in determining last date of entitlement to pay.  This date should be the last date of entitlement to pay determined for arrears in pay purposes, or the last date of entitlement to pay as determined under this Section, whichever date is later.

10.  Cases previously adjudicated for arrears in pay for VA purposes.  If a claims folder contains either a prior determination for arrears in pay or a prior certification of service to the VA, or both, the following action is required:

.   When the claims folder contains a determination for arrears in pay, a search will be made for additional records or archives, which may have been received subsequent to the date arrears in pay determination, was completed.  If additional records or archives are received which would warrant a material change in any status of the prior determination, a re-determination of status under the Missing Persons Act is required.  If however no additional records or archives are received and prior determination is properly supported, no action is required other than to prepare a NPRC Test Form 02-03.

a.   When the claims folder contains a previous certification of service to the VA dated subsequent to February 11, 1950, and a determination for arrears in pay, the VA certification will be accepted unless it contains a major discrepancy.  It will then be compared with the determination for arrears in pay.  If the information shown in each certification is compatible, the only action required is a statement in the records that the two certifications are compatible.  If the

VA certification is verified, but the arrears in pay determination is not compatible, a determination of status under the Missing Persons Act will be completed by transposing status from the VA certification on NPRC Test Form 02-05, or 02-04 and entering a notation in the lower left corner of the form "Cross Reference VA certification dated _____".

b. When a claims folder contains a copy of a determination sheet sent to VA showing the case was previously determined favorably for arrears in pay for PA USAFFE service only, but the case is now determined negative, the prior determination will be revoked by completing NPRC Test Form 02-04.

c. The latest determination of status under the Missing Persons Act will always be filed as the topmost document on the right side of the claims folder.  When the records contain a determination of status under the Missing Persons Act for arrears in pay purposes, and it is determined to be correct, it will be filed as the topmost document on the right side of the claims folder.

ADMINISTRATIVE RECORD



# United States of America



## ...MENT OF THE ARMY

| | |
|---|---|
| Washington, DC | 31 Jan 2008 |
| PLACE | DATE |

**I HEREBY CERTIFY that**

I certify that the enclosed d... ...stitute true and accurate copies of the records from the National Personnel Records Center, ... ...onnel Records, St. Louis, Missouri pertaining to Federico C. Gomez. The original documents are ma... ...ational Personal Records Center, St. Louis, Missouri. Copies of the documents are in the offi... ...custody of the **Military Personnel Litigation Branch**, Litigation Division, Office of the Judge Adv... ...of the Army.

*Tracy A Glover*
TRACY A. GLOVER
Lieutenant Colonel, U.S. Army
Chief, Military Personnel Litigation Branch

**I HEREBY** ... ...t Lieutenant Colonel Tracy A. Glover                                  , who signed the fore... ...ate, is the

Chief of the M... ...nnel Branch, Litigation Division, Office of the Judge Advocate General of the Army                    , and

that full fait... *per* ...ould be given to his certification.

IN TESTIMONY WHEREOF I,  Joyce E. Morrow                                  .

The Administrative Assistant to the Secretary of the Army,

have hereunto caused the seal of the Department of the

Army to be affixed this  ~~7th~~ 31st   day of

~~January~~ *February* 2008

By *Richard O Hatch*

~~Administrative Assistant.~~

**RICHARD O. HATCH**
**COLONEL, U.S. ARMY**
**CHIEF, U.S. ARMY LITIGATION DI...**



1295 T-Cale Street
Butuan City 8001
Philippines  CD 600
April 28, 1977

Commanding Officer
National personnels Records, Center
Military Personnels Records, GSA
9700 Page Bld., St. Louis Missouri
CD 314
USA

S i r :

     I do hereby request for the official
reconstructions and confirmations of my statement
of active military services with awards of medals
or sitations of the standard Army regulation with
PURPLE HEART for wound received in service as member
of the U.S. Armed Forces of the Philippines during
World War 11 pursuant to Sec. 11 AFPR - 600  as
amended by Public Law 597-94th Congress.

     Enclosed service informations for your
ready references Section 10 USC 305.

     Very respectfully,

FEDERICO G. GOMEZ
LT COLONEL O-003110
(Retired.)

IDENTIFIED:

FRANCISCO M. HABANA
COLONEL O-1934 USA
ADJT. CD 314

00001

## REQUEST FOR ARCHIVE INFORMATION AND REPORT OF SEARCH

| FROM: | TO: | DATE: 6/10/77 |
|---|---|---|

| (1) Last Name        First Name        Middle Initial | (2) ASN SSN |
|---|---|
| Nooney, Frederick Cabence | (3) RANK 100 B596  100310 |

(4) ORGN - USAFFE (41-42)
     GUERRILLA

(5) Guerrilla Commanding Officer

| (6) Date of Birth: | (7) Date of (Death) (Disch) | (8) Date Wounded |
|---|---|---|

(9) REMARKS (NOK - Home Address (1941) etc.)

| (10) SEARCH REQUEST | (11) SEARCH REPORT |
|---|---|
| [✓] USAFFE CARD INDEX FILES | [ ] NR    [✓] SEE BELOW |
| [✓] GUERRILLA AFFAIRS DIVISION ROSTERS | [✓] NR    [ ] SEE REVERSE SIDE |
| [✓] EXTRACT COPY OF SO OF DISCHARGE | [✓] NR    [ ] COPY ATTACHED |
| [ ] VERIFY PARA _____ SO _____ HEADQUARTERS _____ | [ ] NR    [ ] SEE BELOW |
| [ ] REQUEST SEARCH OF GRLA UNIT ARCHIVE | [ ] NR    [ ] SEE REVERSE SIDE |

(11) CONTINUED

| [✓] CAPAS DEATH ROSTER | [✓] NR | [✓] MALAYBALAY | [✓] NR |
|---|---|---|---|
| [✓] O'DONNEL POW  P. 72 | [ ] NR | [ ] CASUALTY IN FIELD & ELSEWHERE | [ ] NR |
| [✓] MANILA TRIBUNE | [✓] NR | [✓] HOSPITAL | [✓] NR |
| [✓] PAMPANGA POW | [✓] NR | [✓] NSLI | [✓] NR |

[ ] OTHER (SPECIFY)

REMARKS:

INCLOSURES ATTACHED 2

12. GUERRILLA AFFAIRS DIVISION ROSTER INFORMATION LISTED BELOW MAY PERTAIN

**A** (Initial Reconstructed Troop Roster)   (Initial and Revised Reconstructed Roster)

☐ Not Listed

| Dates of Unit Recognition | Initial | Limiting | Revised |
|---|---|---|---|
| | | | |
| | | | |

**B** Revised Reconstructed Roster

☐ Not Listed

Revised Date of Unit Recognition

| | |
|---|---|
| | |

**C** Casualty Roster

☐ Not Listed

| Dates of Unit Recognition | Initial | Limiting | Revised |
|---|---|---|---|

Approval Date shown on Roster

| | | | |
|---|---|---|---|
| | | | |
| | | | |

**D**      other similar names listed on GAD rosters

| |
|---|
| |
| |

13. CASUALTY INFORMATION

☐ RECORD OF CASUALTY IN THE FIELD (THIS IS TO CERTIFY that according to the roster of casualties in the field on file in this office of individuals reported sick, dead, wounded or killed in action in the field, the following information exists:)

☐ WAR DEPARTMENT CASUALTY REPORT (For detailed information concerning identity of this individual, submit a request to Records Sec for 90 million casualty report file.)

| LAST NAME - FIRST NAME - MIDDLE INITIAL | GRADE | SERVICE NUMBER |
|---|---|---|
| ORGANIZATION | REMARKS | |
| TYPE OF CASUALTY | DATE OF CASUALTY | PLACE OF CASUALTY |
| NAME OF NEXT OF KIN AND RELATIONSHIP | ADDRESS OF NEXT OF KIN | |

00003

# DEPARTMENT OF THE ARMY
## OFFICE OF THE ADJUTANT GENERAL
### RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
#### ST. LOUIS. MO   63132

## PRISONER OF WAR INFORMATION

TO WHOM IT MAY CONCERN:  Records of

☐ O'Donnell Concentration Camp—Capas, Tarlac
☐ Malaybalay, Bukidnon
☐ Tacloban, Leyte
☐ Parang, Cotabato
☐ Puppet Governor of Pampanga's weekly reports on provisionally released Prisoners
  of War — Dated:
☐ Camp Keithley, Lanao

Show the following information:

| | |
|---|---|
| NAME *Gomez, Federico #1990* | |
| RANK *Cpl.* | AGE |
| SPECIALTY OR OCCUPATION | |
| ORGANIZATION | |
| HEALTH | DATE OF DEATH AND CAUSE |
| ADDRESS *Rizal, Nueva Ecija* | |
| REMARKS | |
| EXTRACTED BY: *JCooper* | DATE *6/10/77* |

The MANILA TRIBUNE dated _____ gives the following information concerning
former Prisoner of War at O'Donnel, Capas, Tarlac:

| | |
|---|---|
| NAME | |
| RANK | PROVINCE |
| RELEASED CAPAS | |
| TO BE RELEASED | |
| HOSPITAL | |
| REMARKS | |
| EXTRACTED BY: | DATE |

AGUZ Form
1 Dec 71   1141

00004

# DEPARTMENT OF THE ARMY
## OFFICE OF THE ADJUTANT GENERAL
### RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
#### ST. LOUIS, MO   63132

### PRISONER OF WAR INFORMATION

TO WHOM IT MAY CONCERN:   Records of

☐  O'Donnell Concentration Camp-Capas, Tarlac
☐  Malaybalay, Bukidnon
☐  Tacloban, Leyte
☐  Parang, Cotabato
☐  Puppet Governor of Pampanga's weekly reports on provisionally released Prisoners
     of War – Dated:
☐  Camp Keithley, Lanao

Show the following information:

| | |
|---|---|
| NAME | *Gomez, Federico* #989 |
| RANK | *Cpl*    AGE *24* |
| SPECIALTY OR OCCUPATION | *former* |
| ORGANIZATION | *11th Div* |
| HEALTH | DATE OF DEATH AND CAUSE |
| ADDRESS | *Urdaneta, Pang.* |
| REMARKS | |

EXTRACTED BY: *J Cooper*          DATE *6/10/77*

The MANILA TRIBUNE dated _____ gives the following information concerning
former Prisoner of War at O'Donnel, Capas, Tarlac:

| | |
|---|---|
| NAME | |
| RANK | PROVINCE |
| RELEASED CAPAS | |
| TO BE RELEASED | |
| HOSPITAL | |
| REMARKS | |

EXTRACTED BY:          DATE

AGUZ Form
1 Dec 71   1141

00005



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ADJUTANT GENERAL
RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
ST. LOUIS, MO 63132

IN REPLY REFER TO:

9 AUG 1977

DETERMINATION OF STATUS UNDER THE MISSING PERSONS ACT, AS AMENDED

NAME: ~~Federico C. Gomez~~

DOB/SN: ~~2 nk~~          ~~NA~~

The person indicated has no status under the Act for the reason(s) checked below:

☑ Alleged service, as a member of the presurrender forces of the Philippine Commonwealth Army in the service of the Armed Forces of the United States, is not properly established.

☑ His name is not listed on any officially approved Guerrilla Affairs Division Roster.

☐ His alleged guerrilla service prior to                    is not recognized. His name is not listed on an officially approved Guerrilla Affairs Division Roster authorizing a revised beginning date of recognized guerrilla service.

☐ His recognized guerrilla service from                    is not covered by the Missing Persons Act because from that date he was paid by his organization commander.

☐ Alleged employment in the Philippines between 8 December 1941 and 6 May 1942 as a War Department civilian employee is not established by official records.

This determination supersedes any prior action under the Missing Persons Act.

~~Harry L. Keeler~~
Operations Officer
for determinations of status
under the Missing Persons Act

AGUZ Form  633
1 Oct 71

## ADDITIONAL INFORMATION

| 1. LAST NAME – FIRST NAME – MIDDLE INITIAL | 2. SERVICE NUMBER | 3. VA CLAIM NUMBER |
|---|---|---|
| Gomez, Federico D. | NA | |

**4. LAST GRADE AND ORGANIZATION**

USAFFE:

GRLA OR CE: _Gomez_

**5. FROM BEGINNING DATE OF SERVICE TO DATE OF SEPARATION, VETERAN'S MILITARY HISTORY IS DETERMINED TO BE AS FOLLOWS.**

STATUS     FROM     TO

_Negative_

KEY
PWS – PRE-WAR SERVICE
BEL – RELEAGUERED
POW – PRISONER OF WAR
MISS– MISSING
NCS – NO CASUALTY STATUS
RGS – RECOGNIZED GUERRILLA SERVICE
RPA– REGULAR PA SERVICE
AWOL– ABSENT WITHOUT LEAVE
MPAT– STATUS UNDER MPA TERMINATED

☐ – CONT'D ON ATTACHED SHEET

**6. VETERAN IS ENTITLED TO RECEIVE PAY DURING THE ABOVE PERIODS EXCEPT AS FOLLOWS**

FROM     TO     REASON

KEY
A. CIVILIAN PURSUITS, NOT ENGAGED IN MILITARY ACTIVITIES
B. ALLEGED POW STATUS, NOT SUPPORTED
C. ALLEGED GUERRILLA SERVICE, NOT SUPPORTED
D. ALLEGED SICKNESS, NOT SUPPORTED
E. AWOL

**7. VETERAN WAS DETERMINED IN A *MISSING STATUS* AND ENTITLED TO PAY UNDER MPA (*Including interpretations under Staff Nemo #14, RPD, AFWESPAC, dtd 25 Dec 45*) FOR THE PERIODS INDICATED IN PARAGRAPH 5 ABOVE FOR THE REASONS SHOWN BELOW. INCLUDED HEREIN ARE DETAILS OF MISSING STATUS FOR UNRECOGNIZED GUERRILLA SERVICE UNDER A COMMISSIONED OFFICER, IF ANY.**

FROM     TO     REASON

KEY
A. RECOGNIZED GUERILLA SERVICE
B. ENROUTE HOME AFTER EVADING CAPTURE
C. WITH UNIT AWAITING DISBANDMENT
D. WITH UNIT AWAITING FORMAL SURRENDER
E. SICK OF _____ (AT HOME) (IN HOSPITAL) (WHILE ENROUTE HOME)
F. UNRECOGNIZED ANTI-JAPANESE ACTIVITIES

☐ SEE ATTACHED SHEET

**8. VETERAN WAS DETERMINED IN A POW STATUS (*See paragraph 5 above*) DURING PERIODS WHEN HE WAS UNDER ACTUAL PHYSICAL RESTRAINT BY THE ENEMY. REASONS FOR THE RESTRAINT IMPOSED AND BASIS OF DETERMINATION ARE AS FOLLOWS:**

FROM     TO     REASON     BASIS – LIST OF POW'S

☐ USAFFE STATUS.    ☐ CAPAS, EXTRACT ATTACHED
☐ GUERRILLA ACTIVITIES.    ☐ MALAYBALAY, EXTRACT ATCHD
☐ _____    ☐ OTHER

**9. EVIDENCE OF DISCHARGE**

☐ NONE

**10.** ☐ SUBJECT IS A TERMINAL DATE GUER-RILLA, HENCE WAS AUTOMATICALLY DISCHARGED ON DATE INDICATED.

**11. CHARACTER OF SEPARATION:** ☐ HONORABLE    ☐ DEATH    ☐ VETERAN WHILE STILL A MEMBER OF THE PHILIPPINE COMMONWEALTH ARMY WAS RELEASED FROM THE SERVICE OF THE ARMED FORCES OF THE U. S. ON 30 JUNE 1946. SEE ITEM 21 BELOW.

**12. RECOGNIZED GUERRILLA SERVICE**
☐ RECONSTRUCTED ROSTER    ☐ INDIVIDUAL RECOGNITION
☐ CASUALTY ROSTER    ☑ NO RECOGNIZED GUERRILLA SERVICE

A. DATE(S) OF RECOGNITION UNIT

B. BEGINNING DATE VETERAN RECOGNITION
☐ DEVIATION FROM _____ ROSTER
☐ SUBJECT ENTERED INTO A CASUALTY STATUS PRIOR TO RECOGNITION OF HIS UNIT

C. NAME LISTED AS:

AGUZ Form 632     Previous editions are obsolete.

13. DID VETERAN RETURN TO MILITARY CONTROL? ☐ NOT APPLICABLE
☐ NO ☐ YES, ON

14. LAST PAID TO INCLUDE ☐ NOT APPLICABLE

15. LAST DATE ENTITLED TO PAY: ☐ AS PER ARREARS IN PAY ☐ NOT APPLICABLE

16 SUBJECT: ☐ DIED ☐ DID NOT DIE IN THE SERVICE. DEATH: ☐ WAS ☐ WAS NOT IN LINE OF DUTY

SEE ATTACHED EVIDENCE OF PROOF OF DEATH: ☐ BASED ON CASUALTY ROSTER ☐ ACTUAL ☐ PRESUMED

A. DATE OF DEATH: ☐ DEVIATION FROM CASUALTY ROSTER

B. CAUSE OF DEATH: C. PLACE OF DEATH:

17. REPORT OF BOARD OF OFFICERS: ☐ ATTACHED ☐ NONE

18. MARITAL STATUS: ☐ SINGLE ☐ MARRIED ☐ WIDOWER ☐ MARRIAGE ALLEGED (NO EVIDENCE LOCATED)
NAME OF NEXT OF KIN RELATIONSHIP ADDRESS

☐ See Item 4, PA Form 23 and/or Page 3 or 4, PA Form 22a.

19. NSLI DATA:
☐ ATTACHED ☐ NONE

20. FORM 23 RECORD OF PHYSICAL EXAMINATION CLINICAL RECORDS COURT MARTIAL
☐ ATTACHED ☐ NONE ☐ ATTACHED ☐ NONE ☐ ATTACHED ☐ NONE ☐ ATTACHED ☐ NONE

21 REMARKS:

The service data included herein are compiled from best evidence available in the files of this office. They are considered factually accurate in absence of evidence to the contrary. Any payments for arrears in pay to claimant based on these service data were made in accordance with the provisions of the Missing Persons Act.

PAUL T SMITH
Major General USA
The Adjutant General
AGUZ-SAD-PA
By:

FOR USAAC USE ONLY

☐ 201 FILES FOUND ☐ SEARCHED AS IN ITEM 1 ABOVE ☐ SEE AGUZ FORM 650
☐ FILES UNDER SAME NAME DETERMINED NOT TO PERTAIN

ARCHIVES (Identified as Pertaining to This Claim) ☐ SEE REVERSE SIDE
☐ NSLI ☐ CAPAS DEATH RECORD ☐ POW RECORD (O'Donnell) (Malaybalay) (Keithley) Other
☐ CASUALTY REPORT ☐ MANILA TRIBUNE ☐ GUERRILLA ARCHIVES
☑ HISTORICAL DATA *Does not establish svc*
☑ GUERRILLA ROSTER *not listed*

| | | USAFFE | GUERRILLA | ILLNESS | DEATH |
|---|---|---|---|---|---|
| a. AFFIDAVIT OF *None* | DATED | ☐ | ☐ | ☐ | ☐ |
| b. AFFIDAVIT OF | DATED | ☐ | ☐ | ☐ | ☐ |
| c. AFFIDAVIT OF | DATED | ☐ | ☐ | ☐ | ☐ |
| d. AFFIDAVIT OF | DATED | ☐ | ☐ | ☐ | ☐ |
| e. OTHER | DATED | ☐ | ☐ | ☐ | ☐ |

ACCEPTABLE AFFIDAVITS:

UNACCEPTABLE AFFIDAVITS & REASONS:
☐ MEMBER OF A DIFFERENT UNIT ☐ STATEMENTS BASED ON HEARSAY ☐ (OTHER)
☐ SERVICE NOT ESTABLISHED ☐ INCONSISTENT ☐ (OTHER)
☐ STATEMENTS DO NOT PROVE MILITARY SERVICE ☐ NOT IN PROPER FORM ☐ (OTHER)
☐ INDUCTED AFTER SUBJECT OR ELSEWHERE

BASIS: *USAFFE not established, no Processing Form, no 201 Found to pertain, not listed PCAB roster*

ANALYST: REVIEWER: DATE: 9 AUG 1977

00008

| 1A. ADDRESS CODE | VETERANS ADMINISTRATION | | 1B TYPE OF CLAIM |
|---|---|---|---|
| 11PV SMP PR | **REQUEST FOR INFORMATION** | | |

| 2. SEPARATION FORMS ON FILE | 3. DATA REQUESTED | | | | ORIG DISAB |
|---|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ SERVICE ☐ MEDICAL | ☐ DENTAL | ☐ OTHER | | |

| 4. BRANCH OF SERVICE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☒ ARMY ☐ NAVY | ☐ AIR FORCE | ☐ MARINE CORPS | ☐ COAST GUARD | ☐ NATIONAL GUARD (Army) | ☐ NATIONAL GUARD (Air) | ☐ OTHER (Specify) | | |

| 5A. NAME AND ADDRESS OF VA REQUESTING OFFICE | 5B. ORIGINATING UNIT | 6 FILE NO (Include prefix) |
|---|---|---|
| FROM USVA, APO SF 96528 | 358-211A:CPL:lrs | C 29 536 111 |
| | | 7. INSURANCE NO |

| 8. LAST NAME · FIRST NAME · MIDDLE INITIAL (Under which served) | 9A. ALL SERVICE NOS | 9B SOCIAL SECURITY NO |
|---|---|---|
| GOMEZ, Federico | 000 598; 003 110; 110 021 | |

| 10 DATE OF BIRTH | 11 PLACE OF BIRTH | 12. DATE OF DEATH |
|---|---|---|
| 1-11-13 | Jagna, Bohol | |

| | 13. DATE ENTERED ACTIVE DUTY | 14. DATE SEPARATED FROM ACTIVE DUTY | 15. CHARACTER OF SEPARATION OR DISCHARGE | 16. LAST GRADE, RATE OR RANK AND ORGANIZATION |
|---|---|---|---|---|
| A. | 12-7-41 | 6-25-45 | Hon | Pvt QMS 81st Inf |
| B. | | | | 110th Div 10th MD |
| C. | | | | |

| | 17. ALLEGED DISEASE OR INJURY | 18. DATES OF TREATMENT | 19. PLACE OF TREATMENT | 20. TYPE (Check) | |
|---|---|---|---|---|---|
| | | | | HOSPITAL | OD |
| A. | SW | 1941 | Unk | | |
| B. | | | | | |
| C. | | | | | |

**21. ADDITIONAL INFORMATION REQUESTED**

Please complete USAAC Fm 632 and furnish all extracts of Fm 23 executed prior to and subsequent to 6-30-46. NOK: Unk

| 22A SUBSEQUENT RESERVE OR RETIRED STATUS | | | |
|---|---|---|---|
| ☐ NONE ☐ RESERVE OBLIGATION(Complete Item 22B) | ☐ RETIRED (Complete Item 22C) | ☐ UNKNOWN | |

| 22B OBLIGATION TERMINAL DATE | 22C. RETIRED STATUS | | |
|---|---|---|---|
| | ☐ IN PAY STATUS | ☐ NONPAY STATUS | ☐ TEMPORARY DISABILITY RETIRED LIST | ☐ RETIRED STATUS UNKNOWN |

| 23. DATE | 24. SIGNATURE AND TITLE OF VA OFFICIAL |
|---|---|
| 6-15-78 | DUANE H. MILLER, Adjudication Officer |

**ENDORSEMENT-VERIFICATION BY SERVICE DEPARTMENT (Check applicable box(es))**

| ☐ AVAILABLE REQUESTED RECORDS FORWARDED | ☐ ITEMS 8 & 9, AND 13 THROUGH 15 VERIFIED CORRECT | ☐ ITEMS 8 & 9, AND 13 THROUGH 15 VERIFIED CORRECT, EXCEPT: |
|---|---|---|

Subject has no service as a member of the Philippine Commonwealth Army, including the recognized guerrillas, in the service of the United States Armed Forces.

| NO. OF ENCLOSURES | ORIG | COPY | NO. ENCLS. (Cont.) | ORIG | COPY | SERVICE INFORMATION | DATE | SIGNATURE AND TITLE |
|---|---|---|---|---|---|---|---|---|
| HEALTH RECORDS | | | CLINICAL RECORDS | | | | | |
| PHYSICAL EXAMINATIONS AT ENTRANCE | | | X-RAYS | | | MEDICAL RECORDS | DATE | SIGNATURE AND TITLE |
| PHYSICAL EXAMINATIONS AT SEPARATION | | | DENTAL RECORDS | | | | | |
| | | | MEDICAL RECORDS | | | | | |
| | | | OTHER RECORDS | | | | | |

VA FORM OCT 1975 **07-3101**   Exception to SF 180 Approved by General Services Administration, March 1949

EXISTING STOCKS OF VA FORM 07-3101, AUG 1971, WILL BE USED.

2

00009

SEP 1978

44- 18th Avenue, Cubao
Quezon City, Metro Manila
Philippines Code 600
September 13,1978

C- 29 536 111

THE ADJUTANT GENERAL  US
Department of the Army
ATTN: CDR: RCPAC,9700 Page Blvd.,
St Louis Miss uri 63132 CD 214
U.S.A.    THRU: GENERAL SERVICE ADMINISTRATION

S i r :

     UNDERSIGNED, most respectfully request that he be
favorably furnished with a separate copies, of a military
certification and or service informations (MPF) in connection
with my claims for an appropriate approval of my claims for
service connected disability, desabling me to a 100% total and
disability due to wounds received during my World War II mil.-
itary services. Subject request have the subject of the VA
Office in its regional Office, Manila in a letter dated August
25,1978. I regret that as of this writing I have not been
furnished with any information from your good office and pur-
suant to Section 275 EO 9397 and Public Law No 597-93rd Congress.

     It would be to his advantage if you could release soon
as soon as possible the service information and any awards of
medals, "PURPLE HEART" and appropriate military decoration
accordance with the standard regulation of the United States
Army.

     Thank you

                    Very respectfully yours,

                    FEDERICO C. GOMEZ.

25 OCT 1978

00010



GENERAL HEADQUARTERS
ARMED FORCES OF THE PHILIPPINES JHR/vru/maj
Camp General Emilio Aguinaldo
Quezon City

5 September 1994
(Date)

AGHR2

C E R T I F I C A T I O N

TO WHOM IT MAY CONCERN:

    THIS IS TO CERTIFY that according to records of 1LT FEDERICO

C GOMEZ AUS-Unk Inf (Inact)           available in this Headquarter,

the following data exist:

    BORN: Agusan - 9 June 1913 (F-23)

    MILITARY STATUS:  Grla (?)

    DATE CAV/INDUCTED/JOINED/ERA/ETO/SVD:  7 May 42 (F-23)

    ORGANIZATION: Cms 109th Div. 10th MD (F-23)

    PROCESSED: 19 May 45 (F-23)

    DATE CAV/DISCHARGED/RVRW/RTVW:  25 Jun 45 (F-55)

    REMARKS: Name is not carried in the Approved Revised Recons-
    tructed Grla Roster of 1948 (GVS). No record of Arrears
    in pay; Currently paid as 1LT fr 1 May 45 to 30 Jun
    45 (Statement of pay and Allowances voucher).

    PURPOSE: For USVA reference.

    MAILING ADDRESS:

    AUTHENTICATED BY
    DATE
    FOR THE CHIAUGON STAFF:

    JUSTINO D RACELA        JUSTINO D RACELA
    Major   (AGS) PA        Major   (AGS) PA
    Asst Adjutant General      Asst Adjutant General

00011

... not UGAFFE ... the individual's total including Reserve ...
... commence with date he joined this guerilla unit.

c. All time from commencement date to date increased in Philippine Army 1945, must be ... must be no overlapping of dates. The last entry in this paragraph must be the date ... proceeded. Separate lines may be used if there is a change of duty, or location of ... For civilian activities, use separate lines for any change of address, employment or ...

| From Date | Period To Date | Activity/Duties performed (for military duty, list name of Unit. For civilian employ, list occupation, name of firm.) | Location |
|---|---|---|---|
| 1. | 7 May 42 | Inducted into the Serv. | Camp Keithly Lanao |
| 2. | 8 May 42-20 Aug 43 | Gen 109th Div. 107th | -do- |
| 3. | 21 Aug 43-11 Sept 44 | Attached 106th Div. 10th MD Kadwagan, L. & O. Del. B.P. |
| 4. | 12 Sept 44-16 May 45 | Attached 8th Army | -do- |
| 5. | 17 May 45- 19 May 45 | processed  PA | Capt. Houghland Iligan, Lanao |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

REMARKS: Activities prior to the surrender need not be amplified unless, individual surrendered with date of surrender in which case he must explain the circumstances of his failure to join his activities should be briefly amplified; i.e. nature of work performed by unit (Intelligence or of operation, etc. Civilian activities should be described in enough detail to account for his stating nature of employment (if employed), or private business. If engaged in farming, location of farm, crop yield, etc.

Line 1 & 2.    Inducted into the serv. and assigned with the 107th ... and engaged in all operation against the enemy whenever assigned.

Line 3 & 4.    Attached 106th Div. 10th MD and joined in every ambush and harass  the passing Japs in the ... overton and  Kadwagan, Lanao and other places of oper ... where our unit assigned, with the 8th Army.

Line 5.    I was processed on 19 May 1945 by the 8th Army.

Remarks, I did not take spiritual and cultural training under the Japs.

AUTHENTICATED BY
DATE  AUG 1 4 1991

JUSTINO B. RACELA
MAJOR ( AGS )  PA
ASST. ADJUTANT GENERAL

3. INDIVIDUAL RECORD OF PROMOTION

If UGAFFE—state rank on 1 July 1941, or in ... or early 1942 ...  guerilla—state rank at which inducted into guerilla unit.  ... eafter, list all promotions received subsequent to above dates.

e. I was authorized on ___Nover___ (1941; 1942), which is the date I was last paid by a recognized disbu Officer of the United States or Philippine Army to draw quarters allowances in the amount of P. per month.

f. During the period covered by this affidavit, my dependents; viz, my lawful wife and/or unmarried chi under 18 years of age, occupied Government quarters for the following periods, at the locations designated:

___NO GOVERNMENT QUARTERS FURNISHED___

(If none, state "No government quarters furnished.")

5. CHRONOLOGICAL RECORD OF WOUNDS AND ILLNESS INCURRED FROM 8 DEC 41 TO DATE OF RET TO MIL CONTROL. SHOW ALL WOUNDS AND ILLNESS INCURRED.

| From | To | Unit | Geographical Location | By Whom Treated | Nature of Injury or Illness | Permanent Disabilities Incurred, in any |
|------|-----|------|------|------|------|------|
| | | | | | None | None |

(Data listed above must agree with those shown that be under)

6. INDIVIDUAL DECORATIONS, CITATIONS AND AWARDS (Include type and authority—Include unit citations)

American Defense Medal          Asiatic Pacific Theater Ribb

Philippines Defense Ribbon

7. VITAL STATISTICS REGARDING OTHER SERVICE PERSONNEL (FILIPINO, AMERICAN AND ALLIED) AMERICAN AND ALLIED CIVILIANS. (List only those who were taken to POW's by the Japanese)

a. Living:

| Name | Rank or Civilian | Where Last Seen | Activity If Known | Date of Death |
|------|------|------|------|------|
| | | | | |
| | | | | |

b. Dead:

| Name | Rank or Civilian | Date of Death | Circumstance |
|------|------|------|------|
| | | | |

I have read the following affidavit and swear that the information set forth therein is true to the best of knowledge, information and belief.

_(Signature)_
FEDERICO C. Cruz

SUBSCRIBED and SWORN to before me, ___ day of ___ January ___ 191
at ___ CAMP OVERTON ___ Dated.

AUTHENTICATED BY:
DATE AUG 1 4 1994

_(Signature)_
KEITH W. McTELL
1ULL Infantry
Summary Court Officer

JUSTINO U. RACELA
MAJOR (AGS) PA
ASST ADJUTANT GENERAL

00013

To be read individually or collectively to officers and enlisted men of the ...

# ANTONIO L. VILLANUEVA, M.D.
## PHYSICIAN - SURGEON CARDIOLOGIST
Bactad Proper, Urdaneta, Pangasinan
Philippines

Lic. A-3210256

Date: February 14, 2004

Name:  Federico C. Gomez

Address: #44 18th Ave., QuezonCity

Occupation: Veteran

Chief Complaints: Hypertension, Heart Pain, Diabetes,
Arthritis and Cough.

Age: 33

Sex: Male

Status: Married

## PHYSICAL EXAMINATION

TO WHOM IT MAY CONCERN:

This is to certify that the undersigned Physician had treated FEDERICO C.GOMEZ on January 16, 1946, who was suffering Hypertension, Heart Pain, Diabetes, Arthritis and Cough.

He was confined up to February 27, 1946 and after his release from the Clinic, he was prescribed the needed medicine to contain his suffering while resting at home and was advised to report for periodical check-up to monitor his health condition.

This certification is hereby issued for reference purposes.

ANTONIO L. VILLANUEVA, M.D.

00014

315 Purok Silangan
Bgy Dela Paz
1870 Antipolo City, Philippines
April 3, 2006

Ref: Request Pertaining to Military
Records of: GOMEZ, Federico C.
1st Lt
QMs 109th Div 10th MD

The Commander
U.S. Army Reserve Personnel Center
Attn: DARP-PAS
9700 Page Boulevard
St. Louis, MO 63132-5200
U.S.A.

S i r :

This is to respectfully request issuance of a Certification of Military Service of my late husband, above-stated, to be used for reference purposes, for which I am enclosing Standard Form 180, for your ready reference, together with other pertinent papers.

The requested Certification will be used in connection with my claim with the Department of Veterans Affairs, Regional Office, Manila, Philippines.

In this connection, may I then anticipate to receive your very kind consideration and hope for your early advise and reply, I remain

Very respectfully yours,

MRS. JOVITA C. GOMEZ
Widow

Encls: Pertinent Papers.

Republic of the Philippines
Province of Rizal
City of Antipolo

BARANGAY DELA PAZ

## OFFICE OF THE SANGGUNIANG BARANGAY

**ARTEMIO L. PEDRAGOZA**
Barangay Captain
Over All Chairman

**CORRADO O. DANSECO**
Councilman
Chairman: Finance, Budget & Appropriation
Committee on Social Service

**JOCELYN SOCORRO M. MENDOZA**
Councilwoman
Chairman: Women & Family
Trade, Commerce & Industry
Ways & Means

**FRANCISCO L. FLORES**
Councilman
Chairman: Peace & Order

**LIGAYA L. CORONADO**
Councilwoman
Chairman: Education and Culture

**RODOLFO S. TOLENTINO**
Councilman
Chairman: Public Works

**CYNTHIA E. CORDOVA**
Councilwoman
Chairman: Livelihood & Labor

**DONATO S. SIERRA**
Councilman
Chairman: Health & Sanitation
Agriculture

**JOHN FELIX R. FLORAN**
SK Chairman
Chairman: Sports & Youth Devt

**DOLORES L. SIERRA**
Barangay Treasurer

**JOSIE U. MACCAY**
Barangay Secretary

**ROBERTO C. SANTOS SR.**
Administrative Assistant

**MINDA C. SUMULONG**
Barangay Clerk

**FLAVEL Y. BAUTISTA**
Barangay Clerk

**CRISTETA HIPOLITO**
Barangay Clerk - Aide

# CERTIFICATION

To Whom It May Concern:

    This is to certify that **JOVITA C. GOMEZ**, 58 years old, widow, a resident of #315 Purok Silangan, Barangay Dela Paz, Antipolo City.

    This certification is issued upon the request of the above-mentioned name for whatever purpose it may serve best.

    Issued this 3rd day of November 2005 at the Office of the Barangay Captain, Barangay Dela Paz, Antipolo City.

For:

**MR. ARTEMIO L. PEDRAGOZA**
Barangay Captain
Barangay Dela Paz

By the authority of Brgy. Capt.

**MR. CONRADO O. DANSECO**
Barangay Councilman
Barangay Dela Paz

00016

315 Purok Silangan
Bgy Dela Paz
1870 Antipolo City, Philippines
October 3, 2006

Ref: <u>Request Pertaining to Military</u>
<u>Records of</u>: GOMEZ, Federico C.
1st Lt
Qls 109th Div 10th MD

The Commander
U.S. Army Reserve Personnel Center
Attn: DARP-PAS
9700 Page Boulevard
St. Louis, MO 63132-5200
U.S.A.

S i r :

This is to make follow-up of the action taken on
my letter dated April 3, 2006, relative to my request
for the issuance of a Certification of the Military
Service Records of my late husband, above-stated
veteran, during World War II.

In this connection, hoping that you give this
request (Letter follow-up) of the action taken on my
letter dated October 3, 2006, for my information and
reference which I will expect very soon, I remain

Very Respectfully yours,

MRS. JOVITA C. GOMEZ
Widow

Encl: Copy of Letter
April 3, 2006.

00017

 ***National Personnel Records Center***

Military Personnel Records, *9700 Page Avenue St. Louis, Missouri 63132-5100*

November 15, 2006

JOVITA GOMEZ
315 PUROK SILANGAN
BGY DELA PAG 1870, ANTIPOLO CITY
PHILIPPINES

RE:       **Veteran's Name:  GOMEZ FEDERICO**
          **Request Number:  1-2238105212**

Dear Sir or Madam:

Thank you for contacting the National Personnel Records Center (NPRC).  This is in reference to your inquiry claiming military service.

Mr. Federico Gomez' name is not shown in the official records and archives on file at this Center which list the members of the Philippine Commonwealth Army, including recognized guerrillas, in the service of the United States Armed Forces during World War II.  Therefore, your request cannot be favorably considered.

A copy of PA AGO Form 23, Affidavit for Philippine Army Personnel, pertaining to Mr. Federico Gomez has not been located.  A copy of this form does not, in itself establish facts pertaining to military service.  That service must be authenticated from the official archives which were recovered from the Philippines after World War II.

If you have questions or comments regarding this response, you may contact us at 314-801-0800 or by mail at the address shown in the letterhead above.  If you contact us, please reference the Request Number listed above.  If you are a veteran, or a deceased veteran's next of kin, please consider submitting your future requests online by visiting us at http://vetrecs.archives.gov.

Sincerely,

We Value Our
Veterans' Privacy
*Let us know if we have
failed to protect it.*

JOHNNY THOMAS
Archives Technician (5A)

# REQUEST PERTAINING TO MILITARY RECORDS

*Please read instructions on the reverse. If more space is needed, use plain paper.*

PRIVACY ACT OF 1974 COMPLIANCE INFORMATION. The following information is provided in accordance with 5 U.S.C. 552a(e)(3) and applies to this form. Authority for collection of the information is 44 U.S.C. 2907, 3101, and 3103, and E.O. 0397 of November 22, 1943. Disclosure of the information is voluntary. The principal purpose of the information is to assist the facility servicing the records in locating and verifying the correctness of the requested records or information to answer your inquiry. Routine uses of the information as established and published in accordance with 5 U.S.C 5(n)(4)(D) include the transfer of relevant information to appropriate Federal, State, local, or foreign agencies for use in civil, criminal, or regulatory investigations or prosecution. In addition, this form will be filed with the appropriate military records and may be transferred along with the record to another agency in accordance with the routine uses established by the agency which maintains the record. If the requested information is not provided, it may not be possible to service your inquiry.

## SECTION 1—INFORMATION NEEDED TO LOCATE RECORDS (Furnish as much as possible)

| 1 NAME USED DURING SERVICE (Last, first, and middle) | 2. SOCIAL SECURITY NO. | 3. DATE OF BIRTH | 4. PLACE OF BIRTH |
|---|---|---|---|
| Gomez, Federico Cabanos | none | 06-09-13 | Butuan, Agusan |

5. ACTIVE SERVICE, PAST AND PRESENT    (For an effective records search, it is important that ALL service be shown below)

| BRANCH OF SERVICE (Also, show last legal station, if known) | DATES OF ACTIVE SERVICE | | Check one | SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|
| | DATE ENTERED | DATE RELEASED | OFFICER / ENLISTED | |
| Cos 109th Div 10th MD | 05-07-42 | 06-25-45 | 1st Lt | ASN-Unk |

6. RESERVE SERVICE, PAST OR PRESENT    If "none," check here ☒

| a. BRANCH OF SERVICE | b. DATES OF MEMBERSHIP | | c. Check one OFFICER / ENLISTED | d. SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|
| | FROM | TO | | |

7. NATIONAL GUARD MEMBERSHIP    (Check one):    a. ☐ ARMY    b. ☐ AIR FORCE    c. ☐ NONE

| d. STATE | e. ORGANIZATION | f. DATES OF MEMBERSHIP | | g. Check one OFFICER / ENLISTED | h. SERVICE NUMBER DURING THIS PERIOD |
|---|---|---|---|---|---|
| | | FROM | TO | | |

| 8 IS SERVICE PERSON DECEASED | | 9. IS (WAS) INDIVIDUAL A MILITARY RETIREE OR FLEET RESERVIST |
|---|---|---|
| ☐ YES    ☐ NO    If "yes," enter date of death. | | ☐ YES    ☐ NO |

## SECTION II—REQUEST

**1. EXPLAIN WHAT INFORMATION OR DOCUMENTS YOU NEED; OR, CHECK ITEM 2; OR, COMPLETE ITEM 3**

**2. IF YOU ONLY NEED A STATEMENT OF SERVICE** check here ☐

**3 LOST SEPARATION DOCUMENT REPLACEMENT REQUEST**
(Complete a or b, and c.)

| | a. REPORT OF SEPARATION (DD Form 214 or equivalent) | YEAR ISSUED | This contains information normally needed to determine eligibility for benefits. It may be furnished only to veteran, the surviving next of kin, or to a representative with veteran's signed release (item 5 of this form) |
|---|---|---|---|
| ☐ | b. DISCHARGE CERTIFICATE | YEAR ISSUED | This shows only the date and character of discharge. It is of little value in determining eligibility for benefits. It may be issued only to veterans discharged honorably or under honorable conditions; or, if deceased, to the surviving spouse. |

c. EXPLAIN HOW SEPARATION DOCUMENT WAS LOST

**4. EXPLAIN PURPOSE FOR WHICH INFORMATION ON DOCUMENTS ARE NEEDED**

For reference

**6. REQUESTER**

a. IDENTIFICATION (check appropriate box)
☐ Same person identified in Section I    ☒ Surviving spouse
☐ Next of kin (relationship)
☐ Other (specify)

b. SIGNATURE (see instruction 3 on reverse side)
JOVITA C. GOMEZ

DATE OF RE... April

**5. RELEASE AUTHORIZATION, IF REQUIRED** (Read Instruction 3 on reverse side)

I hereby authorize release of the requested information/documents to the person indicated at right (item 7)

VETERAN SIGN HERE    JOVITA C. GOMEZ, Widow
(If signed by other than veteran show relationship to veteran.)

**7. Please type or print clearly —    COMPLETE RETURN ADDRESS**

Name, number and street, city, State and ZIP code

Jovita C. Gomez
315 Purok Silangan
Bgy Dela Paz
1870 Antipolo City, Philippines

TELEPHONE NO. (Include area code) ▶

STANDARD FORM 180
Prescribed by NARA (36 CFR

180-104    NSN 7540-00-142-8360

00019

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOVITA GOMEZ,                              )
                                          )
             Plaintiff,                    )
                                          )
v.                                         )          Civil Action No. 07-2014 (PLF)
                                          )
UNITED STATES DEPARTMENT                   )
OF THE ARMY,                               )
                                          )
             Defendant.                    )
_____)

## <u>ORDER</u>

This matter comes before the Court on Defendant's Motion to Dismiss or in the alternative, for Summary Judgment.  Based upon the motion, the opposition thereto, and the entire record herein, it is this ____ day of _____, 20___ hereby

**ORDERED** that Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment is **GRANTED**, and it is further

**ORDERED** that Plaintiff's Complaint is **Dismissed** with prejudice

**SO ORDERED**.


_____
PAUL L. FRIEDMAN
United States District Judge

Copies to:
Parties via ECF